IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| JOHN COREY FRASER, on behalf of himself and all others similarly situated as a Class, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:22CV00410 |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.       Statutory Background ............................................................................................. 2

II.      Regulatory Background .......................................................................................... 5

III.     *Hirschfeld* Litigation ............................................................................................. 6

ARGUMENT ...................................................................................................................... 7

I.       The Court should dismiss for lack of subject matter jurisdiction because Plaintiff
         lacks Article III standing ........................................................................................ 7

II.      The Second Amendment allows the government to regulate the commercial sale of
         handguns to people under the age of 21 .................................................................. 9

         A.       Historical tradition supports the legislative selection of 21 as the minimum
                  age for commercial sales of handguns. .................................................. 10

         B.       Militia laws do not suggest that individuals under twenty-one have the
                  right to directly purchase handguns from licensed dealers ..................... 16

III.     Plaintiff's Due Process claim fails because age is not a suspect classification under
         the Equal Protection Clause. ................................................................................. 20

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Williams*,
    104 N.E. 659 (Ill. 1914) ........................................................................................................ 12

*Bassett v. Bassett*,
    521 P.2d 434 (Okla. Civ. App. 1974) .................................................................................. 12

*Biffer v. City of Chicago*,
    116 N.E. 182 (Ill. 1917) ........................................................................................................ 15

*Blackard v. Blackard*,
    426 S.W.2d 471 (Ky. Ct. App. 1968) .................................................................................. 12

*Bullock v. Sprowls*,
    54 S.W. 657 (Tex. Civ. App. 1899) ...................................................................................... 12

*Burgett v. Barrick*,
    25 Kan. 526 (Kan. 1881) ........................................................................................................ 12

*Castner v. Walrod*,
    83 Ill. 171 (Ill. 1876) .............................................................................................................. 12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................................ 7, 8

*Coleman v. State*,
    32 Ala. 581 (1858) .................................................................................................................. 14

*Crouch v. Crouch*,
    187 S.E.2d 348 (N.C. Ct. App. 1972) .................................................................................. 12

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ...................................................................................................... *passim*

*Doe v. Archdiocese of Milwaukee*,
    700 N.W.2d 180 (Wis. 2005) ................................................................................................ 12

*Fitz-Gerald v. Bailey*,
    58 Miss. 658 (Miss. 1881) .................................................................................................... 12

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) .................................................................................................................. 7

*Gabree v. King*,
    614 F.2d 1 (1st Cir. 1980) ...................................................................................................... 19

*Hirschfeld v. ATF*,
   417 F. Supp. 3d 747 (W.D. Va. 2019) ............................................................... 6

*Hirschfeld v. ATF*,
   5 F.4th 407 (4th Cir. 2021), *as amended* (July 15, 2021) ........................... 6

*Hirschfeld v. ATF*,
   14 F.4th 322 (4th Cir. 2021),
   *cert. denied sub nom. Marshall v. ATF*, 142 S. Ct. 1447 (2022) .................. 7

*Horsley v. Trame*,
   808 F.3d 1126 (7th Cir. 2015) ......................................................................... 16

*Johnson v. U.S. Off. of Pers. Mgmt.*,
   783 F.3d 655 (7th Cir. 2015) ............................................................................. 9

*Jones v. Wells*,
   2 Houst. 209 (Del. Super. Ct. 1860) ............................................................... 12

*Kimel v. Fla. Bd. of Regents*,
   528 U.S. 62 (2000) ............................................................................... 20, 21, 22

*Konigsberg v. State Bar of Cal.*,
   366 U.S. 36 (1961) ............................................................................................ 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................ 8

*Mass. Bd. of Ret. v. Murgia*,
   427 U.S. 307 (1976) .......................................................................................... 20

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ................................................................................... 10, 17

*Memphis Tr. Co. v. Blessing*,
   58 S.W. 115 (Tenn. 1899) ................................................................................ 12

*National Rifle Ass'n of America v. ATF* (*NRA*),
   700 F.3d 185 (5th Cir. 2012) ..................................................................... *passim*

*Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*,
   470 U.S. 451 (1985) .......................................................................................... 20

*Nat'l Rifle Ass'n v. Brady*,
   914 F.2d 475 (4th Cir. 1990) ............................................................................. 5

*New York State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022) ...................................................................................... 11

*Parman v. Lemmon*,
    244 P. 227 (Kan. 1925) ................................................................................. 15

*Peters v. Jones*,
    35 Iowa 512 (Iowa 1872) .............................................................................. 12

*Reisse v. Clarenbach*,
    61 Mo. 310 (Mo. 1875) .................................................................................. 12

*Republican Party of Minn.* v. *White*,
    536 U.S. 765 (2002) ....................................................................................... 11

*State v. Callicutt*,
    69 Tenn. 714 (Tenn. 1878) ............................................................................ 14

*United States v. Emerson*,
    270 F.3d 203 (5th Cir. 2001) ....................................................... 15, 16, 17, 18

*United States v. Hays*,
    515 U.S. 737 (1995) ......................................................................................... 7

*United States v. Moore*,
    84 F.3d 1567 (9th Cir. 1996) .......................................................................... 9

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950) ........................................................................................... 7

*United States v. Olson*,
    473 F.2d 686 (8th Cir. 1973) ........................................................................ 19

*Walker v. Walker*,
    17 Ala. 396 (Ala. 1850) ................................................................................ 12

*Whitt v. Whitt*,
    490 S.W.2d 159 (Tenn. 1973) ....................................................................... 12

*Womack v. Greenwood*,
    6 Ga. 299 (Ga. 1849) .................................................................................... 12

## CONSTITUTIONS

Ala. Const. art. I, § 26 (1819) ............................................................................... 15

U.S. Const. amend. XXVI, § 1 ................................................................................. 9

## STATUTES

18 U.S.C. § 921 ........................................................................................................ 4

18 U.S.C. § 922 .................................................................................................. 1, 4, 5

18 U.S.C. § 926 ......................................................................................................... 5

Gun Control Act of 1968,
   Pub. L. No. 90-618, 82 Stat. 1213 ........................................................................ 3

Omnibus Crime Control and Safe Streets Act of 1968,
   Pub. L. No. 90-351, 82 Stat. 197 ....................................................................... 2, 3

Violent Crime Control and Law Enforcement Act of 1994,
   Pub. L. No. 103-322, 108 Stat. 1796 .................................................................... 5

**FEDERAL RULES**

Federal Rule of Civil Procedure 25 ............................................................................ 1

**REGULATIONS**

27 C.F.R. § 478.96 ................................................................................................ 1, 5

27 C.F.R. § 478.99 ................................................................................................ 1, 5

27 C.F.R. § 478.124 ........................................................................................... 1, 5, 6

**OTHER AUTHORITIES**

114 Cong. Rec. 12279 (1968) ............................................................................... 2, 5

*An Act for the Better Ordering and Regulating Such as Are Willing and Desirous to Be
   United for Military Purposes Within This Province*, (Nov. 25, 1755),
   in 3 Jared Sparks, ed., *The Works of Benjamin Franklin* 78 (1836) ....................... 19

*Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency
   of the Sen. Comm. on the Judiciary*,
   89th Cong. 67 (1965) .......................................................................................... 3

*Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency
   of the Sen. Comm. on the Judiciary*,
   90th Cong. 57 (1967) ........................................................................................ 2-3

*Infant*, Black's Law Dictionary (11th ed. 2019) ................................................... 11

Op. of Ky. Att'y Gen. 94-14 (March 3, 1994) ......................................................... 15

Patrick J. Charles, *The 1792 National Militia Act, the Second Amendment, and Individual
   Militia Rights: A Legal and Historical Perspective*,
   9 Geo. J.L. & Pub. Pol'y 323 (2011) ................................................................... 18

S. Rep. No. 88-1340 (1964) ...................................................................................... 2

S. Rep. No. 89-1866 (1966) ...................................................................................... 3

S. Rep. No. 90-1097 (1968) ............................................................................... *passim*

T.E. James, *The Age of Majority*,
    4 Am. J. Legal Hist. 22 (1960) .......................................................................... 12

Thomas M. Cooley, *Treatise on Constitutional Limitations* (5th ed. 1883) ................................. 15

U.S. Dep't of Def., *DOD Directive 5210.56: Arming and the Use of Force* (Nov. 18, 2016),
    https://fas.org/irp/doddir/dod/d5210_56.pdf ........................................................ 16

Vivian E. Hamilton, *Adulthood in Law and Culture*,
    91 Tul. L. Rev. 55 (2016) ................................................................................ 12

William Blackstone, 1 Commentaries On The Laws Of England (1st ed. 1765) ....................... 11

## INTRODUCTION

Defendants, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF); Steven Dettelbach, in his official capacity as the Director of ATF[1]; and Merrick Garland, in his official capacity as Attorney General of the United States (collectively, the Defendants), submit this memorandum in support of their motion to dismiss the Complaint in this matter.

Plaintiff John Fraser, who is currently under the age of 21 and claims to represent a putative class of similarly situated individuals, challenges the constitutionality of federal criminal statutes making it unlawful for federal firearms licensees (FFLs) to sell handguns and handgun ammunition to persons under 21 years of age, 18 U.S.C. §§ 922(b)(1), (c), and federal regulations implementing those statutory provisions, 27 C.F.R. §§ 478.99(b)(1), 478.124(a), 478.96(b).  Plaintiff claims that these statutes and regulations are inconsistent with his Second Amendment right to keep and bear arms and with his Fifth Amendment right to equal protection of the law. Plaintiff's claims fail as a matter of law and should be dismissed.

This Court should dismiss Plaintiff's claims for several reasons. First, Plaintiff lacks standing to sue; he may not manufacture injury by forgoing the option of obtaining a handgun as a bona fide gift from his parents or guardians following direct purchase from a licensed dealer. Second, Plaintiff's Second Amendment claims fail as a matter of history and tradition. Traditionally, the government has enjoyed the power to prohibit the sale of firearms to people under the age of 21.  Indeed, when the Second Amendment was adopted, the law considered such persons to be infants and minors.  Thus, as the Fifth Circuit held in *National Rifle Ass'n of America v. ATF* (*NRA*), 700 F.3d 185 (5th Cir. 2012), restrictions on the commercial sale of handguns to

---

[1] Pursuant to Federal Rule of Civil Procedure 25, Director Dettelbach is automatically substituted as a Defendant in this matter.

those under the age of 21 do not violate the Second Amendment. Finally, Plaintiff's Fifth Amendment claim fails because age is not a suspect class for equal protection analysis in this context.

## BACKGROUND

### I.     Statutory Background

Following a multi-year inquiry into violent crime that included "field investigation and public hearings," S. Rep. No. 88-1340, at 1 (1964), Congress found "that the ease with which" handguns could be acquired by "juveniles without the knowledge or consent of their parents or guardians . . . and others whose possession of such weapons is similarly contrary to the public interest[,] is a significant factor in the prevalence of lawlessness and violent crime in the United States," Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Tit. IV, § 901(a)(2), 82 Stat. 197, 225. The legislative record established that "juveniles account for some 49 percent of the arrests for serious crimes in the United States and minors account for 64 percent of the total arrests in this category." S. Rep. No. 90-1097, at 77 (1968). "[M]inors under the age of 21 years accounted for 35 percent of the arrests for the serious crimes of violence including murder, rape, robbery, and aggravated assault," and 21 percent of the arrests for murder. 114 Cong. Rec. 12279, 12309 (1968) (Sen. Dodd).

Based on its investigations, Congress found "a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior." Pub. L. No. 90-351, Tit. IV, § 901(a)(6), 82 Stat. at 225-26. Federal law enforcement officials testified that "[t]he greatest growth of crime today is in the area of young people, juveniles and young adults" and that "[t]he easy availability of weapons makes their tendency toward wild, and sometimes irrational behavior that much more violent, that much more deadly." *Federal Firearms*

2

*Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary*, 90th Cong. 57 (1967) (statement of Sheldon S. Cohen). Law enforcement officers from New York City, Los Angeles, St. Louis, Chicago, Philadelphia, and Atlanta provided Congress with "statistics documenting the misuse of firearms by juveniles and minors," which "take on added significance when one considers the fact that in each of the jurisdictions referred to the lawful acquisition of concealable firearms by these persons was prohibited by statute." S. Rep. No. 89-1866, at 59 (1966); *see also id.* at 58, 60.

Congress's investigations revealed that "almost all of these firearms[] are put into the hands of juveniles by importers, manufacturers, and dealers who operate under licenses issued by the Federal Government." *Federal Firearms Act: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the Sen. Comm. on the Judiciary*, 89th Cong. 67 (1965) (statement of Sheldon S. Cohen). Congress thus concluded that concealable firearms (such as handguns) "have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior," Pub. L. No. 90-351, Tit. IV, § 901(a)(6), 82 Stat. 226, and "that only through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave problem be properly dealt with, and effective State and local regulation of this traffic be made possible," *id.* § 901(a)(3), 82 Stat. at 225.

To that end, Congress included statutory provisions designed to address "[t]he clandestine acquisition of firearms by juveniles and minors," S. Rep. No. 90-1097, at 79, in both the Omnibus Crime Control Act and the Gun Control Act of 1968, Pub. L. No. 90-618, Tit. I, § 101, 82 Stat.

1213. These provisions include 18 U.S.C. § 922(b)(1) and (c)(1), which regulate the sale of firearms by FFLs to persons under 21 years old.[2]

While federal law sets a minimum age of 18 to purchase shotguns or rifles from FFLs, the minimum age to purchase handguns from FFLs is 21. Section 922(b)(1) provides that FFLs may sell or deliver only "a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age" but above eighteen. 18 U.S.C. § 922(b)(1). FFLs may not sell or deliver "any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age." *Id.* Section 922(c)(1) provides that an FFL may not "sell a firearm to [an unlicensed] person who does not appear in person at the licensee's business premises" unless "the transferee submits to the transferor a sworn statement" attesting "that, in the case of any firearm other than a shotgun or a rifle, [the transferee is] twenty-one years or more of age, or that, in the case of a shotgun or a rifle, [the transferee is] eighteen years or more of age." *Id.* § 922(c)(1).

Importantly, federal law does not prohibit the *possession* of handguns by 18- to 20-year-olds. Congress recognized that, under these provisions, "a minor or juvenile would not be restricted from owning, or learning the proper usage of [a] firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. No. 90-1097, at 79. "At the most," therefore, these provisions "could cause minor inconveniences to certain youngsters who are mature, law abiding, and responsible, by requiring

---

[2] A federal firearms license is required to "engage in the business of importing, manufacturing, or dealing in firearms, [or ammunition]." 18 U.S.C. § 922(a)(1). A person is "engaged in the business" of dealing firearms, *id.* § 921(a)(21), if that person "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms," *id.* § 921(a)(21)(C).

that a parent or guardian over 21 years of age make a handgun purchase for any person under 21." 114 Cong. Rec. at 12309 (statement of Sen. Dodd). Congress subsequently limited the circumstances under which individuals under 18 years old may possess handguns but has not placed any similar age-related limits on the possession of handguns by individuals between 18 and 20 years old. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, Tit. XI, § 110201, 108 Stat. 1796, 2010 (adding 18 U.S.C. § 922(x)).

## II.    Regulatory Background

ATF is authorized to issue "such rules and regulations as are necessary to carry out" Title 18's provisions relating to firearms.  18 U.S.C. § 926(a); *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 477 (4th Cir. 1990) ("The Secretary of the Treasury was authorized to promulgate regulations to facilitate the enforcement of the Gun Control Act" and "[t]his responsibility was delegated within the Department of the Treasury to the Bureau of Alcohol, Tobacco and Firearms.").

The implementing regulations promulgated by ATF include 27 C.F.R. § 478.99(b), which closely tracks Congress's limitations on commercial sales of firearms to persons under 21 years of age, 18 U.S.C. § 922(b)(1).[3] ATF has also provided that FFLs "shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any [transferee who is not federally licensed] unless the licensee records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a); *see also* 27 C.F.R. § 478.96(b) (imposing same restrictions with respect to out-of-state and mail order sales). The Form 4473 establishes the transferee's eligibility to possess a firearm

---

[3] The regulation at 27 C.F.R. § 478.99(b) provides that a federal firearm licensee "shall not sell or deliver (1) any firearm or ammunition to any individual who the [licensee] knows or has reasonable cause to believe is less than 18 years of age" or (2) any firearms "other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the [licensee] knows or has reasonable cause to believe is less than 21 years of age."

by recording, among other things, the transferee's "date and place of birth," 27 C.F.R. § 478.124(c)(1), and the transferee's certification that if "the firearm to be transferred is a shotgun or rifle, the transferee is 18 years or more of age," and if "the firearm to be transferred is a firearm other than a shotgun or rifle, the transferee is 21 years or more of age," *id.* § 478.124(f).

ATF applies these implementing regulations consistently with Congress's understanding that "a minor or juvenile would not be restricted from owning, or learning the proper usage of [a] firearm, since any firearm which his parent or guardian desired him to have could be obtained for the minor or juvenile by the parent or guardian." S. Rep. No. 90-1097, at 79. Accordingly, ATF has explained that a dealer may lawfully sell a firearm to a parent or guardian who is purchasing it for a minor child as long as the minor is not otherwise prohibited from receiving or possessing a firearm. Opinion of the Chief Counsel of ATF, No 23362 (Dec. 5, 1983) (hereinafter the "ATF Opinion Letter" and attached as Ex. A).

### III.     *Hirschfeld* Litigation

A lawsuit substantially similar to this one was recently litigated in the Western District of Virginia and the Fourth Circuit. In *Hirschfeld v. ATF*, two plaintiffs between the age of 18 and 20 brought claims nearly identical to those presented in this case. 417 F. Supp. 3d 747, 750 (W.D. Va. 2019). The *Hirschfeld* plaintiffs did not purport to represent a class of similarly situated individuals. *See generally id.* The district court held that the challenged laws and regulations are constitutional and granted the government's motion to dismiss. *See id.* at 759. On appeal, a divided panel of the Fourth Circuit reversed and ruled that the challenged laws violated the Second Amendment. *See Hirschfeld v. ATF*, 5 F.4th 407, 452 (4th Cir. 2021), *as amended* (July 15, 2021); *see also id.* at 457 (Wynn, J., dissenting).

6

On August 27, 2021, the government filed a petition for panel rehearing and motion for rehearing en banc. *See* Pet. for Reh'g, or Reh'g En Banc, *Hirschfeld v. ATF*, No. 19-2250 (4th Cir. Aug. 27, 2021). The motion asserted that the panel was wrong on the merits of the plaintiffs' claims and that the en banc Fourth Circuit should reverse. *Id.* at 7-15. And the motion argued that the case had become moot shortly after the panel published its opinion because the younger of the two plaintiffs had turned 21 years old. *Id.* at 6-7. The panel agreed that the case had become moot and vacated the panel opinion and the district court's opinion. *Hirschfeld v. ATF*, 14 F.4th 322, 325 (4th Cir. 2021) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950)), *cert. denied sub nom. Marshall v. ATF*, 142 S. Ct. 1447 (2022); *see also id.* at 328-29 (Wynn, J., concurring) (noting that "vacated opinions do not even bear the label of dicta" and speculating that "this matter surely [would have] met the requirements of Rule 35 for en banc review" had the matter not become moot). As such, no opinion from the *Hirschfeld* litigation is binding in this matter.

## ARGUMENT

### I.    The Court should dismiss for lack of subject matter jurisdiction because Plaintiff lacks Article III standing.

"The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (alteration in original) (internal quotation marks omitted) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990)). "[O]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted). To establish standing to sue, a plaintiff (1) "must have suffered an injury in fact—an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). Standing cannot be conferred by a self-inflicted injury. *Clapper*, 568 U.S. at 416 (holding that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves").

Here, the complaint fails to plead imminent injury traceable to Defendants because Plaintiff has not pleaded that he is unable to obtain a handgun through his parents or legal guardians. Federal law does not bar Plaintiff from possessing a handgun.  Although Plaintiff alleges that the challenged federal laws burden his "fundamental right to keep and bear arms," Compl. ¶ 1, ECF No. 1, he does not demonstrate that he in fact is unable to possess firearms.  Plaintiff may lawfully possess handguns and ammunition under federal law, primarily through his parents or legal guardians, as contemplated by Congress.  Sections 922(b)(1) and (c)(1) regulate only commercial sales of firearms and ammunition to persons under the age of 21, and only those sales by licensed dealers, as opposed to private sales or gun shows.  *See* ATF Opinion Letter, at 1-2.[4] Congress has

---

[4] As Congress recognized, these laws do not bar other channels of firearm acquisition by persons who are 18 to 20 years old. Nor do they prohibit such persons from possessing firearms, including handguns. *See, e.g.*, S. Rep. No. 90-1097, at 79. ATF has thus made clear that these laws "were intended to prevent juveniles from acquiring firearms without their parents' or guardian's knowledge," not to prohibit them "from possessing, owning, or learning the proper usage of firearms." ATF Opinion Letter, at 1-2.

merely restricted commercial sales of handguns to people younger than 21 years old.[5]  ATF Opinion Letter.  Plaintiff may not manufacture injury by forgoing a legally available option to redress his sole alleged injury, nor can he  "allege an injury from one of [multiple] options where [he] can choose another which causes [him] no injury." *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 667-68 (7th Cir. 2015) (first alteration in original) (citation omitted).  Plaintiff "can avoid his asserted injury" because he has legally available means by which he may obtain a handgun; he has not pleaded any facts demonstrating that those alternative means are unavailable to him or explaining why pursuing these alternative means would cause him injury.  *Id.* at 668.  Because Plaintiff has an available option under federal law for obtaining a handgun, he suffers no injury traceable to Defendants.[6]

## II.   The Second Amendment allows the government to regulate the commercial sale of handguns to people under the age of 21.

Nothing in the Constitution prevents Congress from selecting 21 as the age minimum for the direct purchase of handguns from licensed dealers.  The Constitution establishes only one right that vests at the age of 18: voting. U.S. Const. amend. XXVI, § 1.  And "[n]either the Twenty-Sixth Amendment nor state law setting the age of majority at 18 compels Congress or the States to

---

[5] ATF has explained that if "the actual purchaser, a person of legal age, is acquiring the firearm for the purpose of loaning or giving it to an underaged person[,] [n]either the *sale* nor the minor's subsequent receipt and possession of the firearm would violate Federal law, provided that the person is not otherwise disabled" from possessing a firearm. ATF Opinion Letter, at 2 (emphasis in original). Thus, for example, a dealer may lawfully sell a firearm to a parent or guardian who is purchasing it for a minor child as long as the minor is not otherwise prohibited from receiving or possessing a firearm.  *See id.*  Indeed, as the Ninth Circuit has noted, it is not illegal for a parent to buy a gun for his or her child even if "the child's own money" is used to make the purchase. *United States v. Moore*, 84 F.3d 1567, 1571 (9th Cir. 1996).

[6] *But see NRA*, 700 F.3d at 191-92 (rejecting a substantially similar standing argument).

select 18 as the minimum age to purchase alcohol, lottery tickets, or handguns." *NRA*, 700 F.3d at 204 n.17.

A. **Historical tradition supports the legislative selection of 21 as the minimum age for commercial sales of handguns.**

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment guarantees an individual right of "law-abiding, responsible citizens" to keep and bear arms, but noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. The Court provided a non-"exhaustive" list of "presumptively lawful regulatory measures," including "laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27 & n.26. The challenged restriction on the sale of handguns to persons under the age of 21 is such a condition or qualification on commercial sales of arms, and is thus presumptively lawful. Restrictions on possession of firearms by felons and regulations of the carrying of firearms in "sensitive places" likewise reflect "permissible" "exceptions" to the scope of the Second Amendment right. *Id.* at 626, 635. The Court "made it clear in *Heller* that [its] holding did not cast doubt" on such measures and "repeat[ed] those assurances" in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality).

*Heller* establishes that a court should rely principally on text and history to discern the limits of the right to keep and bear arms. For example, bans on "dangerous and unusual weapons" are constitutional because there is a "historical tradition of prohibiting the carrying" of such weapons. *Heller*, 554 U.S. at 627. *Heller* further establishes that a court's examination of history should not end in 1791. The Court described "examination of a variety of legal and other sources to determine the public understanding of [the] legal text in the period after its enactment or ratification" as "a critical tool of constitutional interpretation." *Id.* at 605 (emphasis omitted). The

10

Court thus examined "[p]ostratification [c]ommentary," "[p]re-Civil War [c]ase [l]aw," "[p]ost-Civil War [l]egislation," and "[p]ost-Civil War [c]ommentators" to determine the original meaning of the Second Amendment. *Id.* at 605-26. These post-ratification traditions matter because "[p]rinciples of liberty fundamental enough to have been embodied within constitutional guarantees are not readily erased from the Nation's consciousness." *Republican Party of Minn.* v. *White*, 536 U.S. 765, 785 (2002) (citation omitted). The widespread adoption of a type of regulation, even after the founding, thus creates a "strong presumption" that the regulation is constitutional. *Id.* (citation omitted).

The Supreme Court recently reaffirmed *Heller*'s historical approach in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Under *Bruen*, a firearm regulation is constitutional if the government "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. If the government makes such a showing, then "the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961)). *Bruen* also rejected the need for "means-end scrutiny" such as "strict or intermediate scrutiny" in "the Second Amendment context." *Id.* at 2127, 2129.

These principles are decisive here. First, the "historical background of the Second Amendment," *Heller*, 554 U.S. at 592, shows that governments may restrict the purchase of firearms by people under the age of 21. At the time of the adoption of the Constitution, the age of majority at common law was 21 years. *See, e.g.*, WILLIAM BLACKSTONE, 1 COMMENTARIES ON THE LAWS OF ENGLAND 463 (1st ed. 1765) ("So that full age in male or female, is twenty one years, which age is completed on the day preceding the anniversary of a person's birth; who till that time is an infant, and so styled in law."); *Infant*, BLACK'S LAW

DICTIONARY (11th ed. 2019) ("An infant in the eyes of the law is a person under the age of twenty-one years, and at that period . . . he or she is said to attain majority . . . .").[7] This common law background shows that the Second Amendment allowed the government to use 21 as the age cutoff for the direct purchase of handguns.

Second, laws prohibiting people under the age of 21 from purchasing firearms are "longstanding," *Heller*, 554 U.S. at 626.  During the nineteenth century, 19 States and the District of Columbia enacted laws expressly restricting the ability of persons under 21 to purchase or use particular firearms, or restricting the ability of "minors" while the state's age of majority was set at 21.  *See* Ex. B (chart reproducing State laws).[8] Twelve of these States and the District of

---

[7] The tradition of designating 21 years of age as the "age of majority" can be traced in England as far back as the time of Magna Carta, at least for men in knight service, and that the "choice of this age evolved . . . owing to the weight of the arms and the greater skill required in warfare."  *See* T.E. James, *The Age of Majority*, 4 Am. J. Legal Hist. 22, 26, 30 (1960).  "Perhaps unsurprisingly, the age required for the elite status of knighthood was the age whose imprint would endure. English historical and common law traditions became law throughout the British Commonwealth. Twenty-one remained the age of majority for centuries in England, as well as throughout much of the Western world and nations that incorporated English traditions."  Vivian E. Hamilton, *Adulthood in Law and Culture*, 91 Tul. L. Rev. 55, 64 (2016).

[8] Alabama (1856), Tennessee (1856), Kentucky (1873), Indiana (1875), Georgia (1876), Missouri (1879), Mississippi (1880), Delaware and Illinois (1881), Maryland and West Virginia (1882), Kansas and Wisconsin (1883), Iowa (1884), Nevada (1885), Louisiana (1890), Wyoming (1890), District of Columbia (1892), North Carolina (1893), and Texas (1897).  *See* Ex. B. For states that prohibited purchase or possession of firearms by "minors" and set the age of majority at 21, see *Walker v. Walker*, 17 Ala. 396 (Ala. 1850); *Jones v. Wells*, 2 Houst. 209 (Del. Super. Ct. 1860); *Womack v. Greenwood*, 6 Ga. 299 (Ga. 1849); *Peters v. Jones*, 35 Iowa 512 (Iowa 1872); *Burgett v. Barrick*, 25 Kan. 526 (Kan. 1881); *Blackard v. Blackard*, 426 S.W.2d 471, 472 (Ky. Ct. App. 1968); *Fitz-Gerald v. Bailey*, 58 Miss. 658 (Miss. 1881); *Crouch v. Crouch*, 187 S.E.2d 348, 349 (N.C. Ct. App. 1972); *Whitt v. Whitt*, 490 S.W.2d 159, 160 (Tenn. 1973); *Memphis Tr. Co. v. Blessing*, 58 S.W. 115, 117 (Tenn. 1899); *Bullock v. Sprowls*, 54 S.W. 657, 659-60 (Tex. Civ. App. 1899); *Doe v. Archdiocese of Milwaukee*, 700 N.W.2d 180, 188 (Wis. 2005). Until the 1970s, Illinois, Missouri, and Oklahoma set the age of majority at twenty-one for men, and eighteen for women. *See Castner v. Walrod*, 83 Ill. 171 (Ill. 1876); *Anderson v. Williams*, 104 N.E. 659, 661 (Ill. 1914); *Reisse v. Clarenbach*, 61 Mo. 310 (Mo. 1875); *Bassett v. Bassett*, 521 P.2d 434, 435 n.2 (Okla. Civ. App. 1974).

Columbia had Second Amendment analogues in their respective constitutions when they enacted these qualifications. *See id.*[9] By the early twentieth century, three more States restricted the purchase or use of particular firearms by individuals below 21 years of age, and two of these states had Second Amendment analogues in their constitutions. *See id.*[10] Thus, by 1923, a total of twenty-two States and the District of Columbia had made 21 the minimum age for purchase or use of particular firearms, and fourteen of these States (and the District of Columbia) had State constitutional analogues to the Second Amendment. *See id.*; *supra* notes 8-10. Within the same timeframe (mid-nineteenth century through early twentieth century) twenty-one other States imposed age qualifications on the purchase or use of certain firearms, setting the minimum age between twelve and twenty. *See* Ex. B.[11]

This tradition continues into the present day. At present, all fifty States and the District of Columbia have minimum-age qualifications for the use or purchase of particular firearms. *See id.*; *see also supra* notes 8-10. And at the time that these minimum-age qualifications were enacted, thirty-five of the fifty States, plus the District of Columbia, had constitutional provisions securing

---

[9] Alabama, Georgia, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, Tennessee, Texas, and Wyoming. *See* Ex. B. Because the District of Columbia is a federal enclave, it is directly constrained by the Second Amendment.

[10] Oklahoma (law enacted in 1890, Oklahoma admitted as a State in 1907), New Hampshire (1923), and South Carolina (1923). Oklahoma and South Carolina have State constitutional provisions protecting the right to bear arms. *See* Ex. B.

[11] Oregon (1868), Ohio (1880), Florida and Pennsylvania (1881), New Jersey (1882), Michigan, New York, and Rhode Island (1883), Washington (enacted 1883, admitted as a State in 1889), Massachusetts (1884), Minnesota and Virginia (1889), Vermont (1896), South Dakota (1903), Utah (1905), Montana (1907), Idaho and Maine (1909), Arizona (enacted 1883, admitted as a State in 1912), California and Connecticut (1923). *See* Ex. B.

the right to keep and bear arms. *See* Ex. B.[12] Twenty-nine of the fifty States (and the District of Columbia) only placed a minimum-age qualification on the purchase or use of handguns—usually defined as pistols, revolvers, or other concealable firearms. *Id.*[13]

Third, "19th-century cases," *Heller*, 554 U.S. at 610, also demonstrate the authority of the government to restrict firearms purchases by people under the age of 21. For example, the Supreme Court of Tennessee, a State that prohibited the sale of pistols to minors and set the age of majority at 21, *see supra* note 8, upheld a conviction for selling a pistol to a minor against a challenge brought under the state's Second Amendment analogue, expressly rejecting the defendant's argument "that every citizen who is subject to military duty has the right 'to keep and bear arms,' and that this right necessarily implies the right to buy or otherwise acquire, and the right in others to give, sell, or loan to him." *State v. Callicutt*, 69 Tenn. 714, 716-17 (Tenn. 1878). The court explained that the challenged restrictions "were not intended to affect, and do not in fact abridge, the constitutional right of the 'citizens of the State to keep and bear arms for their common defense,' but have been passed with a view 'to prevent crime.'" *Id.* at 716. The court stated that "we regard the acts to prevent the sale, gift, or loan of a pistol or other like dangerous weapon to a minor, not only constitutional as tending to prevent crime but wise and salutary in all its provisions." *Id.* at 716-17. A conviction for violating a state law "which makes it a misdemeanor

---

[12] Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Montana, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Wyoming.

[13] Alabama, California, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

14

to 'sell, or give, or lend, to any male minor,' a pistol" was likewise upheld by the Supreme Court of Alabama, *Coleman v. State*, 32 Ala. 581, 582 (1858), a State that set the age of majority at 21, *see supra* note 8, and that provided in its constitution "[t]hat every citizen has a right to bear arms in defense of himself and the state," Ala. Const. art. I, § 26 (1819).[14]

Fourth, 19th century "legal scholar[s]," *Heller*, 554 U.S. at 616, wrote that restrictions on the ability of minors to purchase firearms were permissible. "[T]he judge and professor Thomas Cooley, who wrote a massively popular 1868 Treatise on Constitutional Limitations," *id.*, included among the permissible exercises of State police power "[t]hat the State may prohibit the sale of arms to  minors." Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n.4 (5th ed. 1883). Professor Cooley perceived no inconsistency between these age qualifications on sales and the fact that "State constitutions," like the federal constitution, "provide that the right of the people to bear arms shall not be infringed." *Id.* at 429; *see also Heller*, 554 U.S. at 616-17 (treating Cooley's interpretations of the Second Amendment as persuasive authority); *United States v. Emerson*, 270 F.3d 203, 235-36, 258-59 (5th Cir. 2001) (same).

Other courts have found this historical evidence decisive. For example, when the Fifth Circuit faced claims substantively identical to the claims in this case, the court rejected those claims against this backdrop of *Heller* and *McDonald*. "Modern restrictions on the ability of

---

[14] *See also* Op. of Ky. Att'y Gen. 94-14 (March 3, 1994) ("Given the Commonwealth's history of restricting the access of minors to deadly weapons, it is not unreasonable to conclude that the Kentucky constitutional provision recognizing a right to bear arms has no application to minors" and that "[i]f the right to bear arms does extend to minors, it likely is a more limited right than that possessed by adults"); *Parman v. Lemmon*, 244 P. 227, 228 (Kan. 1925) (rejecting constitutional challenge to provision prohibiting sale and possession of "dangerous weapons to minors," including "any pistol, revolver or toy pistol," in an action alleging that violation of the statute was negligence per se); *Biffer v. City of Chicago*, 116 N.E. 182, 184-85 (Ill. 1917) (city ordinance denying concealable weapons permit to "all minors" did not violate the federal or state constitutional right to bear arms).

persons under 21 to purchase handguns . . . seem, to us, to be firmly historically rooted." *NRA*, 700 F.3d at 204. The Fifth Circuit's rejection of these claims was validated three years later by the Seventh Circuit in *Horsley v. Trame*, 808 F.3d 1126 (7th Cir. 2015). This result was consistent with the case law on the subject prior to *Heller*. *See*, *e.g.*, *Emerson*, 270 F.3d at 261("[I]t is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms.").

### B. Militia laws do not suggest that individuals under twenty-one have the right to directly purchase handguns from licensed dealers

Plaintiff's Complaint relies on the fact that U.S. law designates male citizens over eighteen as eligible for service in the military. *See* Compl. ¶ 5.[15] Some colonial and founding-era laws likewise set the age for militia service below 21. *NRA*, 700 F.3d at 204 n.17. As in *NRA*, however, a "militia-based attack on the federal laws at bar is unavailing" for three key reasons. *Id.*

First, "the right to arms is not co-extensive with the duty to serve in the militia." *Id.* (citing *Heller*, 554 U.S. at 589-94). The issue in *Heller* was not the constitutional scope of the right to carry arms in the context of militia service. *See Heller*, 554 U.S. at 577 ("[Heller] argues that [the Second Amendment] protects an individual right to possess a firearm *unconnected with service in*

---

[15] Eighteen-to-twenty-year-olds are eligible for military service, but such eligibility neither bestows a right to unrestricted use of firearms by such individuals, nor implies anything about the rights of civilians under twenty-one regarding the purchase of firearms from licensed dealers for personal use. Even when active military personnel are required to be armed for the performance of their official duties, they may only carry such arms on or off Department of Defense property "[w]hen authorized." U.S. Dep't of Def., *DOD Directive 5210.56: Arming and the Use of Force* (Nov. 18, 2016), §§ 1.2(a), 3, https://fas.org/irp/doddir/dod/d5210_56.pdf. Military personnel wishing to carry a privately-owned firearm on Defense Department property for personal protection purposes not related to the performance of official duties must request permission to do so, and must be twenty-one or older. *Id.* §§ 1.2(e), 4.3(b). Thus, the U.S. military's practice is to regulate firearms extensively. *See id.* § 1.2(i) ("Except as permitted in this issuance or as specifically permitted in other applicable DoD policy, the possession of a privately owned firearm on DoD property is prohibited."). In any event, as a matter of policy, it is appropriate for Congress to distinguish between the privileges and responsibilities afforded to active service personnel in the extensively regulated U.S. armed forces, and those afforded to civilians.

*a militia*, and to use that arm for traditionally lawful purposes, such as self-defense within the home.") (emphasis added); *id*. at 579 n.5 (the right to bear arms "is still an individual right, and not one conditioned upon membership in some defined 'assembly,' as [Justice Stevens] contends the right to bear arms is conditioned upon membership in a defined militia"). Indeed, *Heller* specifically concluded that the right protected by the Second Amendment had "*nothing whatever to do with service in a militia.*" *Id*. at 593 (emphasis added). Instead, the Supreme Court dealt with whether possession of a handgun for self-defense in the home is a right protected by the Second Amendment. *Id*. at 598-99, 635-36.[16] *Heller* did examine the prefatory "well-regulated militia" language of the Second Amendment, *id*. at 595-99, but explained that this language "does not suggest that preserving the militia was the only reason Americans valued the ancient right." *Id*. at 599.

Hence, "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id*. at 635, which was at issue in *Heller*, should not be conflated with the duty of participating in the common defense as part of a militia. *See also Emerson*, 270 F.3d at 241 (noting that in the proposed amendment by the Pennsylvania convention that ratified the Constitution, "'bear arms' clearly pertains to private, civilian wearing or carrying of arms and the power of the state to organize, arm and discipline the militia is in a separate section, indicating that the Anti-Federalists viewed these issues as distinct").

Moreover, it is consistent with the historical understanding of the right to bear arms to consider individuals under twenty-one suitable for the duty to bear arms under militia leadership,

---

[16] Moreover, the majority's opinions in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), did not recite the "well-regulated militia" language even once, even as dicta. *See id*. at 749-91 (plurality opinion); *id*. at 791-805 (Scalia, J., concurring); *id*. at 805-58 (Thomas, J., concurring).

17

training, and control, but to restrict their purchase of firearms in a non-militia setting.  As explained above, *see supra* II.A, during the Founding Era, persons under twenty-one were considered minors or infants.  And even during this era, the bearing of arms in the militia was "well regulated" and did not entail members using firearms unchecked without supervision.

While "'a well-regulated Militia' refers *not* to a special or select subset or group taken out of the militia as a whole [it did refer] to the condition of the militia as a whole, namely being well disciplined and trained."  *Emerson*, 270 F.3d at 234-35; *see also Heller*, 554 U.S. at 597 ("[W]ell-regulated" implies "proper discipline and training."); Patrick J. Charles, *The 1792 National Militia Act, the Second Amendment, and Individual Militia Rights: A Legal and Historical Perspective*, 9 Geo. J.L. & Pub. Pol'y 323, 326 (2011) ("The right to 'keep and bear arms' in a 'well-regulated militia' was not a license to individually train or discharge firearms.") (citing militia statutes).

In any event, the relevant issue here is not the right to use arms in a national or state militia. Plaintiff does not allege that he has enrolled, has attempted to enroll, or has been denied access to "keep and bear arms" in a national or state militia.  And because the age qualification in no way prevents him from enrolling in the federally-organized and state-trained militia or from possessing firearms provided by the militia, it has nothing to do with any duty on the part of a "well-regulated militia" to "keep and bear arms."  In short, because the right recognized in *Heller* had "nothing whatever to do with service in a militia," 554 U.S. at 593, militia laws bear little to no relevance to the present case.

Second, "in some colonies and States, the minimum age of militia service either dipped below age 18 or crept to age 21, depending on legislative need."  *NRA*, 700 F.3d at 204 n.17 (citations omitted).  "Such fluctuation undermines [any] militia-based claim that the right to purchase arms must fully vest precisely at age 18—not earlier or later."  *Id*.  It is well established

that legislatures have significant discretion in raising or lowering the minimum age for individuals

to gain certain rights or privileges.[17] One of these is the privilege of serving in a militia.  As history

demonstrates, both Congress and the states retain the discretion of raising and lowering the

minimum age for service in the national or state militia.  Thus, even if the duty to serve in a militia

bears some relation to the right protected by the Second Amendment—which is doubtful—history

and tradition demonstrate that legislatures possess significant discretion in selecting the minimum

age for such service.[18]

Third, "if the right to arms and the duty to serve in the militia were linked in the manner

that [Plaintiff] declare[s], then [his] argument proves too much."  *Id.*  "In some colonies, able-

bodied sixteen-year-olds were obligated to serve in the militia," but Plaintiff is "not challenging

restrictions on handgun possession by or sales to persons under age 18."  *Id.* (citation omitted);

*see* Compl. at Counts I-II (challenging age qualification only  with respect to persons between

---

[17] For example, legislatures have traditionally had broad discretion to prescribe minimum age limits for the exercise of the different privileges and rights that collectively constitute adulthood, and to raise and lower those limits as long as there is a rational basis for the legislature's decisions. *See*, *e.g.*, *Gabree v. King*, 614 F.2d 1, 2 (1st Cir. 1980) (recognizing that "eighteen to twenty-one year olds have historically been denied full rights of adulthood while shouldering such burdens of citizenship as military service," and rejecting equal protection challenge to a state law raising the drinking age to twenty-one); *United States v. Olson*, 473 F.2d 686, 687-88 (8th Cir. 1973) (upholding prior version of federal law setting 21 as the age for jury service after Congress amended law to lower the minimum age for jury service to 18).

[18] Indeed, many of the State militia laws presumed active oversight of minors by parents or legal guardians. For example, Colonial Pennsylvania's 1755 militia act, drafted by Benjamin Franklin, permitted persons under 21 to enroll in the militia but provided "that no youth under the age of twenty-one years, . . . shall be admitted to enroll himself, or be capable of being enrolled, in the said companies or regiments without the consent of his or their parents or guardians, masters or mistresses, in writing under their hands first had and obtained." *An Act for the Better Ordering and Regulating Such as Are Willing and Desirous to Be United for Military Purposes Within This Province*, Nov. 25, 1755, in 3 Jared Sparks, ed., *The Works of Benjamin Franklin* 78, 82-82 (1836). Thus, to the extent it is relevant, the highly regulated context of military service at the Founding is entirely consistent with the existence of age qualifications on the personal purchase of firearms.

19

eighteen and twenty-one).  The fact that a past legislature selected some particular minimum age for militia service thus does not evince an inalienable right in the incidents of militia service in persons of that age. "[A]bsent some clear indication" to the contrary, "the presumption is that a law is not intended to create . . . vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."  *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985) (citation and internal quotation marks omitted).  Otherwise, the unavoidable implication of historical militia laws would be that by requiring sixteen-year-olds to serve in the militia, colonial legislatures bestowed on persons of that age an inalienable right to all the incidents of militia service.

### III.   Plaintiff's Due Process claim fails because age is not a suspect classification under the Equal Protection Clause.

In addition to his Second Amendment claim, Plaintiff also argues that the challenged statutes and regulations violate his "right to equal protection guaranteed under the Due Process Clause of the Fifth Amendment to the United States Constitution."  Compl. ¶ 57; *see generally id.* at Count II.  As with Plaintiff's Second Amendment claim, the Fifth Circuit has already considered and rejected a substantively identical claim brought by similar plaintiffs under 21 years old.  *See NRA*, 700 F.3d at 211-12.  Because age is not a suspect classification under these circumstances, the claim fails again as a matter of law.

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Strict scrutiny is not triggered here because Plaintiff has not established an impermissible interference with his Second Amendment rights and because "age is not a suspect classification

under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000). "Age classifications, unlike governmental conduct based on race or gender, cannot be characterized as so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy." *Id.* (citation and internal quotation marks omitted). Thus, the government "may discriminate on the basis of age without offending" the constitutional guarantee of equal protection "if the age classification in question is rationally related to a legitimate state interest." *Id*.

Where age classifications are concerned, "[t]he rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision." *Id.* Accordingly, although "[r]acial classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests," *id.* at 84 (alterations and citation omitted), and "gender classifications are constitutional only if they serve important governmental objectives and the discriminatory means employed are substantially related to the achievement of those objectives," *id.* (alteration, citation, and internal quotation marks omitted), the government "may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests," *id*. "The Constitution does not preclude reliance on such generalizations," *id.,* "even if it is probably not true that those reasons are valid in the majority of cases," *id.* at 86 (internal quotation marks omitted). "That age proves to be an inaccurate proxy in any individual case is irrelevant." *Id.* at 84; *see also supra* note 17. Consequently, courts will not overturn age classifications unless they are "so unrelated to the achievement of any combination of legitimate purposes" that one "can only conclude that the government's actions were irrational." *Kimel*, 528 U.S. at 84 (alterations and citation omitted). And "because an age classification is presumptively rational, the individual challenging its

constitutionality bears the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* (citation and internal quotation marks omitted).

In light of the legislative record described above, *see supra* Statutory Background, Congress's decision to restrict handgun purchases by individuals under 21 was not irrational. Nor can Plaintiff meet his burden of showing that the age qualifications that Congress decided to impose on commercial handgun purchases were based on facts that "could not reasonably be conceived to be true by the governmental decisionmaker." *Kimel*, 528 U.S. at 84 (citation omitted). Plaintiff's equal protection claim therefore fails.

## CONCLUSION

Because Plaintiff fails to state a valid claim under the Second Amendment or the Fifth Amendment, Defendants respectfully request that the Court dismiss the Complaint in this matter.

Dated:  November 8, 2022

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:      _/s/_ *Jonathan H. Hambrick*_
Jonathan H. Hambrick
VSB #37590
Office of the United States Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219
(804) 819-5400 (phone)
(804) 819-7417 (fax)
jay.h.hambrick@usdoj.gov


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

MICHAEL P. CLENDENEN (D.C. Bar # 1660091)
Trial Attorney
DANIEL RIESS
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0693
Fax: (202) 616-8460
michael.p.clendenen@usdoj.gov

*Attorneys for Defendants*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of November, 2022, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to the following:

> Elliott Harding, Esquire
> Harding Counsel, PLLC
> 608 Elizabeth Avenue
> Charlottesville, VA 22901

> <u>*/s/ Jonathan H. Hambrick*</u>
> Jonathan H. Hambrick
> VSB # 37590
> Attorney for the Defendants
> Office of the United States Attorney
> 919 East Main Street, Suite 1900
> Richmond, Virginia 23219
> Telephone:  (804) 819-5400
> Facsimile:  (804) 771-2316
> Email:  jay.h.hambrick@usdoj.gov