IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| JOHN COREY FRASER, et al., on behalf of themselves and all others similarly situated as a Class,<br><br>     *Plaintiffs*,<br><br> v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES et al.,<br><br>     *Defendants*. | Civil Action No.<br>3:22-cv-00410-REP |

AMICUS BRIEF OF EVERYTOWN FOR GUN SAFETY IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT

            Lauren Cassady Andrews (Bar #92149)
            KRAMER LEVIN NAFTALIS & FRANKEL LLP
            2000 K Street NW, 4th Floor
            Washington, DC 20006
            Phone: (202) 775-4500
            landrews@kramerlevin.com

            *Counsel for Amicus Curiae*
            *Everytown for Gun Safety*

**CORPORATE DISCLOSURE STATEMENT**

Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund) has no parent corporations. It has no stock; hence, no publicly held company owns 10% or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ iii

INTEREST OF AMICUS CURIAE ............................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................. 2

ARGUMENT .................................................................................................................................. 3

    I.    Plaintiffs Have Not Met Their Burden to Establish that the Second Amendment's Plain Text Covers Their Conduct ............................................................. 3

    II.    The Proper Focus for Analysis of Historical Regulation Is 1868, Not 1791 ................. 5

    III.    The Historical Inquiry Continues Beyond 1868 ............................................................ 10

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
   910 F.3d 106 (3d Cir. 2018) ................................................................................................ 1

*Defense Distributed v. Bonta*,
   No. 2:22-cv-6200, 2022 WL 15524977 (C.D. Cal. Oct. 21, 2022) ..................................... 4

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ................................................................................................... *passim*

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ............................................................................................ 6, 7

*Gould v. Morgan*,
   907 F.3d 659 (1st Cir. 2018) ................................................................................................ 6

*Kennedy v. Bremerton School District*,
   142 S. Ct. 2407 (2022) ......................................................................................................... 3

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) .......................................................................................................... 6, 7

*Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
   700 F.3d 185 (5th Cir. 2012) ............................................................................................ 5, 9

*New York State Rifle & Pistol Association v. Bruen*,
   142 S. Ct. 2111 (2022) ............................................................................................... *passim*

*Rehaif v. United States*,
   139 S. Ct. 2191 (2019) ........................................................................................................ 1

*Rupp v. Becerra*,
   401 F. Supp. 3d 978 (C.D. Cal. 2019), *vacated and remanded*, No. 19-56004,
   2022 WL 2382319 (9th Cir. June 28, 2022) ...................................................................... 1

*Teter v. Connors*,
   460 F. Supp. 3d 989 (D. Haw. 2020), *appeal docketed*, No. 20-15948 (9th Cir.
   May 19, 2020) ...................................................................................................................... 1

*United States v. Greeno*,
   679 F.3d 510 (6th Cir. 2012) ................................................................................................ 6

*United States v. Tilotta*,
   No. 3:19-cr-4768, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) ....................................... 4

## TABLE OF AUTHORITIES—Continued

**Other Authorities**

Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* xiv (1998) ...........................8

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine*,
    13 Charleston L. Rev. 205 (2018)......................................................................................9

Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation*
    (Jan. 15, 2021), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917...................8, 9

Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation*,
    97 Ind. L.J. 1439 (2022).................................................................................................5, 7

Saul Cornell, *"Infants" and Arms Bearing in the Era of the Second Amendment:
Making Sense of the Historical Record*, 40 Yale L. & Pol'y Rev. Inter Alia 1
    (2021).................................................................................................................................4

Transcript of Oral Argument, *New York State Rifle & Pistol Ass'n v. Bruen*,
    No. 20-843 (U.S.)................................................................................................................ 7

## INTEREST OF AMICUS CURIAE

Everytown is the nation's largest gun-violence-prevention organization, with nearly ten million supporters across the country. Everytown was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after a gunman murdered twenty children and six adults at an elementary school in Newtown, Connecticut. Everytown also includes a large network of gun-violence survivors who are empowered to share their stories and advocate for responsible gun laws, as well as a national movement of high school and college students working to end gun violence.[1]

Over the past several years, Everytown has devoted substantial resources to researching and developing expertise in historical firearms legislation. Everytown has drawn on that expertise to file more than 50 amicus briefs in Second Amendment and other firearms cases, offering historical and doctrinal analysis, as well as social science and public policy research, that might otherwise be overlooked. Several courts have expressly relied on Everytown's amicus briefs in deciding Second Amendment and other firearms cases. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 112 n.8 (3d Cir. 2018); *Rupp v. Becerra*, 401 F. Supp. 3d 978, 991-92, 992 n.11 (C.D. Cal. 2019), *vacated and remanded*, No. 19-56004, 2022 WL 2382319 (9th Cir. June 28, 2022); *Teter v. Connors*, 460 F. Supp. 3d 989, 1002-03 (D. Haw. 2020), *appeal docketed*, No. 20-15948 (9th Cir. May 19, 2020); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2210-11, 2210 n.4, 2211 n.7 (2019) (Alito, J., dissenting).

---

[1] No party's counsel authored this brief in whole or part and, apart from Everytown, no person contributed money to fund its preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The federal criminal statutes and implementing regulations Plaintiffs challenge in this case make it unlawful for federally licensed firearms dealers ("FFLs") to sell handguns, or the ammunition for a handgun, to persons under the age of 21. Those statutes and regulations are constitutional under the approach to Second Amendment cases set out in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), for the reasons stated in the Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 22) ("Defs.' Mem.").[2] Indeed, Justice Alito stated in his *Bruen* concurrence that evidence about gun violence affecting children and adolescents was irrelevant to that case, explaining that "federal law generally forbids the possession of a handgun by a person who is under the age of 18, *and bars the sale of a handgun to anyone under the age of 21*," 142 S. Ct. at 2157-58 (Alito, J., concurring) (emphasis added) (citation omitted)—strongly suggesting that he saw nothing in *Bruen* to disturb those laws.[3]

Everytown for Gun Safety submits this amicus brief to address three points in further support of dismissal. *First*, on the initial, textual inquiry of the *Bruen* framework, Plaintiffs have the burden—and, as discussed below, they have not met that burden. *Second*, in applying the historical inquiry of the *Bruen* framework—asking whether the regulation is "consistent with the Nation's historical tradition of firearm regulation," *id.* at 2130 (majority opinion)—the analysis should center on 1868, not 1791. This is as true for the federal statutes and regulations challenged

---

[2] This amicus brief addresses only aspects of Plaintiffs' Second Amendment claim. The Court should grant the motion to dismiss in its entirety for all the reasons Defendants set out. *See* Defs.' Mem. at 8-10 (Plaintiffs lack standing); *id.* at 10-21 (Second Amendment claim); *id.* at 21-23 (equal protection claim).

[3] *See also id.* at 2157 ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun.").

in this case (to which the Second Amendment applies directly) as it is for state gun laws (to which the Second Amendment applies through its incorporation under the Fourteenth Amendment). *Third*, 1868 is not a cutoff; examining "legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is also "a critical tool of constitutional interpretation." *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (second emphasis added).

## ARGUMENT

### I. Plaintiffs Have Not Met Their Burden to Establish that the Second Amendment's Plain Text Covers Their Conduct

*Bruen*'s framework requires both a textual inquiry and a historical inquiry. The court first must ask whether "the Second Amendment's plain text covers an individual's conduct." 142 S. Ct. at 2129-30. If so, the court then moves on to ask whether the government has shown that its regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. *See generally id.* at 2134-38 (separating application of test into Part III.A (text) and Part III.B (history)).

Plaintiffs have the burden on the initial, textual inquiry. *Bruen* itself makes that clear, by indicating that a presumption that the Constitution protects a plaintiff's conduct arises *after* ("when" or "because") the textual inquiry is satisfied. *See* 142 S. Ct. at 2126, 2141 n.11. If the burden were on the government throughout—in what would be an extraordinary departure from ordinary principles of constitutional litigation—the Court would have said that the presumption exists from the outset. Placing the initial burden on the plaintiff also accords with the Supreme Court's approach to other constitutional issues. For example, just a week after *Bruen*, the Court announced in *Kennedy v. Bremerton School District*, 142 S. Ct. 2407 (2022), that, "[u]nder th[e] Court's precedents, a plaintiff bears certain burdens to demonstrate an infringement of his rights

3

under the Free Exercise and Free Speech Clauses. If the plaintiff carries these burdens, the focus then shifts to the defendant to [justify] … its actions[.]" *Id.* at 2421.

Plaintiffs have not met their textual burden in this case, for at least two reasons. First, Plaintiffs have not shown that the plain text of the Second Amendment covers 18-to-20-year-olds. In both *Bruen* and *Heller*, there was no dispute that the plaintiffs—as "ordinary, law-abiding, *adult* citizens," *Bruen*, 142 S. Ct. at 2134 (emphasis added)—were part of "the people" whom the Second Amendment protects. *Id.* (citing *Heller*, 554 U.S. at 580); *see also Heller*, 554 U.S. at 575-76. Here, however, the question is a different one: whether those younger than 21 are considered part of "the people" covered by the Amendment's text. As recent scholarship by a leading Second Amendment historian has confirmed, they are not. *See* Saul Cornell, *"Infants" and Arms Bearing in the Era of the Second Amendment: Making Sense of the Historical Record*, 40 Yale L. & Pol'y Rev. Inter Alia 1, 2 (2021) (explaining that, "when framed in historically correct terms," the answer to the question whether "the Second Amendment recognize[s] a right of infants, meaning those under twenty-one, to keep and bear arms" is "simple: no"); *see also* Defs.' Mem. at 12-13. That alone is enough to defeat Plaintiffs' Second Amendment claim.

Second, as Defendants explain, the challenged laws "regulate only commercial sales of firearms and ammunition to persons under the age of 21, and only those sales by licensed dealers, as opposed to private sales or gun shows." Defs.' Mem. at 9. Plaintiffs have not met their burden, even at the pleading stage, to adequately connect that regulation to the constitutional text: "keep and bear." *Cf. United States v. Tilotta*, No. 3:19-cr-4768, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022) (explaining that, "textually, the ordinary meaning of 'keep and bear' does not include 'sell or transfer'"); *Defense Distributed v. Bonta*, No. 2:22-cv-6200, 2022 WL 15524977, at *4 (C.D. Cal. Oct. 21, 2022) (concluding that the Second Amendment's plain text "quite-clearly"

4

does not include any "implicit[]" right to "acquire and manufacture firearms" or "to purchase arms" (internal quotation marks omitted)), *adopted by* 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022); *see also Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 206 (5th Cir. 2012) (federal laws and regulations restricting licensed dealers from selling to those under 21 "resemble 'laws imposing conditions and qualifications on the commercial sale of arms,' which *Heller* deemed 'presumptively lawful'" (quoting *Heller*, 554 U.S. at 626-27 & n.26)).[4] For this reason, too, Plaintiffs have not satisfied their textual burden under *Bruen*, and so their Second Amendment claim fails as a matter of law.

## II. The Proper Focus for Analysis of Historical Regulation Is 1868, Not 1791

If the Court proceeds to the second, historical inquiry, it should first conclude that the most relevant time period for that inquiry centers on 1868, when the Fourteenth Amendment was ratified. That ratification not only made the Second Amendment applicable to the states, but, as scholars have explained, "it also requires an updated 1868 understanding of the Bill of Rights itself." Kurt T. Lash, *Respeaking the Bill of Rights: A New Doctrine of Incorporation*, 97 Ind. L.J. 1439, 1441 (2022); *see Bruen*, 142 S. Ct. at 2138. Accordingly, under this originalist approach, it is the 1868 understanding of the right to keep and bear arms that should govern in all Second Amendment cases after *Bruen*—including challenges, like this one, to federal gun laws.

To begin with, in a case involving a state law, focusing on 1868 is the only way to answer the originalist question: How did the people understand the right at the time of its adoption? There was no right to keep and bear arms constraining the states under the U.S. Constitution until 1868; as *Bruen* correctly observed, a state "is bound to respect the right to keep and bear arms because

---

[4] Justice Kavanaugh, joined by the Chief Justice, repeated that portion of *Heller* in his *Bruen* concurrence. *See* 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

of the Fourteenth Amendment, not the Second." 142 S. Ct. at 2137. Thus, when the people chose to extend the Bill of Rights to the states in 1868, *their* understanding of the scope of each right at that time should control the originalist analysis today. In a case against a state, to elevate a founding-era understanding of the right over the Reconstruction-era understanding would be to reject what the people understood the right to be at the time they gave it effect.

Several circuits reached this conclusion in analyzing the tradition of firearm regulation at the first, historical step of the Second Amendment framework that courts applied prior to *Bruen*.[5] *See Gould*, 907 F.3d at 669 ("Because the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified)."); *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011) ("*McDonald* [*v. City of Chicago*, 561 U.S. 742 (2010),] confirms that if the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified."); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (following *Ezell*). *Bruen* does nothing to alter that conclusion.

There is good reason for this to be the leading originalist view: insisting that the 1791 understanding should apply against the states does not make sense in light of the Supreme Court's lengthy analysis in *McDonald* of the understanding of the right to keep and bear arms around 1868. *See McDonald*, 561 U.S. at 770-78 (plurality opinion); *id.* at 826-38 (Thomas, J., concurring in part and concurring in the judgment). It would be extraordinary if the public understanding of the

---

[5] Between *Heller* and *Bruen*, every federal court of appeals to address the issue concluded that analyzing Second Amendment claims should proceed in two steps: a historical step, in which courts examined whether the challenged law restricted conduct falling within the scope of the Second Amendment, as historically understood; and, if so, a means-end scrutiny step, where courts examined the fit between the government's interest and the challenged law, usually under intermediate scrutiny. *See Bruen*, 142 S. Ct. at 2126-27; *Gould v. Morgan*, 907 F.3d 659, 668 (1st Cir. 2018) (citing cases), *criticized by Bruen*, 142 S. Ct. at 2124, 2126-27.

right in 1868 were so central to *whether* the right was incorporated against the states, but irrelevant to *what* right was incorporated. That is presumably why the Seventh Circuit, in an opinion by Judge Sykes, reads *McDonald* to have "confirm[ed] that when state- or local-government action is challenged, the focus of the original-meaning inquiry is carried forward in time; the Second Amendment's scope as a limitation on the States depends on how the right was understood when the Fourteenth Amendment was ratified." *Ezell*, 651 F.3d at 702.

Further confirmation that 1868 is the correct focus, at least as to Second Amendment challenges to state gun laws, appears in the *Bruen* oral argument, where the following exchange took place between Justice Thomas and former Solicitor General Paul Clement as counsel for the NRA's New York affiliate:

> JUSTICE THOMAS: [Y]ou mentioned the founding and you mentioned post-Reconstruction. But, if we are to analyze this based upon the history or tradition, should we look at the founding, or should we look at the time of the adoption of the Fourteenth Amendment, which then, of course, applies it to the states?
>
> MR. CLEMENT: So, Justice Thomas, I suppose, if there were a case where there was a contradiction between those two, you know, and the case arose in the states, I would think there would be a decent argument for looking at the history at the time of Reconstruction … and giving preference to that over the founding.

Tr. of Oral Arg. at 8:2-17, *Bruen* (No. 20-843).

To be sure, the choice between 1791 and 1868 is a less straightforward one with respect to challenges, like this one, to federal gun laws, to which the Second Amendment applies directly rather than through the Fourteenth Amendment. If the public understanding of the Bill of Rights changed between ratification in 1791 and incorporation in 1868, then "[o]riginalists seem," at first glance, to be "forced to either abandon originalism or accept a world in which we have two Bills of Rights, one applicable against the federal government and invested with 1791 meanings and one incorporated against the states and invested with 1868 meanings." Lash, 97 Ind. L.J. at 1441.

7

But *Bruen* rejected the possibility of different standards for the state and federal governments. 142 S. Ct. at 2137 ("[W]e have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government."). Accordingly, originalists must justify applying either the 1868 understanding or the 1791 understanding (where they conflict) to all levels of government.

Existing doctrine does not resolve this choice between 1791 and 1868: *Bruen* noted prior decisions that had "assumed" that the scope for both state and federal governments "is pegged to the public understanding … in 1791." *Id*. But if the majority believed those decisions controlled the issue, it would have said so. Instead, the Court expressly left open the question whether 1868 or 1791 is the relevant focus, and pointed to "ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government)." *Id*. at 2138. And the Court then cited two scholars who support the 1868 view, Professors Akhil Amar and Kurt Lash, and none who supports the 1791 view. *See id.* (citing Akhil Reed Amar, *The Bill of Rights: Creation and Reconstruction* xiv, 223, 243 (1998), and Kurt T. Lash, *Re-Speaking the Bill of Rights: A New Doctrine of Incorporation* (Jan. 15, 2021) (manuscript, at 2), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3766917 (now published at 97 Ind. L.J. 1439)).

On Professor Amar's account, when the Fourteenth Amendment was ratified, then-contemporary understandings of incorporated rights could transform their meaning not only against the states, but also as to the federal government.[6] More recently, Professor Lash wrote—

---

[6] *See* Amar, *The Bill of Rights*, at xiv (account is "attentive to the possibility" that a "particular principle in the Bill of Rights may change its shape in the process of absorption into the Fourteenth Amendment"); *id.* at 223 ("[W]hen we 'apply' the Bill of Rights against the states

8

as quoted in *Bruen*—"When the people adopted the Fourteenth Amendment into existence, they readopted the original Bill of Rights, and did so in a manner that invested those original 1791 texts with new 1868 meanings." Lash, manuscript, at 2; *see Bruen*, 142 S. Ct. at 2138. On this view, too, 1868 meanings bind both the states and the federal government.

The 1868 view is also consistent with the passage in *Bruen* instructing the lower courts on historical methodology through the example of sensitive places restrictions. There, the Court indicated that "18th- *and 19th-century*" laws contained adequate restrictions on the possession of guns in legislative assemblies, polling places, and courthouses to satisfy its historical analysis, 142 S. Ct. at 2133 (emphasis added)—an incomprehensible statement if the Court believed that the 18th century was the only relevant period. Notably, in the pages of the article and brief the Court cited for that proposition, *see id.*, all of the 19th-century laws restricting guns in any of the three locations the Court listed were from the *late* 19th century.[7]

In the end, for the reasons set out in Defendants' motion papers, this Court should uphold the challenged statutes and regulations, and dismiss Plaintiffs' Second Amendment claim, whether it focuses on the period around 1791 or the period around 1868. *See, e.g.*, Defs.' Mem. at 11-17; *see also Nat'l Rifle Ass'n*, 700 F.3d at 204 ("Modern restrictions on the ability of persons under

---

today, we must first and foremost reflect on the meaning and spirit of the amendment of 1866, not the Bill of 1789. … [I]n the very process of being absorbed into the Fourteenth Amendment, various rights and freedoms of the original Bill may be subtly but importantly transformed[.]"); *id.* at 243 (arguing that "the Fourteenth Amendment has a doctrinal 'feedback effect' against the federal government"); *see also id.* at 283 ("[W]ords inserted into the Constitution in 1791 must be read afresh after 1866.").

[7] *See* David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine*, 13 Charleston L. Rev. 205, 244-47 (2018) (citing 1870 Louisiana law, 1874 and 1886 Maryland laws, 1873 Texas law, and 1874 decision upholding 1870 Georgia law); Br. for Indep. Inst. as Amicus Curiae at 11-17, *Bruen* (No. 20-843) (July 20, 2021) (disputing relevance of 19th-century laws but (at 16 n.10) citing 1869 Tennessee, 1870 Texas, and 1890 Oklahoma laws that prohibited guns in (among others) polling places).

9

21 to purchase handguns … seem, to us, to be firmly historically rooted."). But if this Court prefers to settle the issue the Supreme Court left open, it should conclude that 1868, not 1791, is the correct focus for the historical inquiry.

### III. The Historical Inquiry Continues Beyond 1868

In recognizing that the period around 1868 is most relevant in determining the scope of the right, this Court should acknowledge that 1868 is not a cutoff; *Heller* instructs that "examination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is also "a critical tool of constitutional interpretation." 554 U.S. at 605 (second emphasis added); *see also Bruen*, 142 S. Ct. at 2127-28 (quoting same). *Bruen* clarified that, under this passage in *Heller*, materially later history that *contradicts* the established original meaning of the constitutional text at the relevant point in time would not change that meaning. *See* 142 S. Ct. at 2137, 2154 n.28. But it emphasized that, conversely, "a regular course of practice can liquidate [and] settle the meaning of disputed or indeterminate terms [and] phrases in the Constitution." *Id.* at 2136 (cleaned up) (quoting decision quoting James Madison).

Here, state laws from the second half of the 19th century establish the meaning of the right to keep and bear arms at the time of the Fourteenth Amendment's adoption, and speak with one voice. *See, e.g.*, Defs.' Mem. at 13 (noting that "[d]uring the nineteenth century, 19 States and the District of Columbia enacted laws expressly restricting the ability of persons under 21 to purchase or use particular firearms, or restricting the ability of 'minors' while the state's age of majority was set at 21."). But even if this Court were to conclude (contrary to the scholars the Supreme Court cited) that the relevant date is 1791, not 1868, and even if it were to conclude (contrary to what Defendants have shown) that the status of the right vis-à-vis those under 21 was uncertain at the time of the founding, it should then consider the 19th-century evidence and recognize that it

10

"settle[s] the meaning of" the right as one that did not extend to those under 21—and that allows for laws like the statutes and regulations challenged here. It is, after all, simply not plausible for the Plaintiffs to contend that today's generation, 231 years removed from the Second Amendment's ratification, is better able to determine the 1791 meaning of its text than was the Reconstruction generation, 77 years removed.

## CONCLUSION

The Court should grant Defendants' motion to dismiss Plaintiffs' First Amended Complaint.

Dated: December 5, 2022                    Respectfully submitted,

/s/ *Lauren C. Andrews*
Lauren Cassady Andrews (Bar #92149)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
2000 K Street NW, 4th Floor
Washington, DC 20006
Phone: (202) 775-4500
landrews@kramerlevin.com

*Counsel for Amicus Curiae*
*Everytown for Gun Safety*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2022, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Eastern District of Virginia by using the CM/ECF system. All participants will be served by the CM/ECF system.

/s/ *Lauren C. Andrews*
Lauren Cassady Andrews (Bar #92149)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
2000 K Street NW, 4th Floor
Washington, DC 20006
Phone: (202) 775-4500
landrews@kramerlevin.com

*Counsel for Amicus Curiae
Everytown for Gun Safety*