**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **JOHN COREY FRASER, et al,** | ) | |
| **on behalf of themselves and all** | ) | |
| **others similarly situated as a Class;** | ) | ) |
| *Plaintiffs*, | ) | **Case No. 3:22-cv-00410** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BUREAU OF ALCOHOL,** | ) | |
| **TOBACCO, FIREARMS** | ) | **CLASS ACTION** |
| **AND EXPLOSIVES, et al.** | | |
| *Defendants* | | |

**PLAINTIFFS' REPLY TO THE DEFENDANTS' RESPONSE IN OPPOSITION TO**
**THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW the Plaintiffs, Mr. John "Corey" Fraser, Mr. Joshua McCoy, Mr. Tyler McGrath, and Mr. Ian Shackley, (collectively, "Plaintiffs"), by and through counsel, and on behalf of themselves and a pending Class of those similarly situated, provide their Reply to the Defendants' Response in Opposition to their Motion for Summary Judgment.

**Argument**

I.     **The Plaintiffs Have Standing And Do Not Need To Show Whether Their Parents Would or Would Not Purchase Handguns For Them Because Such A Limiting, Arbitrary Requirement Is Unconstitutional.**

The Government argues that the Plaintiffs lack standing to bring this suit. To establish Article III standing to bring a suit before this Court, a plaintiff (1) "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely . . . that the injury will be redressed by a favorable

1

decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Plaintiffs suffer from an injury that is both actual and inevitable. It does not come as the result of third-party action and such injury is capable of redress by this Court by granting the relief sought in the Complaint. Therefore, the Plaintiffs have standing to proceed with their claims. Mr. Fraser was denied his purchase of a previously unowned handgun from an FFL due to the laws at issue. Aware of Mr. Fraser's denial from purchase and their inevitable denials, should they make a similar attempt, the other Plaintiffs are not required to engage in a frivolous exercise or to entice a sale from an FFL to establish standing—a potentially unlawful act of aiding, abetting, or conspiring with an FFL to violate the laws at issue.

The Defendants argue that FFLs may sell handguns to the parents or guardians of those under twenty-one, and such parents may then gift these firearms to their children if they are not otherwise prohibited from receiving or possessing a firearm. *See* Opinion of ATF Chief Counsel, No. 23362 (Dec. 5, 1983). These parents may not buy firearms for these adult children with money provided by their children if they are under the age of twenty-one. *See Hirschfeld v. Bureau of Alcohol, Tobacco & Explosives*, 5 F.4th 407, 413 n.4 (4th Cir. 2021) (vacated for mootness); *see also* 18 U.S.C. §§ 922(a)(6), 924(a)(1)(A); *see also Abramski v. United States*, 573 U.S. 169, 193 (2014) (finding a violation of §§ 922(a)(6) and 924(a)(1)(A) when an individual prohibited from purchasing gun used straw man to acquire it). This eliminates their ability to engage in the protected activity of commercial procurement of handguns—the "quintessential self-defense weapon." *Heller*, at 629. The Plaintiffs remain subject to injury capable of redress, therefore they maintain standing for these claims to be ruled upon on the merits.

Free citizens do not maintain "legal guardians" or other State-sanctioned intermediaries for the purposes of exercising fundamental liberties, for they are fully emancipated adults and the

rights are natural. Parental involvement, generally, is not a variable by which the constitution allows for distinction in the exercise of fundamental liberty. *Cf. Trimble v. Gordon*, 430 U.S. 762, 769 (1977) (finding parentage to be an unconstitutional distinction for purposes of equal protection). The Defendants argue that because the Plaintiffs have not shown that their parents would not, or could not, buy the firearms at issue, they have failed to satisfy the requisite showing that the laws are facially invalid.

A law which requires the Plaintiffs to go through this exercise and subject their fundamental liberties to a dependency on third-parties effectively relegates them to second class citizens and the Second Amendment to a second class right. There is no example in the history of Constitutional jurisprudence of a law-abiding, adult citizen of able mind and body having to subject their exercise of a fundamental liberty to the approval or participation of his or her parent or some other third party. Moreover, parental-oversight restrictions on other fundamental liberties have been routinely invalidated, even where minors rather than adults are involved. *See, e.g., Planned Parenthood v. Danforth*, 428 U.S. 52, 74–75 (1976). The "parent as a third-party intermediary" doctrine does not exist and this case involves adults.

A fundamental liberty is infringed when the only means by which it may be "exercised" is legally dependent on another individual. This is particularly the case when an adult's access to their personal liberty is subject to arbitrary non-State actors, such as their parents. For example, an abusive parent could be the specific individual that the buyer is seeking to defend themselves from when they attempt to purchase their handgun. Should such liberty be subject to the threatening parent's discretion? Another limitation appears when the parent is deceased, mentally or legally incapacitated, or just generally against firearm ownership altogether regardless of the child's desires or proficiency in the use and safety measures for firearms. A parent could be legally

3

incapable of purchasing the firearm due to a myriad of legal barriers, thereby rendering the purchase for their otherwise qualified child to be impossible. The Defendants' argument is more appropriately considered a defense on the merits to the regulatory scheme, not an argument against Article III standing. The Constitution's Article III standing requirement does not demand the Plaintiffs to subject fundamental liberties to the discretion of parents and no such requirement has ever been upheld. These individuals are independent. The Fourth Circuit considered the exact challenge before this Court and never held the plaintiffs lacked standing based on a failure to plead that their parents actually refused to purchase the relevant handguns. *See Hirschfeld*, 5 F.4th 407 (ruling on the merits); *see also National Rifle Ass'n v. BATFE*, 700 F.3d 185, 196 (5th Cir. 2012) (ruling on the merits); *see Reese v. BATFE*, 2022 U.S. Dist. LEXIS 230140 at *8 (W.D. La. Dec. 21, 2022) ("Because the Fifth Circuit has rejected the standing arguments presented in this case, the Court finds Plaintiffs have established standing."). Should this Court adopt the Government's position, it would be unprecedented and run afoul of every basic tenant concerning justiciability and constitutional protections. The Plaintiffs need not allege or prove that their parents would or would not purchase them the firearms at issue. The Defendants are attempting to salvage the laws at issue, and their unconstitutional proscription on the commercial sale of handguns, by relying on a mechanism (parental-approval and participation) that presents an undue burden, a violation of due process, and a violation of the Second Amendment.

II. **The Laws At Issue Violate The Fundamental Right To Bear Arms In Self-Defense As Protected By The Second Amendment.**

The Defendants claim that the restrictions at issue can find analogous restrictions on ownership at the time of our Nation's found and that the Plaintiffs "gloss[ed] over the specific historical conditions and restrictions that the *Heller* Court expressly approved." Def. Resp. at 4 (citing *Heller*'s reference to "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws

4

forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27.

The Plaintiffs respectfully note that they specifically addressed this issue in an in-depth, distinguishing manner in their motion for summary. *See* Motion for Summary Judgment at pp. 11–16. There are no lawful, Founding-era analogues or longstanding prohibitions against the sale of items commonly used for self-defense to law-abiding, able-bodied adult citizens and the restrictions at issue in this case lack the material features of those "presumptively valid" restrictions illustrated in *Heller*. The "longstanding prohibition" exception is inapplicable.

**III.    The Defendants' Argument That Founding-Era Minors Remained Unemancipated From Their Parents Even Though They Were Militia Age Is Irrelevant Because Eighteen-Year-Olds Are Legally Emancipated And Subject To Conscription Without Parental Involvement.**

The Defendants argue that a minority few of states had Founding-era laws which required parental approval for their sons' engagement in the militia if these men were younger than twenty-one, therefore the Plaintiffs' reference to Founding-era militia age is irrelevant for purposes of determining the scope of the Second Amendment. Eighteen-year-olds are not minors, they are no longer subject to such parental restrictions on emancipation, they are capable of being conscripted into the military without any parental consent, and the age of full civic engagement and minority age status has been lowered to eighteen. There were no analogous barriers for commercial access to a pistol or handgun based on being a minor or predicated on parental approval.

**IV.    Post-Ratification History Confirms That The Liberty To Commercially Procure The Quintessential Self-Defense Weapon Is Protected Conduct Within The Scope of the Second Amendment.**

The Government's reference to the Constitution's myriad of age-based limitations on other liberties establishes that the Founders knew how to include an age-limit on exercising such liberty if they wanted to do so. The Constitution is not interpreted as a document which naturally limits

5

one's fundamental liberty but protects it. The Second Amendment's lack of an age limit is not a reflection that the Founders intended to bar the protection, but to extend it. The maxim *expressio unius est exclusio alterius* is applicable. *See, e.g., United States Term Limits v. Thornton*, 515 U.S. 779, 868 (1995) (Thomas, J., dissenting). "When the Framers decided which qualifications to include in the Constitution, they also decided not to include any other qualifications in the Constitution." *Id*.

**V.  Youth-Based Classifications For Adult Citizens Must Be Subject To A Degree of Heightened Scrutiny.**

The Defendants argue that "[i]n three years (or less), the[] [Plaintiffs] will 'age out' of their supposed disability, enjoying the full panoply of rights under the Second Amendment." Def. Resp. at 13. They also argue that youth is not an "immutable" characteristic because, as a classification, it eventually "disappears." This argument fails for two primary reasons: First, our civic engagement does not end at a particular period of time, whereas it is non-existent until voting age commences at eighteen years old. Second, immutability in the constitutional context refers to a distinguishing trait by which the distinguished individual is incapable of changing or manipulating it because of practical or legal limitations. For example, religious adherents are capable of changing their faith yet the Equal Protection Clause prohibits classifications based on religion because these are legally immutable characteristics. Meanwhile, religious conversion takes place every day and would therefore not be "immutable" pursuant to the Defendants' argument. A nineteen-year-old is incapable of taking any independent action to alter their age such that they would be twenty-one years old. For the purposes of constitutional scrutiny, an adult's youth is an immutable characteristic.

**VI.  The Defendants Have No Rebuttal To The Fact That The Laws At Issue Fail A Rational Basis Review.**

The Defendants challenge the merits of the Plaintiffs' Second Amendment and Equal Protection arguments but fail to defend against the fact that, at minimum, the laws at issue violate

rational basis and run afoul of due process and the equal protection clause. It is irrational to discriminate against young adults and relegating them to a market devoid of regulatory oversight, background checks, or licensure requirements in the name of deterring clandestine firearm possession while also requiring these individuals to go through the same exact system in the name of deterring clandestine possession of other firearms. The concepts are mutually exclusive, they have no constitutional or factual support, and they constitute an irrational classification for purposes of due process and equal protection.

## Conclusion

WHEREFORE, the Plaintiffs, on behalf of themselves and a Class respectfully request for this honorable Court to GRANT the Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

_____/s_____
Elliott M. Harding, Esq.
*Counsel for the Plaintiffs & Class*
Harding Counsel, PLLC
608 Elizabeth Ave.,
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@HardingCounsel.com

7

## CERTIFICATE OF SERVICE

On January 10, 2023, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Eastern District of Virginia using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically as well.

Respectfully submitted,

_____/s_____
Elliott M. Harding, Esq.
*Counsel for the Plaintiffs & Prospective
Class*
Harding Counsel, PLLC
608 Elizabeth Ave.,
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@HardingCounsel.com

8