

Public Law 90–351
90th Congress, H. R. 5037
June 19, 1968

# An Act

To assist State and local governments in reducing the incidence of crime, to increase the effectiveness, fairness, and coordination of law enforcement and criminal justice systems at all levels of government, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Omnibus Crime Control and Safe Streets Act of 1968".

Omnibus Crime Control and Safe Streets Act of 1968.

## TITLE I—LAW ENFORCEMENT ASSISTANCE

### DECLARATIONS AND PURPOSE

Congress finds that the high incidence of crime in the United States threatens the peace, security, and general welfare of the Nation and its citizens. To prevent crime and to insure the greater safety of the people, law enforcement efforts must be better coordinated, intensified, and made more effective at all levels of government.

Congress finds further that crime is essentially a local problem that must be dealt with by State and local governments if it is to be controlled effectively.

82 STAT. 197
82 STAT. 198

It is therefore the declared policy of the Congress to assist State and local governments in strengthening and improving law enforcement at every level by national assistance. It is the purpose of this title to (1) encourage States and units of general local government to prepare and adopt comprehensive plans based upon their evaluation of State and local problems of law enforcement; (2) authorize grants to States and units of local government in order to improve and strengthen law enforcement; and (3) encourage research and development directed toward the improvement of law enforcement and the development of new methods for the prevention and reduction of crime and the detection and apprehension of criminals.

### PART A—LAW ENFORCEMENT ASSISTANCE ADMINISTRATION

SEC. 101. (a) There is hereby established within the Department of Justice, under the general authority of the Attorney General, a Law Enforcement Assistance Administration (hereafter referred to in this title as "Administration").

(b) The Administration shall be composed of an Administrator of Law Enforcement Assistance and two Associate Administrators of Law Enforcement Assistance, who shall be appointed by the President, by and with the advice and consent of the Senate. No more than two members of the Administration shall be the same political party, and members shall be appointed with due regard to their fitness, knowledge, and experience to perform the functions, powers, and duties vested in the Administration by this title.

(c) It shall be the duty of the Administration to exercise all of the functions, powers, and duties created and established by this title, except as otherwise provided.

### PART B—PLANNING GRANTS

SEC. 201. It is the purpose of this part to encourage States and units of general local government to prepare and adopt comprehensive law enforcement plans based on their evaluation of State and local problems of law enforcement.

Pub. Law 90-351    - 2 -    June 19, 1968

State planning
agencies.

Sec. 202. The Administration shall make grants to the States for the establishment and operation of State law enforcement planning agencies (hereinafter referred to in this title as "State planning agencies") for the preparation, development, and revision of the State plans required under section 303 of this title. Any State may make application to the Administration for such grants within six months of the date of enactment of this Act.

**82 STAT. 198**
82 STAT. 199

Sec. 203. (a) A grant made under this part to a State shall be utilized by the State to establish and maintain a State planning agency. Such agency shall be created or designated by the chief executive of the State and shall be subject to his jurisdiction. The State planning agency shall be representative of law enforcement agencies of the State and of the units of general local government within the State.

Functions.

(b) The State planning agency shall—

(1) develop, in accordance with part C, a comprehensive statewide plan for the improvement of law enforcement throughout the State;

(2) define, develop, and correlate programs and projects for the State and the units of general local government in the State or combinations of States or units for improvement in law enforcement; and

(3) establish priorities for the improvement in law enforcement throughout the State.

(c) The State planning agency shall make such arrangements as such agency deems necessary to provide that at least 40 per centum of all Federal funds granted to such agency under this part for any fiscal year will be available to units of general local government or combinations of such units to enable such units and combinations of such units to participate in the formulation of the comprehensive State plan required under this part. Any portion of such 40 per centum in any State for any fiscal year not required for the purpose set forth in the preceding sentence shall be available for expenditure by such State agency from time to time on dates during such year as the Administration may fix, for the development by it of the State plan required under this part.

Sec. 204. A Federal grant authorized under this part shall not exceed 90 per centum of the expenses of the establishment and operation of the State planning agency, including the preparation, development, and revision of the plans required by part C. Where Federal grants under this part are made directly to units of general local government as authorized by section 305, the grant shall not exceed 90 per centum of the expenses of local planning, including the preparation, development, and revision of plans required by part C.

Allocation of
funds.

Sec. 205. Funds appropriated to make grants under this part for a fiscal year shall be allocated by the Administration among the States for use therein by the State planning agency or units of general local government, as the case may be. The Administration shall allocate $100,000 to each of the States; and it shall then allocate the remainder of such funds available among the States according to their relative populations.

PART C—GRANTS FOR LAW ENFORCEMENT PURPOSES

Sec. 301. (a) It is the purpose of this part to encourage States and units of general local government to carry out programs and projects to improve and strengthen law enforcement.

(b) The Administration is authorized to make grants to States having comprehensive State plans approved by it under this part, for—

June 19, 1968            - 3 -            Pub. Law 90-351

(1) Public protection, including the development, demonstration, evaluation, implementation, and purchase of methods, devices, facilities, and equipment designed to improve and strengthen law enforcement and reduce crime in public and private places.

(2) The recruiting of law enforcement personnel and the training of personnel in law enforcement.

(3) Public education relating to crime prevention and encouraging respect for law and order, including education programs in schools and programs to improve public understanding of and cooperation with law enforcement agencies.

(4) Construction of buildings or other physical facilities which would fulfill or implement the purposes of this section.

(5) The organization, education, and training of special law enforcement units to combat organized crime, including the establishment and development of State organized crime prevention councils, the recruiting and training of special investigative and prosecuting personnel, and the development of systems for collecting, storing, and disseminating information relating to the control of organized crime.

(6) The organization, education, and training of regular law enforcement officers, special law enforcement units, and law enforcement reserve units for the prevention, detection, and control of riots and other violent civil disorders, including the acquisition of riot control equipment.

(7) The recruiting, organization, training and education of community service officers to serve with and assist local and State law enforcement agencies in the discharge of their duties through such activities as recruiting; improvement of police-community relations and grievance resolution mechanisms; community patrol activities; encouragement of neighborhood participation in crime prevention and public safety efforts; and other activities designed to improve police capabilities, public safety and the objectives of this section: *Provided*, That in no case shall a grant be made under this subcategory without the approval of the local government or local law enforcement agency.

(c) The amount of any Federal grant made under paragraph (5) or (6) of subsection (b) of this section may be up to 75 per centum of the cost of the program or project specified in the application for such grant. The amount of any grant made under paragraph (4) of subsection (b) of this section may be up to 50 per centum of the cost of the program or project specified in the application for such grant. The amount of any other grant made under this part may be up to 60 per centum of the cost of the program or project specified in the application for such grant: *Provided*, That no part of any grant for the purpose of construction of buildings or other physical facilities shall be used for land acquisition.    `Federal grants, amounts.`    `Prohibition.`

(d) Not more than one-third of any grant made under this part may be expended for the compensation of personnel. The amount of any such grant expended for the compensation of personnel shall not exceed the amount of State or local funds made available to increase such compensation. The limitations contained in this subsection shall not apply to the compensation of personnel for time engaged in conducting or undergoing training programs.

SEC. 302. Any State desiring to participate in the grant program under this part shall establish a State planning agency as described in part B of this title and shall within six months after approval of a planning grant under part B submit to the Administration through

Pub. Law 90-351        - 4 -              June 19, 1968

82 STAT. 201

such State planning agency a comprehensive State plan formulated pursuant to part B of this title.

Comprehensive
State plans,
requirements.

SEC. 303. The Administration shall make grants under this title to a State planning agency if such agency has on file with the Administration an approved comprehensive State plan (not more than one year in age) which conforms with the purposes and requirements of this title. Each such plan shall—

(1) provide for the administration of such grants by the State planning agency;

(2) provide that at least 75 per centum of all Federal funds granted to the State planning agency under this part for any fiscal year will be available to units of general local government or combinations of such units for the development and implementation of programs and projects for the improvement of law enforcement;

(3) adequately take into account the needs and requests of the units of general local government in the State and encourage local initiative in the development of programs and projects for improvements in law enforcement, and provide for an appropriately balanced allocation of funds between the State and the units of general local government in the State and among such units;

(4) incorporate innovations and advanced techniques and contain a comprehensive outline of priorities for the improvement and coordination of all aspects of law enforcement dealt with in the plan, including descriptions of: (A) general needs and problems; (B) existing systems; (C) available resources; (D) organizational systems and administrative machinery for implementing the plan; (E) the direction, scope, and general types of improvements to be made in the future; and (F) to the extent appropriate, the relationship of the plan to other relevant State or local law enforcement plans and systems;

(5) provide for effective utilization of existing facilities and permit and encourage units of general local government to combine or provide for cooperative arrangements with respect to services, facilities, and equipment;

(6) provide for research and development;

(7) provide for appropriate review of procedures of actions taken by the State planning agency disapproving an application for which funds are available or terminating or refusing to continue financial assistance to units of general local government or combinations of such units;

(8) demonstrate the willingness of the State and units of general local government to assume the costs of improvements funded under this part after a reasonable period of Federal assistance;

(9) demonstrate the willingness of the State to contribute technical assistance or services for programs and projects contemplated by the statewide comprehensive plan and the programs and projects contemplated by units of general local government;

(10) set forth policies and procedures designed to assure that Federal funds made available under this title will be so used as not to supplant State or local funds, but to increase the amounts of such funds that would in the absence of such Federal funds be made available for law enforcement;

(11) provide for such fiscal control and fund accounting procedures as may be necessary to assure proper disbursement of and accounting of funds received under this part; and

(12) provide for the submission of such reports in such form and containing such information as the Administration may reasonably require.

Any portion of the 75 per centum to be made available pursuant to paragraph (2) of this section in any State in any fiscal year not required for the purposes set forth in such paragraph (2) shall be available for expenditure by such State agency from time to time on dates during such year as the Administration may fix, for the development and implementation of programs and projects for the improvement of law enforcement and in conformity with the State plan.

Sec. 304. State planning agencies shall receive applications for financial assistance from units of general local government and combinations of such units. When a State planning agency determines that such an application is in accordance with the purposes stated in section 301 and is in conformance with any existing statewide comprehensive law enforcement plan, the State planning agency is authorized to disburse funds to the applicant.

Sec. 305. Where a State fails to make application for a grant to establish a State planning agency pursuant to part B of this title within six months after the date of enactment of this Act, or where a State fails to file a comprehensive plan pursuant to part B within six months after approval of a planning grant to establish a State planning agency, the Administration may make grants under part B and part C of this title to units of general local government or combinations of such units: *Provided, however,* That any such unit or combination of such units must certify that it has submitted a copy of its application to the chief executive of the State in which such unit or combination of such units is located. The chief executive shall be given not more than sixty days from date of receipt of the application to submit to the Administration in writing an evaluation of the project set forth in the application. Such evaluation shall include comments on the relationship of the application to other applications then pending, and to existing or proposed plans in the State for the development of new approaches to and improvements in law enforcement. If an application is submitted by a combination of units of general local government which is located in more than one State, such application must be submitted to the chief executive of each State in which the combination of such units is located. No grant under this section to a local unit of general government shall be for an amount in excess of 60 per centum of the cost of the project or program with respect to which it was made.

Sec. 306. Funds appropriated to make grants under this part for a fiscal year shall be allocated by the Administration among the States for use therein by the State planning agency or units of general local government, as the case may be. Of such funds, 85 per centum shall be allocated among the States according to their respective populations and 15 per centum thereof shall be allocated as the Administration may determine, plus such additional amounts as may be made available by virtue of the application of the provisions of section 509 to the grant to any State.

Sec. 307. (a) In making grants under this part, the Administration and each State planning agency, as the case may be, shall give special emphasis, where appropriate or feasible, to programs and projects dealing with the prevention, detection, and control of organized crime and of riots and other violent civil disorders.

(b) Notwithstanding the provisions of section 303 of this part, until August 31, 1968, the Administration is authorized to make grants for programs and projects dealing with the prevention, detection, and

Grants to local government units.

Project evaluation by State chief executive.

Amount.

Allocation of funds.

Priority programs.

82 STAT. 203

control of riots and other violent civil disorders on the basis of applications describing in detail the programs, projects, and costs of the items for which the grants will be used, and the relationship of the programs and projects to the applicant's general program for the improvement of law enforcement.

## PART D—TRAINING, EDUCATION, RESEARCH, DEMONSTRATION, AND SPECIAL GRANTS

SEC. 401. It is the purpose of this part to provide for and encourage training, education, research, and development for the purpose of improving law enforcement and developing new methods for the prevention and reduction of crime, and the detection and apprehension of criminals.

National Institute of Law Enforcement and Criminal Justice.
Establishment.

SEC. 402. (a) There is established within the Department of Justice a National Institute of Law Enforcement and Criminal Justice (hereafter referred to in this part as "Institute"). The Institute shall be under the general authority of the Administration. It shall be the purpose of the Institute to encourage research and development to improve and strengthen law enforcement.

Functions.

(b) The Institute is authorized—

(1) to make grants to, or enter into contracts with, public agencies, institutions of higher education, or private organizations to conduct research, demonstrations, or special projects pertaining to the purposes described in this title, including the development of new or improved approaches, techniques, systems, equipment, and devices to improve and strengthen law enforcement;

(2) to make continuing studies and undertake programs of research to develop new or improved approaches, techniques, systems, equipment, and devices to improve and strengthen law enforcement, including, but not limited to, the effectiveness of projects or programs carried out under this title;

(3) to carry out programs of behavioral research designed to provide more accurate information on the causes of crime and the effectiveness of various means of preventing crime, and to evaluate the success of correctional procedures;

(4) to make recommendations for action which can be taken by Federal, State, and local governments and by private persons and organizations to improve and strengthen law enforcement;

(5) to carry out programs of instructional assistance consisting of research fellowships for the programs provided under this section, and special workshops for the presentation and dissemination of information resulting from research, demonstrations, and special projects authorized by this title.

(6) to carry out a program of collection and dissemination of information obtained by the Institute or other Federal agencies, public agencies, institutions of higher education, or private organizations engaged in projects under this title, including information relating to new or improved approaches, techniques, systems, equipment, and devices to improve and strengthen law enforcement; and

(7) to establish a research center to carry out the programs described in this section.

Grants, amount.

SEC. 403. A grant authorized under this part may be up to 100 per centum of the total cost of each project for which such grant is made. The Administration shall require, whenever feasible, as a condition of approval of a grant under this part, that the recipient contribute money, facilities, or services to carry out the purpose for which the grant is sought.

Conditions.

June 19, 1968          - 7 -          Pub. Law 90-351

82 STAT. 204

SEC. 404. (a) The Director of the Federal Bureau of Investigation is authorized to—

    (1) establish and conduct training programs at the Federal Bureau of Investigation National Academy at Quantico, Virginia, to provide, at the request of a State or unit of local government, training for State and local law enforcement personnel;

    (2) develop new or improved approaches, techniques, systems, equipment, and devices to improve and strengthen law enforcement; and

    (3) assist in conducting, at the request of a State or unit of local government, local and regional training programs for the training of State and local law enforcement personnel. Such training shall be provided only for persons actually employed as State police or highway patrol, police of a unit of local government, sheriffs and their deputies, and such other persons as the State or unit may nominate for police training while such persons are actually employed as officers of such State or unit.

(b) In the exercise of the functions, powers, and duties established under this section the Director of the Federal Bureau of Investigation shall be under the general authority of the Attorney General.

SEC. 405. (a) Subject to the provisions of this section, the Law Enforcement Assistance Act of 1965 (79 Stat. 828) is repealed: *Provided,* That—

    (1) The Administration, or the Attorney General until such time as the members of the Administration are appointed, is authorized to obligate funds for the continuation of projects approved under the Law Enforcement Assistance Act of 1965 prior to the date of enactment of this Act to the extent that such approval provided for continuation.

    (2) Any funds obligated under subsection (1) of this section and all activities necessary or appropriate for the review under subsect. (3) of this section may be carried out with funds previously a. propriated and funds appropriated pursuant to this title.

    (3) Immediately upon establishment of the Administration, it shall be its duty to study, review, and evaluate projects and programs funded under the Law Enforcement Assistance Act of 1965. Continuation of projects and programs under subsections (1) and (2) of this section shall be in the discretion of the Administration.

SEC. 406. (a) Pursuant to the provisions of subsections (b) and (c) of this section, the Administration is authorized, after appropriate consultation with the Commissioner of Education, to carry out programs of academic educational assistance to improve and strengthen law enforcement.

(b) The Administration is authorized to enter into contracts to make, and make, payments to institutions of higher education for loans, not exceeding $1,800 per academic year to any person, to persons enrolled on a full-time basis in undergraduate or graduate programs approved by the Administration and leading to degrees or certificates in areas directly related to law enforcement or preparing for employment in law enforcement, with special consideration to police or correctional personnel of States or units of general local government on academic leave to earn such degrees or certificates. Loans to persons assisted under this subsection shall be made on such terms and conditions as the Administration and the institution offering such programs may determine, except that the total amount of any such loan, plus interest, shall be canceled for service as a full-time officer or employee of a law enforcement agency at the rate of 25 per centum of the total

F.B.I. law enforcement training programs.

Repeal.
18 USC prec.
3001 note.
Continuation of projects.

Academic educational assistance.

Loans.

Pub. Law 90-351        - 8 -              June 19, 1968

82 STAT. 205

amount of such loans plus interest for each complete year of such service or its equivalent of such service, as determined under regulations of the Administration.

**Tuition and fees.**

(c) The Administration is authorized to enter into contracts to make, and make, payments to institutions of higher education for tuition and fees, not exceeding $200 per academic quarter or $300 per semester for any person, for officers of any publicly funded law enforcement agency enrolled on a full-time or part-time basis in courses included in an undergraduate or graduate program which is approved by the Administration and which leads to a degree or certificate in an area related to law enforcement or an area suitable for persons employed in law enforcement. Assistance under this subsection may be granted only on behalf of an applicant who enters into an agreement to remain in the service of the law enforcement agency employing such applicant for a period of two years following completion of any course for which payments are provided under this subsection, and in the event such service is not completed, to repay the full amount of such payments on such terms and in such manner as the Administration may prescribe.

**Service agreements.**

### Part E—Administrative Provisions

Sec. 501. The Administration is authorized, after appropriate consultation with representatives of States and units of general local government, to establish such rules, regulations, and procedures as are necessary to the exercise of its functions, and are consistent with the stated purpose of this title.

Sec. 502. The Administration may delegate to any officer or official of the Administration, or, with the approval of the Attorney General, to any officer of the Department of Justice such functions as it deems appropriate.

Sec. 503. The functions, powers, and duties specified in this title to be carried out by the Administration shall not be transferred elsewhere in the Department of Justice unless specifically hereafter authorized by the Congress.

**Subpena power, etc.**

Sec. 504. In carrying out its functions, the Administration, or upon authorization of the Administration, any member thereof or any hearing examiner assigned to or employed by the Administration, shall have the power to hold hearings, sign and issue subpenas administer oaths, examine witnesses, and receive evidence at any place in the United States it may designate.

**80 Stat. 461.**

Sec. 505. Section 5315 of title 5, United States Code, is amended by adding at the end thereof—

"(90) Administrator of Law Enforcement Assistance."

Sec. 506. Section 5316 of title 5, United States Code, is amended by adding at the end thereof—

"(126) Associate Administrator of Law Enforcement Assistance."

**Officers and employees.**

Sec. 507. Subject to the civil service and classification laws, the Administration is authorized to select, appoint, employ, and fix compensation of such officers and employees, including hearing examiners, as shall be necessary to carry out its powers and duties under this title.

Sec. 508. The Administration is authorized, on a reimbursable basis when appropriate, to use the available services, equipment, personnel, and facilities of the Department of Justice and of other civilian or military agencies and instrumentalities of the Federal Government, and to cooperate with the Department of Justice and such other agencies and instrumentalities in the establishment and

82 STAT. 206

use of services, equipment, personnel, and facilities of the Administration. The Administration is further authorized to confer with and avail itself of the cooperation, services, records, and facilities of State, municipal, or other local agencies.

SEC. 509. Whenever the Administration, after reasonable notice and opportunity for hearing to an applicant or a grantee under this title, finds that, with respect to any payments made or to be made under this title, there is a substantial failure to comply with—

Noncompliance. Withholding of payments.

    (a) the provisions of this title;

    (b) regulations promulgated by the Administration under this title; or

    (c) a plan or application submitted in accordance with the provisions of this title;

the Administration shall notify such applicant or grantee that further payments shall not be made (or in its discretion that further payments shall not be made for activities in which there is such failure), until there is no longer such failure.

SEC. 510. (a) In carrying out the functions vested by this title in the Administration, the determination, findings, and conclusions of the Administration shall be final and conclusive upon all applicants, except as hereafter provided.

(b) If the application has been rejected or an applicant has been denied a grant or has had a grant, or any portion of a grant, discontinued, or has been given a grant in a lesser amount than such applicant believes appropriate under the provisions of this title, the Administration shall notify the applicant or grantee of its action and set forth the reason for the action taken. Whenever an applicant or grantee requests a hearing on action taken by the Administration on an application or a grant the Administration, or any authorized officer thereof, is authorized and directed to hold such hearings or investigations at such times and places as the Administration deems necessary, following appropriate and adequate notice to such applicant; and the findings of fact and determinations made by the Administration with respect thereto shall be final and conclusive, except as otherwise provided herein.

Notice and hearing.

(c) If such applicant is still dissatisfied with the findings and determinations of the Administration, following the notice and hearing provided for in subsection (b) of this section, a request may be made for rehearing, under such regulations and procedures as the Administration may establish, and such applicant shall be afforded an opportunity to present such additional information as may be deemed appropriate and pertinent to the matter involved. The findings and determinations of the Administration, following such rehearing, shall be final and conclusive upon all parties concerned, except as hereafter provided.

Request for rehearing.

SEC. 511. (a) If any applicant or grantee is dissatisfied with the Administration's final action with respect to the approval of its application or plan submitted under this title, or any applicant or grantee is dissatisfied with the Administration's final action under section 509 or section 510, such applicant or grantee may, within sixty days after notice of such action, file with the United States court of appeals for the circuit in which such applicant or grantee is located a petition for review of that action. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Administration. The Administration shall thereupon file in the court the record of the proceedings on which the action of the Administration was based, as provided in section 2112 of title 28, United States Code.

Review action.

72 Stat. 941; 80 Stat. 1323.

Pub. Law 90-351          - 10 -          June 19, 1968

82 STAT. 207

(b) The determinations and the findings of fact by the Administration, if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to the Administration to take further evidence. The Administration may thereupon make new or modified findings of fact and may modify its previous action, and shall file in the court the record of the further proceedings. Such new or modified findings of fact or determinations shall likewise be conclusive if supported by substantial evidence.

(c) Upon the filing of such petition, the court shall have jurisdiction to affirm the action of the Administration or to set it aside, in whole or in part. The judgment of the court shall be subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28, United States Code.

62 Stat. 928.
Duration of
programs.

Sec. 512. Unless otherwise specified in this title, the Administration shall carry out the programs provided for in this title during the fiscal year ending June 30, 1968, and the five succeeding fiscal years.

Statistics,
etc., from
other Federal
departments.

Sec. 513. To insure that all Federal assistance to State and local programs under this title is carried out in a coordinated manner, the Administration is authorized to request any Federal department or agency to supply such statistics, data, program reports, and other material as the Administration deems necessary to carry out its functions under this title. Each such department or agency is authorized to cooperate with the Administration and, to the extent permitted by law, to furnish such materials to the Administration. Any Federal department or agency engaged in administering programs related to this title shall, to the maximum extent practicable, consult with and seek advice from the Administration to insure fully coordinated efforts, and the Administration shall undertake to coordinate such efforts.

Sec. 514. The Administration may arrange with and reimburse the heads of other Federal departments and agencies for the performance of any of its functions under this title.

Sec. 515. The Administration is authorized—

(a) to conduct evaluation studies of the programs and activities assisted under this title;

(b) to collect, evaluate, publish, and disseminate statistics and other information on the condition and progress of law enforcement in the several States; and

(c) to cooperate with and render technical assistance to States, units of general local government, combinations of such States or units, or other public or private agencies, organizations, or institutions in matters relating to law enforcement.

Sec. 516. (a) Payments under this title may be made in installments, and in advance or by way of reimbursement, as may be determined by the Administration.

Restriction.

(b) Not more than 12 per centum of the sums appropriated for any fiscal year to carry out the provisions of this title may be used within any one State except that this limitation shall not apply to grants made pursuant to part D.

Advisory com-
mittees, ap-
pointment and
compensation.

Sec. 517. The Administration is authorized to appoint such technical or other advisory committees to advise the Administration with respect to the administration of this title as it deems necessary. Members of such committees not otherwise in the employ of the United States, while attending meetings of the committees, shall be entitled to receive compensation at a rate to be fixed by the Administration but not exceeding $75 per diem, and while away from home or regular place of business they may be allowed travel expenses, including per diem in lieu of subsistence, as authorized by section 5703 of title 5,

80 Stat. 499.

United States Code, for persons in the Government service employed intermittently.

82 STAT. 208

SEC. 518. (a) Nothing contained in this title or any other Act shall be construed to authorize any department, agency, officer, or employee of the United States to exercise any direction, supervision, or control over any police force or any other law enforcement agency of any State or any political subdivision thereof.

(b) Notwithstanding any other provision of law nothing contained in this title shall be construed to authorize the Administration (1) to require, or condition the availability or amount of a grant upon, the adoption by an applicant or grantee under this title of a percentage ratio, quota system, or other program to achieve racial balance or to eliminate racial imbalance in any law enforcement agency, or (2) to deny or discontinue a grant because of the refusal of an applicant or grantee under this title to adopt such a ratio, system, or other program.

SEC. 519. On or before August 31, 1968, and each year thereafter, the Administration shall report to the President and to the Congress on activities pursuant to the provisions of this title during the preceding fiscal year.

Report to President and Congress.

SEC. 520. For the purpose of carrying out this title, there is authorized to be appropriated the sums of $100,111,000 for the fiscal years ending June 30, 1968, and June 30, 1969, $300,000,000 for the fiscal year ending June 30, 1970, and for succeeding fiscal years such sums as the Congress might authorize: *Provided, however,* That of the amount appropriated for the fiscal years ending June 30, 1968, and June 30, 1969—

Appropriations.

(a) the sum of $25,000,000 shall be for the purposes of part B;
(b) the sum of $50,000,000 shall be for the purposes of part C, of which amount—

(1) not more than $2,500,000 shall be for the purposes of section 302(b)(3);
(2) not more than $15,000,000 shall be for the purposes of section 302(b)(5), of which not more than $1,000,000 may be used within any one State;
(3) not more than $15,000,000 shall be for the purposes of section 302(b)(6); and
(4) not more than $10,000,000 shall be for the purposes of correction, probation, and parole; and

(c) the sum of $25,111,000 shall be for the purposes of part D, of which $5,111,000 shall be for the purposes of section 404, and not more than $10,000,000 shall be for the purposes of section 406.

SEC. 521. (a) Each recipient of assistance under this Act shall keep such records as the Administration shall prescribe, including records which fully disclose the amount and disposition by such recipient of the proceeds of such assistance, the total cost of the project or undertaking in connection with which such assistance is given or used, and the amount of that portion of the cost of the project or undertaking supplied by other sources, and such other records as will facilitate an effective audit.

Recordkeeping requirements.

(b) The Administration and the Comptroller General of the United States, or any of their duly authorized representatives, shall have access for purpose of audit and examinations to any books, documents, papers, and records of the recipients that are pertinent to the grants received under this title.

SEC. 522. Section 204(a) of the Demonstration Cities and Metropolitan Development Act of 1966 is amended by inserting "law enforcement facilities," immediately after "transportation facilities,".

80 Stat. 1262.
42 USC 3334.

82 STAT. 209

Pub. Law 90-351        - 12 -        June 19, 1968

## PART F—DEFINITIONS

SEC. 601. As used in this title—

(a) "Law enforcement" means all activities pertaining to crime prevention or reduction and enforcement of the criminal law.

(b) "Organized crime" means the unlawful activities of the members of a highly organized, disciplined association engaged in supplying illegal goods and services, including but not limited to gambling, prostitution, loan sharking, narcotics, labor racketeering, and other unlawful activities of members of such organizations.

(c) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(d) "Unit of general local government" means any city, county, township, town, borough, parish, village, or other general purpose political subdivision of a State, or an Indian tribe which performs law enforcement functions as determined by the Secretary of the Interior.

(e) "Combination" as applied to States or units of general local government means any grouping or joining together of such States or units for the purpose of preparing, developing, or implementing a law enforcement plan.

(f) "Construction" means the erection, acquisition, expansion, or repair (but not including minor remodeling or minor repairs) of new or existing buildings or other physical facilities, and the acquisition or installation of initial equipment therefor.

(g) "State organized crime prevention council" means a council composed of not more than seven persons established pursuant to State law or established by the chief executive of the State for the purpose of this title, or an existing agency so designated, which council shall be broadly representative of law enforcement officials within such State and whose members by virtue of their training or experience shall be knowledgeable in the prevention and control of organized crime.

(h) "Metropolitan area" means a standard metropolitan statistical area as established by the Bureau of the Budget, subject, however, to such modifications and extensions as the Administration may determine to be appropriate.

(i) "Public agency" means any State, unit of local government, combination of such States or units, or any department, agency, or instrumentality of any of the foregoing.

(j) "Institution of higher education" means any such institution as defined by section 801(a) of the Higher Education Act of 1965 (79 Stat. 1269; 20 U.S.C. 1141(a)), subject, however, to such modifications and extensions as the Administration may determine to be appropriate.

(k) "Community service officer" means any citizen with the capacity, motivation, integrity, and stability to assist in or perform police work but who may not meet ordinary standards for employment as a regular police officer selected from the immediate locality of the police department of which he is to be a part, and meeting such other qualifications promulgated in regulations pursuant to section 501 as the administration may determine to be appropriate to further the purposes of section 301(b)(7) and this Act.

TITLE II—ADMISSIBILITY OF CONFESSIONS, REVIEW-
ABILITY OF ADMISSION IN EVIDENCE OF CONFES-
SIONS IN STATE CASES, ADMISSIBILITY IN EVIDENCE
OF EYE WITNESS TESTIMONY, AND PROCEDURES IN
OBTAINING WRITS OF HABEAS CORPUS

SEC. 701. (a) Chapter 223, title 18, United States Code (relating
to witnesses and evidence), is amended by adding at the end thereof
the following new sections:

62 Stat. 833;
71 Stat. 595.

**"§ 3501. Admissibility of confessions**

"(a) In any criminal prosecution brought by the United States or
by the District of Columbia, a confession, as defined in subsection (e)
hereof, shall be admissible in evidence if it is voluntarily given. Before
such confession is received in evidence, the trial judge shall, out of
the presence of the jury, determine any issue as to voluntariness. If the
trial judge determines that the confession was voluntarily made it
shall be admitted in evidence and the trial judge shall permit the jury
to hear relevant evidence on the issue of voluntariness and shall instruct
the jury to give such weight to the confession as the jury feels it
deserves under all the circumstances.

"(b) The trial judge in determining the issue of voluntariness shall
take into consideration all the circumstances surrounding the giving
of the confession, including (1) the time elapsing between arrest and
arraignment of the defendant making the confession, if it was made
after arrest and before arraignment, (2) whether such defendant
knew the nature of the offense with which he was charged or of which
he was suspected at the time of making the confession, (3) whether
or not such defendant was advised or knew that he was not required
to make any statement and that any such statement could be used
against him, (4) whether or not such defendant had been advised
prior to questioning of his right to the assistance of counsel; and (5)
whether or not such defendant was without the assistance of counsel
when questioned and when giving such confession.

"The presence or absence of any of the above-mentioned factors to
be taken into consideration by the judge need not be conclusive on the
issue of voluntariness of the confession.

"(c) In any criminal prosecution by the United States or by the
District of Columbia, a confession made or given by a person who is
a defendant therein, while such person was under arrest or other
detention in the custody of any law-enforcement officer or law-enforce-
ment agency, shall not be inadmissible solely because of delay in bring-
ing such person before a commissioner or other officer empowered to
commit persons charged with offenses against the laws of the United
States or of the District of Columbia if such confession is found by
the trial judge to have been made voluntarily and if the weight to be
given the confession is left to the jury and if such confession was made
or given by such person within six hours immediately following his
arrest or other detention: *Provided,* That the time limitation con-
tained in this subsection shall not apply in any case in which the delay
in bringing such person before such commissioner or other officer
beyond such six-hour period is found by the trial judge to be reason-
able considering the means of transportation and the distance to be
traveled to the nearest available such commissioner or other officer.

"(d) Nothing contained in this section shall bar the admission in
evidence of any confession made or given voluntarily by any person
to any other person without interrogation by anyone, or at any time at
which the person who made or gave such confession was not under
arrest or other detention.

"Confession."     "(e) As used in this section, the term 'confession' means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

## "§ 3502. Admissibility in evidence of eye witness testimony

"The testimony of a witness that he saw the accused commit or participate in the commission of the crime for which the accused is being tried shall be admissible in evidence in a criminal prosecution in any trial court ordained and established under article III of the Constitution of the United States."

"(b) The section analysis of that chapter is amended by adding at the end thereof the following new items:

"3501. Admissibility of confessions.
"3502. Admissibility in evidence of eye witness testimony."

## TITLE III—WIRETAPPING AND ELECTRONIC SURVEILLANCE

### FINDINGS

SEC. 801. On the basis of its own investigations and of published studies, the Congress makes the following findings:

(a) Wire communications are normally conducted through the use of facilities which form part of an interstate network. The same facilities are used for interstate and intrastate communications. There has been extensive wiretapping carried on without legal sanctions, and without the consent of any of the parties to the conversation. Electronic, mechanical, and other intercepting devices are being used to overhear oral conversations made in private, without the consent of any of the parties to such communications. The contents of these communications and evidence derived therefrom are being used by public and private parties as evidence in court and administrative proceedings, and by persons whose activities affect interstate commerce. The possession, manufacture, distribution, advertising, and use of these devices are facilitated by interstate commerce.

(b) In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce, it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings.

(c) Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice.

(d) To safeguard the privacy of innocent persons, the interception of wire or oral communications where none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further be limited to certain major types of offenses and specific categories of

crime with assurances that the interception is justified and that the information obtained thereby will not be misused.

SEC. 802. Part I of title 18, United States Code, is amended by 62 Stat. 684. adding at the end the following new chapter:

## "Chapter 119. WIRE INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

"Sec.
"2510. Definitions.
"2511. Interception and disclosure of wire or oral communications prohibited.
"2512. Manufacture, distribution, possession, and advertising of wire or oral communication intercepting devices prohibited.
"2513. Confiscation of wire or oral communication intercepting devices.
"2514. Immunity of witnesses.
"2515. Prohibition of use as evidence of intercepted wire or oral communications.
"2516. Authorization for interception of wire or oral communications.
"2517. Authorization for disclosure and use of intercepted wire or oral communications.
"2518. Procedure for interception of wire or oral communications.
"2519. Reports concerning intercepted wire or oral communications.
"2520. Recovery of civil damages authorized.

## "§ 2510. Definitions

"As used in this chapter—

"(1) 'wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications;

"(2) 'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation;

"(3) 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

"(4) 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.

"(5) 'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire or oral communication other than—

"(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

"(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

"(6) 'person' means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation;

"(7) 'Investigative or law enforcement officer' means any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney

Pub. Law 90-351        - 16 -        June 19, 1968

82 STAT. 213

authorized by law to prosecute or participate in the prosecution of such offenses;

"(8) 'contents', when used with respect to any wire or oral communication, includes any information concerning the identity of the parties to such communication or the existence, substance, purport, or meaning of that communication;

"(9) 'Judge of competent jurisdiction' means—

"(a) a judge of a United States district court or a United States court of appeals; and

"(b) a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire or oral communications;

"(10) 'communication common carrier' shall have the same meaning which is given the term 'common carrier' by section 153(h) of title 47 of the United States Code; and

48 Stat. 1066.

"(11) 'aggrieved person' means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed.

### "§ 2511. Interception and disclosure of wire or oral communications prohibited

"(1) Except as otherwise specifically provided in this chapter any person who—

"(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

"(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

"(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

"(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

"(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

"(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

"(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;"

"(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or

"(d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;

Penalty. shall be fined not more than $10,000 or imprisoned not more than five years, or both.

June 19, 1968          - 17 -          Pub. Law 90-351

82 STAT. 214

"(2) (a) It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided*, That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

"(b) It shall not be unlawful under this chapter for an officer, employee, or agent of the Federal Communications Commission, in the normal course of his employment and in discharge of the monitoring responsibilities exercised by the Commission in the enforcement of chapter 5 of title 47 of the United States Code, to intercept a wire communication, or oral communication transmitted by radio, or to disclose or use the information thereby obtained.

48 Stat. 1064.

"(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

"(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

"(3) Nothing contained in this chapter or in section 605 of the Communications Act of 1934 (48 Stat. 1143; 47 U.S.C. 605) shall limit the constitutional power of the President to take such measures as he deems necessary to protect the Nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities. Nor shall anything contained in this chapter be deemed to limit the constitutional power of the President to take such measures as he deems necessary to protect the United States against the overthrow of the Government by force or other unlawful means, or against any other clear and present danger to the structure or existence of the Government. The contents of any wire or oral communication intercepted by authority of the President in the exercise of the foregoing powers may be received in evidence in any trial hearing, or other proceeding only where such interception was reasonable, and shall not be otherwise used or disclosed except as is necessary to implement that power.

Post, p. 223.

## "§ 2512. Manufacture, distribution, possession, and advertising of wire or oral communication intercepting devices prohibited

"(1) Except as otherwise specifically provided in this chapter, any person who willfully—

"(a) sends through the mail, or sends or carries in interstate or foreign commerce, any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications;

Pub. Law 90-351     - 18 -     June 19, 1968

82 STAT. 215

"(b) manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce; or

"(c) places in any newspaper, magazine, handbill, or other publication any advertisement of—

"(i) any electronic, mechanical, or other device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications; or

"(ii) any other electronic, mechanical, or other device, where such advertisement promotes the use of such device for the purpose of the surreptitious interception of wire or oral communications,

knowing or having reason to know that such advertisement will be sent through the mail or transported in interstate or foreign commerce,

**Penalty.** shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"(2) It shall not be unlawful under this section for—

"(a) a communications common carrier or an officer, agent, or employee of, or a person under contract with, a communications common carrier, in the normal course of the communications common carrier's business, or

"(b) an officer, agent, or employee of, or a person under contract with, the United States, a State, or a political subdivision thereof, in the normal course of the activities of the United States, a State, or a political subdivision thereof, to send through the mail, send or carry in interstate or foreign commerce, or manufacture, assemble, possess, or sell any electronic, mechanical, or other device knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or oral communications.

## "§ 2513. Confiscation of wire or oral communication intercepting devices

"Any electronic, mechanical, or other device used, sent, carried, manufactured, assembled, possessed, sold, or advertised in violation of section 2511 or section 2512 of this chapter may be seized and forfeited to the United States. All provisions of law relating to (1) the seizure, summary and judicial forfeiture, and condemnation of vessels, vehicles, merchandise, and baggage for violations of the customs laws contained in title 19 of the United States Code, (2) the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from the sale thereof, (3) the remission or mitigation of such forfeiture, (4) the compromise of claims, and (5) the award of compensation to informers in respect of such forfeitures, shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions of this section; except that such duties as are imposed upon the collector of customs or any other person with respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the provisions of the customs laws contained in title 19 of the United States Code shall be performed with respect to seizure and forfeiture of electronic, mechanical, or other intercepting devices

82 STAT. 216

under this section by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General.

## "§ 2514. Immunity of witnesses

"Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter or any of the offenses enumerated in section 2516, or any conspiracy to violate this chapter or any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section.

## "§ 2515. Prohibition of use as evidence of intercepted wire or oral communications

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

## "§ 2516. Authorization for interception of wire or oral communications

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of—

"(a) any offense punishable by death or by imprisonment for more than one year under sections 2274 through 2277 of title 42 of the United States Code (relating to the enforcement of the Atomic Energy Act of 1954), or under the following chapters of this title: chapter 37 (relating to espionage), chapter 105 (relating to sabotage), chapter 115 (relating to treason), or chapter 102 (relating to riots);     68 Stat. 958. 62 Stat. 736; 68 Stat. 1216; 62 Stat. 807;

"(b) a violation of section 186 or section 501(c) of title 29, United States Code (dealing with restrictions on payments and loans to labor organizations), or any offense which involves mur-     Ante, p. 75. 61 Stat. 157; 73 Stat. 535, 537.

82 STAT. 217

der, kidnapping, robbery, or extortion, and which is punishable under this title;

"(c) any offense which is punishable under the following sections of this title: section 201 (bribery of public officials and witnesses), section 224 (bribery in sporting contests), section 1084 (transmission of wagering information), section 1503 (influencing or injuring an officer, juror, or witness generally), section 1510 (obstruction of criminal investigations), section 1751 (Presidential assassinations, kidnapping, and assault), section 1951 (interference with commerce by threats or violence), section 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises), section 1954 (offer, acceptance, or solicitation to influence operations of employee benefit plan), section 659 (theft from interstate shipment), section 664 (embezzlement from pension and welfare funds), or sections 2314 and 2315 (interstate transportation of stolen property);

76 Stat. 1119;
78 Stat. 203;
62 Stat. 769;
81 Stat. 362;
79 Stat. 580;
62 Stat. 793;
75 Stat. 498;
76 Stat. 42;
62 Stat. 729;
76 Stat. 41;
62 Stat. 806.

"(d) any offense involving counterfeiting punishable under section 471, 472, or 473 of this title;

62 Stat. 705.

"(e) any offense involving bankruptcy fraud or the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic drugs, marihuana, or other dangerous drugs, punishable under any law of the United States;

"(f) any offense including extortionate credit transactions under sections 892, 893, or 894 of this title; or

Ante, p. 159.

"(g) any conspiracy to commit any of the foregoing offenses.

"(2) The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.

"§ 2517. Authorization for disclosure and use of intercepted wire or oral communications

"(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

"(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

"(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communica-

tion, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of the United States or of any State or in any Federal or State grand jury proceeding.

"(4) No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

"(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

## "§ 2518. Procedure for interception of wire or oral communications

"(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

"(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

"(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

"(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

"(d) a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

"(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or

places specified in the application, and the action taken by the judge on each such application; and

"(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

"(2) The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application.

"(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

"(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

"(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

"(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

"(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

"(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

"(a) the identity of the person, if known, whose communications are to be intercepted;

"(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

"(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

"(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

"(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

"(5) No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

"(6) Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

"(7) Notwithstanding any other provision of this chapter, any investigative or law enforcement officer, specially designated by the Attorney General or by the principal prosecuting attorney of any State or subdivision thereof acting pursuant to a statute of that State, who reasonably determines that—

"(a) an emergency situation exists with respect to conspiratorial activities threatening the national security interest or to conspiratorial activities characteristic of organized crime that requires a wire or oral communication to be intercepted before an order authorizing such interception can with due diligence be obtained, and

"(b) there are grounds upon which an order could be entered under this chapter to authorize such interception,

may intercept such wire or oral communication if an application for an order approving the interception is made in accordance with this section within forty-eight hours after the interception has occurred, or begins to occur. In the absence of an order, such interception shall immediately terminate when the communication sought is obtained or when the application for the order is denied, whichever is earlier. In the event such application for approval is denied, or in any other case where the interception is terminated without an order having been issued, the contents of any wire or oral communication intercepted shall be treated as having been obtained in violation of this chapter, and an inventory shall be served as provided for in subsection (d) of this section on the person named in the application.

"(8) (a) The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517.

"(b) Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

"(c) Any violation of the provisions of this subsection may be punished as contempt of the issuing or denying judge.

"(d) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section

82 STAT. 221

2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—

"(1) the fact of the entry of the order or the application;

"(2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

"(3) the fact that during the period wire or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

"(9) The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

"(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

"(i) the communication was unlawfully intercepted;

"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

"(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

"(b) In addition to any other right to appeal, the United States shall have the right to appeal from an order granting a motion to suppress made under paragraph (a) of this subsection, or the denial of an application for an order of approval, if the United States attorney shall certify to the judge or other official granting such motion or denying such application that the appeal is not taken for purposes of delay. Such appeal shall be taken within thirty days after the date the order was entered and shall be diligently prosecuted.

June 19, 1968                    - 25 -               Pub. Law 90-351          82 STAT. 222

## "§ 2519. Reports concerning intercepted wire or oral communications

"(1) Within thirty days after the expiration of an order (or each extension thereof) entered under section 2518, or the denial of an order approving an interception, the issuing or denying judge shall report to the Administrative Office of the United States Courts—

"(a) the fact that an order or extension was applied for;

"(b) the kind of order or extension applied for;

"(c) the fact that the order or extension was granted as applied for, was modified, or was denied;

"(d) the period of interceptions authorized by the order, and the number and duration of any extensions of the order;

"(e) the offense specified in the order or application, or extension of an order;

"(f) the identity of the applying investigative or law enforcement officer and agency making the application and the person authorizing the application; and

"(g) the nature of the facilities from which or the place where communications were to be intercepted.

"(2) In January of each year the Attorney General, an Assistant Attorney General specially designated by the Attorney General, or the principal prosecuting attorney of a State, or the principal prosecuting attorney for any political subdivision of a State, shall report to the Administrative Office of the United States Courts—

"(a) the information required by paragraphs (a) through (g) of subsection (1) of this section with respect to each application for an order or extension made during the preceding calendar year;

"(b) a general description of the interceptions made under such order or extension, including (i) the approximate nature and frequency of incriminating communications intercepted, (ii) the approximate nature and frequency of other communications intercepted, (iii) the approximate number of persons whose communications were intercepted, and (iv) the approximate nature, amount, and cost of the manpower and other resources used in the interceptions;

"(c) the number of arrests resulting from interceptions made under such order or extension, and the offenses for which arrests were made;

"(d) the number of trials resulting from such interceptions;

"(e) the number of motions to suppress made with respect to such interceptions, and the number granted or denied;

"(f) the number of convictions resulting from such interceptions and the offenses for which the convictions were obtained and a general assessment of the importance of the interceptions; and

"(g) the information required by paragraphs (b) through (f) of this subsection with respect to orders or extensions obtained in a preceding calendar year.

"(3) In April of each year the Director of the Administrative Office of the United States Courts shall transmit to the Congress a full and complete report concerning the number of applications for orders authorizing or approving the interception of wire or oral communications and the number of orders and extensions granted or denied during the preceding calendar year. Such report shall include a summary and analysis of the data required to be filed with the Administrative Office by subsections (1) and (2) of this section. The Director of the Administrative Office of the United States Courts is authorized to

Report to Congress.

issue binding regulations dealing with the content and form of the reports required to be filed by subsections (1) and (2) of this section.

## "§ 2520. Recovery of civil damages authorized

"Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

"(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

"(b) punitive damages; and

"(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

A good faith reliance on a court order or on the provisions of section 2518(7) of this chapter shall constitute a complete defense to any civil or criminal action brought under this chapter."

SEC. 803. Section 605 of the Communications Act of 1934 (48 Stat. 1103; 47 U.S.C. 605) is amended to read as follows:

### "UNAUTHORIZED PUBLICATION OF COMMUNICATIONS

Ante, p. 212.

"SEC. 605. Except as authorized by chapter 119, title 18, United States Code, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is broadcast or transmitted by amateurs or others for the use of the general public, or which relates to ships in distress."

National Commission, etc. Establishment.

SEC. 804. (a) There is hereby established a National Commission for the Review of Federal and State Laws Relating to Wiretapping and Electronic Surveillance (hereinafter in this section referred to as the "Commission").

(b) The Commission shall be composed of fifteen members appointed as follows:  `Membership.`

    (A) Four appointed by the President of the Senate from Members of the Senate;

    (B) Four appointed by the Speaker of the House of Representatives from Members of the House of Representatives; and

    (C) Seven appointed by the President of the United States from all segments of life in the United States, including lawyers, teachers, artists, businessmen, newspapermen, jurists, policemen, and community leaders, none of whom shall be officers of the executive branch of the Government.

(c) The President of the United States shall designate a Chairman from among the members of the Commission. Any vacancy in the Commission shall not affect its powers but shall be filled in the same manner in which the original appointment was made.

(d) It shall be the duty of the Commission to conduct a comprehensive study and review of the operation of the provisions of this title, in effect on the effective date of this section, to determine the effectiveness of such provisions during the six-year period immediately following the date of their enactment.  `Function.`

(e)(1) Subject to such rules and regulations as may be adopted by the Commission, the Chairman shall have the power to—  `Personnel.`

    (A) appoint and fix the compensation of an Executive Director, and such additional staff personnel as he deems necessary, without regard to the provisions of title 5, United States Code, governing appointments in the competitive service, and without regard to the provisions of chapter 51 and subchapter III of chapter 53 of such title relating to classification and General Schedule pay rates, but at rates not in excess of the maximum rate for GS-18 of the General Schedule under section 5332 of such title; and  `80 Stat. 378.` `5 USC 5101-` `5115, 5331-` `5338.`

    (B) procure temporary and intermittent services to the same extent as is authorized by section 3109 of title 5, United States Code, but at rates not to exceed $100 a day for individuals.  `81 Stat. 625.` `80 Stat. 416.`

(2) In making appointments pursuant to paragraph (1) of this subsection, the Chairman shall include among his appointment individuals determined by the Chairman to be competent social scientists, lawyers, and law enforcement officers.

(f)(1) A member of the Commission who is a Member of Congress shall serve without additional compensation, but shall be reimbursed for travel, subsistence, and other necessary expenses incurred in the performance of duties vested in the Commission.  `Compensation.`

(2) A member of the Commission from private life shall receive $100 per diem when engaged in the actual performance of duties vested in the Commission, plus reimbursement for travel, subsistence, and other necessary expenses incurred in the performance of such duties.

(g) Each department, agency, and instrumentality of the executive branch of the Government, including independent agencies, is authorized and directed to furnish to the Commission, upon request made by the Chairman, such statistical data, reports, and other information as the Commission deems necessary to carry out its functions under this section. The Chairman is further authorized to call upon the departments, agencies, and other offices of the several States to furnish such statistical data, reports, and other information as the Commission deems necessary to carry out its functions under this section.  `Cooperation of` `Federal and` `State agencies.`

(h) The Commission shall make such interim reports as it deems advisable, and it shall make a final report of its findings and recommendations to the President of the United States and to the Congress within the one-year period following the effective date of this sub-  `Report to` `President and` `Congress.`

Pub. Law 90-351          - 28 -          June 19, 1968

82 STAT. 225

Termination.

Conflict of
interest.

76 Stat. 1121.

Effective date.

section. Sixty days after submission of its final report, the Commission shall cease to exist.

(i) (1) Except as provided in paragraph (2) of this subsection, any member of the Commission is exempted, with respect to his appointment, from the operation of sections 203, 205, 207, and 209 of title 18, United States Code.

(2) The exemption granted by paragraph (1) of this subsection shall not extend—

(A) to the receipt of payment of salary in connection with the appointee's Government service from any source other than the private employer of the appointee at the time of his appointment, or

(B) during the period of such appointment, to the prosecution, by any person so appointed, of any claim against the Government involving any matter with which such person, during such period, is or was directly connected by reason of such appointment.

(j) There is authorized to be appropriated such sum as may be necessary to carry out the provisions of this section.

(k) The foregoing provisions of this section shall take effect upon the expiration of the six-year period immediately following the date of the enactment of this Act.

## TITLE IV—STATE FIREARMS CONTROL ASSISTANCE

### FINDINGS AND DECLARATION

SEC. 901. (a) The Congress hereby finds and declares—

(1) that there is a widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce, and that the existing Federal controls over such traffic do not adequately enable the States to control this traffic within their own borders through the exercise of their police power;

(2) that the ease with which any person can acquire firearms other than a rifle or shotgun (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotics addicts, mental defectives, armed groups who would supplant the functions of duly constituted public authorities, and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States;

(3) that only through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave problem be properly dealt with, and effective State and local regulation of this traffic be made possible;

(4) that the acquisition on a mail-order basis of firearms other than a rifle or shotgun by nonlicensed individuals, from a place other than their State of residence, has materially tended to thwart the effectiveness of State laws and regulations, and local ordinances;

(5) that the sale or other disposition of concealable weapons by importers, manufacturers, and dealers holding Federal licenses, to nonresidents of the State in which the licensees' places of business are located, has tended to make ineffective the laws, regulations, and ordinances in the several States and local jurisdictions regarding such firearms;

(6) that there is a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and

June 19, 1968          - 29 -          Pub. Law 90-351

82 STAT. 226

youthful criminal behavior, and that such firearms have been widely sold by federally licensed importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior;

(7) that the United States has become the dumping ground of the castoff surplus military weapons of other nations, and that such weapons, and the large volume of relatively inexpensive pistols and revolvers (largely worthless for sporting purposes), imported into the United States in recent years, has contributed greatly to lawlessness and to the Nation's law enforcement problems;

(8) that the lack of adequate Federal control over interstate and foreign commerce in highly destructive weapons (such as bazookas, mortars, antitank guns, and so forth, and destructive devices such as explosive or incendiary grenades, bombs, missiles, and so forth) has allowed such weapons and devices to fall into the hands of lawless persons, including armed groups who would supplant lawful authority, thus creating a problem of national concern;

(9) that the existing licensing system under the Federal Firearms Act does not provide adequate license fees or proper standards for the granting or denial of licenses, and that this has led to licenses being issued to persons not reasonably entitled thereto, thus distorting the purposes of the licensing system.

52 Stat. 1250.
15 USC 909.

(b) The Congress further hereby declares that the purpose of this title is to cope with the conditions referred to in the foregoing subsection, and that it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trap shooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title.

Sec. 902. Title 18, United States Code, is amended by inserting after section 917 thereof the following new chapter:

62 Stat. 743.

## Chapter 44.—FIREARMS

"Sec.
"921. Definitions.
"922. Unlawful acts.
"923. Licensing.
"924. Penalties.
"925. Exceptions: Relief from disabilities.
"926. Rules and regulations.
"927. Effect on State law.
"928. Separability clause.

## "§ 921. Definitions

"(a) As used in this chapter—

"(1) The term 'person' and the term 'whoever' includes any individual, corporation, company, association, firm, partnership, society, or joint stock company.

"(2) The term 'interstate or foreign commerce' includes commerce between any State or possession (not including the Canal Zone) and any place outside thereof; or between points within the same State or possession (not including the Canal Zone), but through any place outside thereof; or within any possession or the District of Columbia.

The term 'State' shall include the Commonwealth of Puerto Rico, the Virgin Islands, and the District of Columbia.

"(3) The term 'firearm' means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; or any firearm muffler or firearm silencer; or any destructive device.

"(4) The term 'destructive device' means any explosive, incendiary, or poison gas bomb, grenade, mine, rocket, missile, or similar device; and includes any type of weapon which will or is designed to or may readily be converted to expel a projectile by the action of any explosive and having any barrel with a bore of one-half inch or more in diameter.

"(5) The term 'shotgun' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

"(6) The term 'short-barreled shotgun' means a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than twenty-six inches.

"(7) The term 'rifle' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

"(8) The term 'short-barreled rifle' means a rifle having one or more barrels less than sixteen inches in length and any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than twenty-six inches.

"(9) The term 'importer' means any person engaged in the business of importing or bringing firearms or ammunition into the United States for purposes of sale or distribution; and the term 'licensed importer' means any such person licensed under the provisions of this chapter.

"(10) The term 'manufacturer' means any person engaged in the manufacture of firearms or ammunition for purposes of sale or distribution; and the term 'licensed manufacturer' means any such person licensed under the provisions of this chapter.

"(11) The term 'dealer' means (A) any person engaged in the business of selling firearms or ammunition at wholesale or retail, (B) any person engaged in the business of repairing such firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms or (C) any person who is a pawnbroker. The term 'licensed dealer' means any dealer who is licensed under the provisions of this chapter.

"(12) The term 'pawnbroker' means any person whose business or occupation includes the taking or receiving, by way of pledge or pawn, of any firearm or ammunition as security for the payment or repayment of money.

"(13) The term 'indictment' includes an indictment or an information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted.

"(14) The term 'fugitive from justice' means any person who has fled from any State or possession to avoid prosecution for a crime

punishable by imprisonment for a term exceeding one year or to avoid giving testimony in any criminal proceeding.

"(15) The term 'antique firearm' means any firearm manufactured in or before 1898 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1898; and also any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States; and is not readily available in the ordinary channels of commercial trade.

"(16) The term 'ammunition' means ammunition for a destructive device; it shall not include shotgun shells or any other ammunition designed for use in a firearm other than a destructive device.

"(17) The term 'Secretary' or 'Secretary of the Treasury' means the Secretary of the Treasury or his delegate.

"(18) The term 'published ordinance' means a published law of any political subdivision of a State which the Secretary of the Treasury determines to be relevant to the enforcement of this chapter and which is contained on a list compiled by the Secretary of the Treasury which list shall be published in the Federal Register, revised annually, and furnished to each licensee under this chapter.

Publication in Federal Register.

"(b) As used in this chapter—

"(1) The term 'firearm' shall not include an antique firearm.
"(2) The term 'destructive device' shall not include—

"(A) a device which is not designed or redesigned or used or intended for use as a weapon; or
"(B) any device, although originally designed as a weapon, which is redesigned so that it may be used solely as a signaling, linethrowing, safety or similar device; or
"(C) any shotgun other than a short-barreled shotgun; or
"(D) any nonautomatic rifle (other than a short-barreled rifle) generally recognized or particularly suitable for use for the hunting of big game; or
"(E) surplus obsolete ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of sections 4684(2), 4685, or 4686 of title 10, United States Code; or

70A Stat. 263.

"(F) any other device which the Secretary finds is not likely to be used as a weapon.

"(3) The term 'crime punishable by imprisonment for a term exceeding one year' shall not include any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices as the Secretary may by regulation designate.

"§ 922. Unlawful acts

"(a) It shall be unlawful—

"(1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce.

"(2) for any importer, manufacturer, or dealer licensed under the provisions of this chapter to ship or transport in interstate or foreign commerce, any firearm other than a rifle or shotgun, or ammunition to any person other than a licensed importer, licensed manufacturer, or licensed dealer, except that—

"(A) this paragraph shall not be held to preclude a licensed importer, licensed manufacturer, or licensed dealer

from returning a firearm or replacement firearm of the same kind and type to a person from whom it was received;

"(B) this paragraph shall not be held to preclude a licensed importer, licensed manufacturer, or licensed dealer from depositing a firearm for conveyance in the mails to any officer, employee, agent, or watchman who, pursuant to the provisions of section 1715 of title 18 of the United States Code, is eligible to receive through the mails pistols, revolvers, and other firearms capable of being concealed on the person, for use in connection with his official duty;

62 Stat. 781;
63 Stat. 95.

"(C) nothing in this paragraph shall be construed as applying in any manner in the District of Columbia, the Commonwealth of Puerto Rico, or any possession of the United States differently than it would apply if the District of Columbia, the Commonwealth of Puerto Rico, or the possession were in fact a State of the United States.

"(3) for any person other than a licensed importer, licensed manufacturer, or licensed dealer to transport into or receive in the State where he resides (or if the person is a corporation or other business entity, in which he maintains a place of business)—

"(A) any firearm, other than a shotgun or rifle, purchased or otherwise obtained by him outside that State;

"(B) any firearm, purchased or otherwise obtained by him outside that State, which it would be unlawful for him to purchase or possess in the State or political subdivision thereof wherein he resides (or if the person is a corporation or other business entity, in which he maintains a place of business).

"(4) for any person, other than a licensed importer, licensed manufacturer, or licensed dealer, to transport in interstate or foreign commerce any destructive device, machinegun (as defined in section 5848 of the Internal Revenue Code of 1954), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Secretary.

68A Stat. 726.
26 USC 5848.

"(5) for any person to transfer, sell, trade, give, transport, or deliver to any person (other than a licensed importer, licensed manufacturer, or licensed dealer) who resides in any State other than that in which the transferor resides (or in which his place of business is located if the transferor is a corporation or other business entity)—

"(A) any firearm, other than a shotgun or rifle;

"(B) any firearm which the transferee could not lawfully purchase or possess in accord with applicable laws, regulations or ordinances of the State or political subdivision thereof in which the transferee resides (or in which his place of business is located if the transferee is a corporation or other business entity).

"This paragraph shall not apply to transactions between licensed importers, licensed manufacturers, and licensed dealers.

"(6) for any person in connection with the acquisition or attempted acquisition of any firearm from a licensed importer, licensed manufacturer, or licensed dealer, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false or fictitious or misrepresented identification, intended or likely to deceive such importer, manufacturer, or dealer with respect to any fact material to the lawfulness of the sale or other disposition of such firearm under the provisions of this chapter.

82 STAT. 230

"(b) It shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell or deliver—

"(1) any firearm to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age, if the firearm is other than a shotgun or rifle.

"(2) any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, or in the locality in which such person resides unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such ordinance.

"(3) any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the licensee's place of business is located; except that this paragraph shall not apply in the case of a shotgun or rifle.

"(4) to any person any destructive device, machine gun (as defined in section 5848 of the Internal Revenue Code of 1954), short-barreled shotgun, or short-barreled rifle, unless he has in his possession a sworn statement executed by the principal law enforcement officer of the locality wherein the purchaser or person to whom it is otherwise disposed of resides, attesting that there is no provision of law, regulation, or ordinance which would be violated by such person's receipt or possession thereof, and that he is satisfied that it is intended by such person for lawful purposes; and such sworn statement shall be retained by the licensee as a part of the records required to be kept under the provisions of this chapter.

68A Stat. 726.
26 USC 5848.

Records.

"(5) any firearm to any person unless the licensee notes in his records required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

Records.

Paragraphs (1), (2), (3) and (4) of this subsection shall not apply to transactions between licensed importers, licensed manufacturers, and licensed dealers.

"(c) It shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell or otherwise dispose of any firearm or ammunition to any person, knowing or having reasonable cause to believe that such person is a fugitive from justice or is under indictment or has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. This subsection shall not apply with respect to sale or disposition of a firearm to a licensed importer, licensed manufacturer, or licensed dealer who pursuant to subsection (b) of section 925 of this chapter is not precluded from dealing in firearms, or to a person who has been granted relief from disabilities pursuant to subsection (c) of section 925 of this chapter.

"(d) It shall be unlawful for any common or contract carrier to transport or deliver in interstate or foreign commerce any firearm with knowledge or reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of the provisions of this chapter.

"(e) It shall be unlawful for any person who is under indictment or who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, or who is a fugitive from

82 STAT. 231

justice, to ship or transport any firearm or ammunition in interstate or foreign commerce.

"(f) It shall be unlawful for any person who is under indictment or who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, or is a fugitive from justice, to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

"(g) It shall be unlawful for any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe the same to have been stolen.

"(h) It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, moving as or which is a part of or which constitutes interstate or foreign commerce, knowing or having reasonable cause to believe the same to have been stolen.

"(i) It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm the importer's or manufacturer's serial number of which has been removed, obliterated, or altered.

"(j) It shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition, except as provided in subsection (d) of section 925 of this chapter; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter.

Records.

"(k) It shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer knowingly to make any false entry in, or to fail to make appropriate entry in or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.

## "§ 923. Licensing

"(a) No person shall engage in business as a firearms or ammunition importer, manufacturer, or dealer until he has filed an application with, and received a license to do so from, the Secretary. The application shall be in such form and contain such information as the Secretary shall by regulation prescribe. Each applicant shall be required to

Fees.

pay a fee for obtaining such a license, a separate fee being required for each place in which the applicant is to do business, as follows:

"(1) If a manufacturer—

"(A) of destructive devices and/or ammunition a fee of $1,000 per year;

"(B) of firearms other than destructive devices a fee of $500 per year.

"(2) If an importer—

"(A) of destructive devices and/or ammunition a fee of $1,000 per year;

"(B) of firearms other than destructive devices a fee of $500 per year.

"(3) If a dealer—

"(A) in destructive devices and/or ammunition a fee of $1,000 per year;

"(B) who is a pawnbroker dealing in firearms other than destructive devices a fee of $250 per year;

"(C) who is not a dealer in destructive devices or a pawnbroker, a fee of $10 per year.

82 STAT. 232

"(b) Upon the filing of a proper application and payment of the prescribed fee, the Secretary may issue to the applicant the appropriate license which, subject to the provisions of this chapter and other applicable provisions of law, shall entitle the licensee to transport, ship, and receive firearms and ammunition covered by such license in interstate or foreign commerce during the period stated in the license.

"(c) Any application submitted under subsections (a) and (b) of this section shall be disapproved and the license denied and the fee returned to the applicant if the Secretary, after notice and opportunity for hearing, finds that— *Disapproval.*

　　"(1) the applicant is under twenty-one years of age; or

　　"(2) the applicant (including in the case of a corporation, partnership, or association, any individual possessing directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under the provisions of this chapter; or is, by reason of his business experience, financial standing, or trade connections, not likely to commence business operations during the term of the annual license applied for or to maintain operations in compliance with this chapter; or

　　"(3) the applicant has willfully violated any of the provisions of this chapter or regulations issued thereunder; or

　　"(4) the applicant has willfully failed to disclose any material information required, or has made any false statement as to any material fact, in connection with his application; or

　　"(5) the applicant does not have, or does not intend to have or to maintain, in a State or possession, business premises for the conduct of the business.

"(d) Each licensed importer, licensed manufacturer, and licensed *Records.* dealer shall maintain such records of importation, production, shipment, receipt, and sale or other disposition, of firearms and ammunition at such place, for such period and in such form as the Secretary may by regulations prescribe. Such importers, manufacturers, and dealers shall make such records available for inspection at all reasonable times, and shall submit to the Secretary such reports and information with respect to such records and the contents thereof as he shall by regulations prescribe. The Secretary or his delegate may enter during business hours the premises (including places of storage) of any firearms or ammunition importer, manufacturer, or dealer for the purpose of inspecting or examining any records or documents required to be kept by such importer or manufacturer or dealer under the provisions of this chapter or regulations issued pursuant thereto, and any firearms or ammunition kept or stored by such importer, manufacturer, or dealer at such premises. Upon the request of any State, or possession, or any political subdivision thereof, the Secretary of the Treasury may make available to such State, or possession, or any political subdivision thereof, any information which he may obtain by reason of the provisions of this chapter with respect to the identification of persons within such State, or possession, or political subdivision thereof, who have purchased or received firearms or ammunition, together with a description of such firearms or ammunition.

"(e) Licenses issued under the provisions of subsection (b) of this *Posting of* section shall be kept posted and kept available for inspection on the *license.* business premises covered by the license.

"(f) Licensed importers and licensed manufacturers shall identify, in such manner as the Secretary shall by regulations prescribe, each firearm imported or manufactured by such importer or manufacturer.

Pub. Law 90-351          - 36 -          June 19, 1968

82 STAT. 233

## "§ 924. Penalties

"(a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

"(b) Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm in interstate or foreign commerce shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

"(c) Any firearm or ammunition involved in, or used or intended to be used in, any violation of the provisions of this chapter, or a rule or regulation promulgated thereunder, or violation of any other criminal law of the United States, shall be subject to seizure and forfeiture and all provisions of the Internal Revenue Code of 1954 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5848(1) of said Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter.

74 Stat. 149.
26 USC 5848.

## "§ 925. Exceptions: relief from disabilities

"(a) The provisions of this chapter shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm or ammunition imported for, or sold or shipped to, or issued for the use of the United States or any department, or agency thereof; or any State or possession, or any department, agency, or political subdivision thereof.

"(b) A licensed importer, licensed manufacturer, or licensed dealer who is indicted for a crime punishable by imprisonment for a term exceeding one year may, notwithstanding any other provisions of this chapter, continue operations pursuant to his existing license (provided that prior to the expiration of the term of the existing license timely application is made for a new license) during the term of such indictment and until any conviction pursuant to the indictment becomes final.

"(c) A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for relief from the disabilities under this chapter incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to conduct his operations in an unlawful manner, and that the granting of the relief would not be contrary to the public interest. A licensee conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter by reason of such a conviction, shall not be barred by such conviction from further operations under his license pending final action on an application for relief filed pursuant to this section. Whenever the Secretary grants relief to any person pursuant to this section he shall promptly publish in the Federal Register notice of such action, together with the reasons therefor.

68A Stat. 721;
72 Stat. 1428.
26 USC 5801-
5862.

Publication in
Federal Register.

"(d) The Secretary may authorize a firearm to be imported or brought into the United States or any possession thereof if the

person importing or bringing in the firearm establishes to the satisfaction of the Secretary that the firearm—

"(1) is being imported or brought in for scientific or research purposes, or is for use in connection with competition or training pursuant to chapter 401 of title 10 of the United States Code; or

"(2) is an unserviceable firearm, other than a machinegun as defined by 5848(2) of the Internal Revenue Code of 1954 (not readily restorable to firing condition), imported or brought in as a curio or museum piece; or

"(3) is of a type that does not fall within the definition of a firearm as defined in section 5848(1) of the Internal Revenue Code of 1954 and is generally recognized as particularly suitable for or readily adaptable to sporting purposes, and in the case of surplus military firearms is a rifle or shotgun; or

"(4) was previously taken out of the United States or a possession by the person who is bringing in the firearm :

*Provided*, That the Secretary may permit the conditional importation or bringing in of a firearm for examination and testing in connection with the making of a determination as to whether the importation or bringing in of such firearm will be allowed under this subsection.

70A Stat. 234.
10 USC 4301-4313.
68A Stat. 726.
26 USC 5848.

74 Stat. 149.

## "§ 926. Rules and regulations

"The Secretary may prescribe such rules and regulations as he deems reasonably necessary to carry out the provisions of this chapter. The Secretary shall give reasonable public notice, and afford to interested parties opportunity for hearing, prior to prescribing such rules and regulations.

## "§ 927. Effect on State law

"No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State or possession on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State or possession so that the two cannot be reconciled or consistently stand together.

## "§ 928. Separability

"If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons not similarly situated or to other circumstances shall not be affected thereby."

SEC. 903. The administration and enforcement of the amendment made by this title shall be vested in the Secretary of the Treasury.

Administration.

SEC. 904. Nothing in this title or amendment made thereby shall be construed as modifying or affecting any provision of—

(a) the National Firearms Act (chapter 53 of the Internal Revenue Code of 1954) ; or

(b) section 414 of the Mutual Security Act of 1954 (22 U.S.C. 1934), as amended, relating to munitions control; or

(c) section 1715 of title 18, United States Code, relating to nonmailable firearms.

68A Stat. 721.
26 USC 5801-5862.
68 Stat. 848.
62 Stat. 781;
63 Stat. 95.

SEC. 905. The table of contents to "PART I.—CRIMES" of title 18, United States Code, is amended by inserting after

"43. False personation_____ 911"

a new chapter reference as follows:

"44. Firearms_____ 921".

SEC. 906. The Federal Firearms Act (52 Stat. 1250; 15 U.S.C. 901–910), as amended, is repealed.

Repeal.

Pub. Law 90-351          - 38 -          June 19, 1968

82 STAT. 235

Effective
date.
Ante, p. 234.

SEC. 907. The amendments made by this title shall become effective one hundred and eighty days after the date of its enactment; except that repeal of the Federal Firearms Act shall not in itself terminate any valid license issued pursuant to that Act and any such license shall be deemed valid until it shall expire according to its terms unless it be sooner revoked or terminated pursuant to applicable provisions of law.

## TITLE V—DISQUALIFICATION FOR ENGAGING IN RIOTS AND CIVIL DISORDERS

80 Stat. 524.

SEC. 1001. (a) Subchapter II of chapter 73 of title 5, United States Code, is amended by adding immediately after section 7312 the following new section:

### "§ 7313. Riots and civil disorders

"(a) An individual convicted by any Federal, State, or local court of competent jurisdiction of—

"(1) inciting a riot or civil disorder;

"(2) organizing, promoting, encouraging, or participating in a riot or civil disorder;

"(3) aiding or abetting any person in committing any offense specified in clause (1) or (2); or

"(4) any offense determined by the head of the employing agency to have been committed in furtherance of, or while participating in, a riot or civil disorder;

shall, if the offense for which he is convicted is a felony, be ineligible to accept or hold any position in the Government of the United States or in the government of the District of Columbia for the five years immediately following the date upon which his conviction becomes final. Any such individual holding a position in the Government of the United States or the government of the District of Columbia on the date his conviction becomes final shall be removed from such position.

"Felony."

"(b) For the purposes of this section, 'felony' means any offense for which imprisonment is authorized for a term exceeding one year."

(b) The analysis of chapter 73 of title 5, United States Code, immediately preceding section 7301 of such title, is amended by striking out the analysis of subchapter II and inserting in lieu thereof the following:

"SUBCHAPTER II—EMPLOYMENT LIMITATIONS

"Sec.
"7311. Loyalty and striking.
"7312. Employment and clearance; individuals removed from national security.
"7313. Riots and civil disorders."

(c) The heading of subchapter II of chapter 73 of title 5, United States Code, immediately preceding section 7311 of such title, is amended to read as follows:

"SUBCHAPTER II—EMPLOYMENT LIMITATIONS".

Effective
date.

SEC. 1002. The provisions of section 1001(a) of this title shall apply only with respect to acts referred to in section 7313(a) (1)–(4) of title 5, United States Code, as added by section 1001 of this title, which are committed after the date of enactment of this title.

## TITLE VI—CONFIRMATION OF THE DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION

Sec. 1101. Effective as of the day following the date on which the present incumbent in the office of Director ceases to serve as such, the Director of the Federal Bureau of Investigation shall be appointed by the President, by and with the advice and consent of the Senate, and shall receive compensation at the rate prescribed for level II of the Federal Executive Salary Schedule.

80 Stat. 460.
5 USC 5313.

## TITLE VII—UNLAWFUL POSSESSION OR RECEIPT OF FIREARMS

Sec. 1201. The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are other than honorably discharged, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship, constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution.

Sec. 1202. (a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under other than honorable conditions, or

(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States,

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

Penalty.

(b) Any individual who to his knowledge and while being employed by any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under other than honorable conditions, or

(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States,

and who, in the course of such employment, receives, possesses, or transports in commerce or affecting commerce, after the date of the

Pub. Law 90-351          - 40 -          June 19, 1968

82 STAT. 237

Penalty.

enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

Definitions.

(c) As used in this title—

(1) "commerce" means travel, trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia and any State, or between any foreign country or any territory or possession and any State or the District of Columbia, or between points in the same State but through any other State or the District of Columbia or a foreign country;

(2) "felony" means any offense punishable by imprisonment for a term exceeding one year;

(3) "firearm" means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; or any firearm muffler or firearm silencer; or any destructive device. Such term shall include any handgun, rifle, or shotgun;

(4) "destructive device" means any explosive, incendiary, or poison gas bomb, grenade, mine, rocket, missile, or similar device; and includes any type of weapon which will or is designed to or may readily be converted to expel a projectile by the action of any explosive and having any barrel with a bore of one-half inch or more in diameter;

(5) "handgun" means any pistol or revolver originally designed to be fired by the use of a single hand and which is designed to fire or capable of firing fixed cartridge ammunition, or any other firearm originally designed to be fired by the use of a single hand;

(6) "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger;

(7) "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

Exemptions.

SEC. 1203. This title shall not apply to—

(1) any prisoner who by reason of duties connected with law enforcement has expressly been entrusted with a firearm by competent authority of the prison; and

(2) any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm.

TITLE VIII—PROVIDING FOR AN APPEAL BY THE UNITED STATES FROM DECISIONS SUSTAINING MOTIONS TO SUPPRESS EVIDENCE

62 Stat. 844.

SEC. 1301. (a) Section 3731 of title 18, United States Code, is amended by inserting after the seventh paragraph the following new paragraph:

"From an order, granting a motion for return of seized property or a motion to suppress evidence, made before the trial of a person charged with a violation of any law of the United States, if the United States attorney certifies to the judge who granted such motion that

82 STAT. 238

the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant."

(b) Such section is amended by striking out in the third paragraph from the end "the defendant shall be admitted to bail on his own recognizance" and inserting "the defendant shall be released in accordance with chapter 207 of this title".

Release.

62 Stat. 821;
80 Stat. 214.

Sec. 1302. Section 935 of the Act of March 3, 1901 (31 Stat. 1341) (D.C. Code, sec. 23–105), is amended—

18 USC 3141-3152.
Appeals.

(a) by inserting "(a)" immediately before "In all"; and

(b) by adding at the end thereof the following new subsection:

"(b) The United States may also appeal an order of the District of Columbia Court of General Sessions, granting a motion for return of seized property or a motion to suppress evidence, made before the trial of a person charged with a violation of any law of the United States, if the United States attorney conducting the prosecution for such violation certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant. Pending the prosecution and determination of such appeal, the defendant, if in custody for such violation, shall be released in accordance with chapter 207 of title 18, United States Code."

## TITLE IX—ADDITIONAL GROUNDS FOR ISSUING WARRANT

Sec. 1401. (a) Chapter 204 of title 18, United States Code, is amended by inserting immediately after section 3103 the following new section:

### "§ 3103a. Additional grounds for issuing warrant

"In addition to the grounds for issuing a warrant in section 3103 of this title, a warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States."

62 Stat. 819.

(b) The table of sections for chapter 205 of title 18, United States Code, is amended by inserting after the item relating to section 3103 the following:

"3103a. Additional grounds for issuing warrant."

## TITLE X—PROHIBITING EXTORTION AND THREATS IN THE DISTRICT OF COLUMBIA

Sec. 1501. Whoever with intent to extort from any person, firm, association, or corporation, any money or other thing of value: (1) transmits within the District of Columbia any communication containing any demand or request for ransom or reward for the release of any kidnapped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; (2) transmits within the District of Columbia any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; or (3) transmits within the District of Columbia any communication containing any threat to injure the property or reputation of the recipient of the communication or of another or the reputation of a deceased person or any threat to accuse the recipient of the communication or any other person of a crime, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

Sec. 1502. Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically

82 STAT. 239

damage the property of any person or of another person, in whole or in part, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

## TITLE XI—GENERAL PROVISIONS

Separability.

SEC. 1601. If the provisions of any part of this Act or any amendments made thereby or the application thereof to any person or circumstances be held invalid, the provisions of the other parts and their application to other persons or circumstances shall not be affected thereby.

Approved June 19, 1968, 7:14 p.m.

---

LEGISLATIVE HISTORY:

HOUSE REPORT No. 488 (Comm. on the Judiciary).
SENATE REPORT No. 1097 accompanying S. 917 (Comm. on the Judiciary).
CONGRESSIONAL RECORD:
    Vol. 113 (1967):  Aug. 2, 3, 8, considered and passed House.
    Vol. 114 (1968):  May 1-3, 6-10, 13-17, 20-23, S. 917 considered
                in Senate.
                May 23, 24, considered and passed Senate,
                amended, in lieu of S. 917.
                June 6, House agreed to Senate amendment.