IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOHN COREY FRASER, ET AL., )<br>)<br>*Plaintiffs* )<br>)<br>v. )<br>)<br>BUREAU OF ALCOHOL, )<br>TOBACCO, FIREARMS )<br>AND EXPLOSIVES, ET AL., )<br>)<br>*Defendants* | Case No. 3:22-cv-00410 |

**PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO CLASS CERTIFICATION**

NOW COME, the Plaintiffs, Mr. John "Corey" Fraser, Mr. Joshua Clay McCoy, Mr. Tyler Dalton McGrath, and Mr. Ian Fletcher Shackley (collectively "Plaintiffs"), by and through counsel, on behalf of themselves and a pending Class of those similarly situated, and provide this Reply to the Defendants' Supplemental Response in Opposition to their Motion for Class Certification. In furtherance of their motion, the Plaintiffs state the following:

**Argument**

"Nationwide classes should be certified, and nationwide injunctions granted, in constitutional and statutory challenges to federal statutes, regulations, and other policies—if at all—only under certain narrow circumstances." Morley, *Nationwide Injunctions, Rule 23(b)(2), and the Remedial Powers of the Lower Courts*, 97 B.U. L. Rev. 615, 620 (2017) (cited in *Hawaii*, 138 S. Ct. at 2429 (Thomas, J., concurring)). This case presents such a unique circumstance.

Without class certification, it is unlikely that any individual member of the proposed class will have a chance of receiving a final judgment on the merits absent a helping-hand from an organizational plaintiff to maintain permanent standing due to inevitable mootness concerns.

Denial of class certification would unjustly deny these members equal protection of the laws merely because the Defendants are able to leverage the temporal elements of their unconstitutional scheme against final review.

The original Complaint and First Amended Complaint alerted the Defendants of this proposed class action, identified the specific facts in support of class certification, and the pleadings requested certification to be granted. The Defendants did not file a motion to strike any allegation in the complaint, conceded all factual assertions during argument against summary judgment, and invited the posture of this case. Therefore, certification remains appropriate.

A motion to certify was not required before this Court could consider whether certification is warranted and such a motion was not required prior to consideration of the Defendants' motion to dismiss or the Plaintiff's motion for Summary Judgment. *See, e.g.*, *Toscano v. United States*, 98 Fed. Cl. 152, 154–55 (Fed. Cir. 2011) ("While we recognize that plaintiffs in *Bright* [*v. United States*, 603 F.3d 1273 (Fed. Cir. 2010)] had filed a timely motion for class certification, the court never declared that a motion was required. Rather, it held it sufficient that class certification was 'sought' [in the complaint].").

The Plaintiffs' interpretation of the doctrine against one-way intervention comports with Rule 23, "which neither requires nor mentions a motion for class certification." *Id*. (considering class certification based on pleadings in the Complaint). Rule 23 "assumes that the court may certify a class on the basis of the complaint: 'At an early practicable time after a person sues as a class representative, the court must determine by order whether to certify the action as a class action.'" *Id*. "The clear implication is that the court may certify or deny the class on the basis of the complaint." *Id*.; *see also Letouzel v. Eastman Kodak Co.*, 2006 U.S. Dist. LEXIS 33453 at *5–6 (W.D.N.Y. May 25, 2006) ("Although plaintiff has not yet moved for class certification, courts

may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class." (citing *Reinisch v. New York Stock Exchange*, 52 F.R.D. 561, 564 (S.D.N.Y. 1971); *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D. Ill. 1977)). "Ordinarily, such a determination follows a motion," but a defendant may "move for an order denying class certification before the plaintiff has filed such motion." *Borgese v. Baby Brezza Enters. LLC*, 2021 U.S. Dist. LEXIS 30216 , 2021 WL 634722, at *2 (S.D.N.Y. Feb. 18, 2021). For a court to be able to deny certification prior to a motion, but not be able to grant it, would run afoul of basic tenants of fundamental fairness. In this case, the Defendants conceded there are no issues of material fact. The facts pleaded explicitly include those supporting certification. Had the Defendants wanted to contest these facts, they could have done so and the Plaintiffs would have presented additional evidence to establish their claims or moved for certification prior to summary judgement. Having waived any challenges, the Defendants cannot now claim prejudice should certification be granted.

If the Defendants wanted to contest the merits of class certification, they should have noted their exception or moved to strike allegations in the First Amended Complaint. Courts may strike from any pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Additionally, Rule 23(d)(1)(D) states that a district court "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." FED. R. CIV. P. 23(d)(1)(D). Courts utilize this rule to strike class allegations such as class action qualification. *See Barasich v. Shell Pipeline Co.*, No. 05-4180, 2008 U.S. Dist. LEXIS 47474 at *8 2008 WL 6468611 (E.D. La. June 19, 2008). "A defendant may move to strike class allegations . . . . where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Delarue v. State Farm Lloyds*, No. 1:09-CV-237, 2010 WL 11530499, at *2 (E.D.

3

Tex. Mar. 10, 2010) (citing *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)). A court may also strike class allegations when the issues are "plain enough from the pleadings" that a class cannot be maintained. *Gant v. Whynotleaseit, LLC*, No. CV H-13-3657, 2014 WL 12606313, at *1 (S.D. Tex. Dec. 11, 2014), *report and recommendation adopted*, 2015 WL 12804529 (S.D. Tex. Jan. 16, 2015) (citing *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, (1982); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). The Defendants merely cite general concerns underlying a general policy but such policy does not outright prohibit one-way intervention.

Unlike other cases in which the reasons weighing against one-way intervention are an issue, there is no *factual* determination that would encourage a prospective class member to go seek judgment in an alternative suit. Therefore, the purported prejudice underlying the doctrine against one-way intervention does not exist here. The judge-made policy disfavoring one-way intervention is not only inapplicable, but even if was, it would be significantly outweighed by the public policy favoring final adjudication on the merits as to whether the class-based restrictions at issue are constitutional. *See Craig v. Boren*, 429 U.S. 190, 193–94 (1976) ("In such circumstances, a decision by us to forgo consideration of the constitutional merits in order to await the initiation of a new challenge to the statute by injured third parties would be impermissibly to foster repetitive and time-consuming litigation under the guise of caution and prudence."). Denial of certification in this case as a form of deference to future initiation of the same suit, seeking the same class, "can serve no functional purpose." *Id.* The Supreme Court noted that a hyper-technical requirement of remanding a pending case just to assemble a class "whose fluid membership always included some with live claims" is possible, but "if the assertion of the right is to be 'representative' to such an extent anyway, there seems little loss in terms of effective advocacy from allowing its assertion."

*Cf. id*. If Congress wanted to include a prohibition against class certification at this stage of litigation, it knew how to do so. Yet Rule 23 only requires the Court to assess certification "at an early practicable time." *Id*. The pending motion is as early as practicable given the parties briefing on the legal merits and the Defendants' concession that there are no facts in dispute from the First Amended Complaint. The Court should grant certification so as a means of advancing finality on the merits and eliminating the prospect of the Defendants reaping an unjust benefit by avoiding final judgment due to the otherwise inevitable mootness on appeal that would come as a result of temporal elements that underly the unconstitutional scheme at issue. *See, e.g.*, *Hirschfeld v. BATFE*, 5 F.4th 407 (4th Cir. 2021) (vacated for mootness on appeal).

This case presents the highly narrow fact pattern in which the laws are not "capable of repetition yet evading review" because each individual plaintiff will only be young enough to be impacted for a three-year period once in their life. Certification will guarantee that the permanent standing necessary for everyone who falls within the age-bracket at issue is secured for a final determination as to whether these class-based restrictions are lawful. The interests of finality and protection of fundamental liberties outweighs any procedural or judicially-created, highly-technical policy that weighs against certification. *Cf. Craig*, 429 U.S. at 193–94. One-way intervention does not bar certification,[1] a certifiable class exists, and the Plaintiffs have satisfied the standards of Rule 23. Should this Court find in the alternative, "when courts are presented with

---

[1] Out of an abundance of caution, should this Court be concerned about the technicality of granting class certification, the Plaintiffs would not oppose the dissolution and set aside of the Summary Judgment order so that certification may be considered and then Summary Judgment reimposed afterwards. *See, e.g., Free v. Allstate Indem. Co.*, 541 F. Supp. 3d 767, 772–73 (E.D. Tex. 2021) ("In the alternative, when courts are presented with existing one-way intervention problems, they may give the plaintiff the option to choose whether to retain the favorable summary judgment ruling and proceed as an individual or ask the court to set aside the summary judgment and proceed as a class.").

existing one-way intervention problems, they may give the plaintiff the option to choose whether to retain the favorable summary judgment ruling and proceed as an individual or ask the court to set aside the summary judgment and proceed as a class." *Free v. Allstate Indem. Co.*, 541 F. Supp. 3d 767, 772–73 (E.D. Tex. 2021). As a practical matter, the Plaintiffs would have no issue with such an alternative outcome.

I. **The Policy Against "One-Way Intervention" Does Not Bar Certification In This Case.**

Whether substantive rulings can be made before class certification is a question subject to the Court's discretion. *White v. Bank of Am., N.A.*, 2012 WL 1067657, at *4 , 2012 LEXIS 44044, at *11–12 (D. Md. Mar. 27, 2012). The timing of a motion for class certification is "not often an independent ground to deny certification, though it is relevant in the context of the multi-prong analysis required by Rule 23." *See Trevizo v. Adams*, 455 F.3d 1155, 1161 (10th Cir. 2006). "Rather, the delay [in moving for class certification] will be evaluated in light of the circumstances of the case and certification will be denied only when the late timing of the determination may cause prejudice or unduly complicate the case." 7AA Wright, Miller & Kane, *Federal Practice and Procedure: Civil*, § 1785.3 (3rd ed., 2008, updated 2021) (collecting cases). The only prejudice in this case comes from the temporal elements of the laws at issue. By contesting certification, the Defendants are attempting to escape final review on the merits by relying on the fact that an individual's denial of Second Amendment rights lasts for a short enough period that appellate review is practically impossible prior to an individual claim becoming moot. The fundamentals of due process alone are reason to grant class certification. Every member of the proposed Class has a right to have a final determination for their respective case and controversy, yet the Defendants' proffered solution is to suggest the Plaintiffs should have sought an association or organizational plaintiff to provide permanent standing. Neither 28 U.S.C §§ 2201, 2202, 28

6

U.S.C. § 2412, nor the Constitution maintain such a heightened pleading requirement to remedy an individual's deprivation of liberty. To suggest otherwise would render these individuals to be second-class citizens who lack independent access to final review by our federal courts. Absent some explicit legislation to the contrary, it would be fundamentally unjust to let the Defendants inevitably escape a final adverse judgment on the merits due to the interplay between a judicially created doctrine and the impact that the passage of time has on a final review.

**II.   A Certifiable Class Exists.**

**A. The Class Is Ascertainable.**

The Defendants argue that certification is inappropriate because "the class is not readily ascertainable." Def. Opp. to Class Cert., at 10, ECF Doc. 70. The laws at issue and their class-based prohibitions inherently define the Class on their face and the Defendants know exactly who the laws apply to at all times. These laws consistently impact those within the age bracket defined in the Class. Age-based classifications have always been "in flux," yet their transitory nature has never meant that they are ineligible for certification. *See, e.g., County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 110–11 n.11 (1975); *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975); *Swisher v. Brady*, 438 U.S. 204, 213-214, n.11 (1978); *Schall v. Martin*, 467 U.S. 253, 256 n.3 (1984); *see also Craig*, 429 U.S. at 194 ("[I]t may be that a class could be assembled, whose fluid membership always included some [males] with live claims.").

In *County of Riverside v. McLaughlin*, the Supreme Court explicitly held that "[i]t is true, of course, that the claims of the named plaintiffs have since been rendered moot . . . . Our cases leave no doubt, however, that by obtaining class certification, plaintiffs preserved the merits of the controversy for our review. In factually similar cases we have held that 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class.'" *Id*. Even

if the Class was not certified until after all of the Plaintiffs' claims became moot, it would not deprive this Court of jurisdiction. *McLaughlin*, 500 U.S. at 52. The Supreme Court recognized in *Gerstein v. Pugh*, 420 U.S. 103 (1975) that "some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980), citing *Gerstein, supra*, at 110, n.11. In such cases, the "relation back" doctrine is properly invoked to preserve the merits. *Swisher*, 438 U.S. at 213–214, n.11; *Sosna, supra*, at 402, n.11. This case presents similar age-based claims as *Craig v. Boren*, where the Supreme Court opined that "it may be that a class could be assembled, whose *fluid membership* always included some [males] with live claims," but it ultimately ruled on the merits rather than require class certification to maintain standing because a seller of alcohol was deemed to have a case and controversy in spite of the original plaintiff having turned 21 prior to review. 429 U.S. 190, 193–94 (1976) (emphasis added). Unlike *Craig*, which featured a seller of alcohol seeking review of laws barring sales to males under the age of 21, this case does not feature a dealer of firearms to provide permanent standing and whether such a dealer would even have the same merited claims as the buyers is not at issue. The proposed Class is easily ascertainable and the Court should certify.

### B. Whether An Individual Class Member Wants To Refrain From Exercising Their Second Amendment Rights Is Irrelevant To Class Certification.

The Defendants claim that the proposed Class is overbroad and should not be certified because some members may not want to exercise their Second Amendment rights to purchase a handgun from a federally licensed firearm dealer. Whether an individual chooses to exercise their rights does not mean that an invidious scheme does not violate such rights. Therefore, the individual desires of any member of the Class is irrelevant for the purposes of certification, as individuals'

personal desires may ebb and flow and their ideological stances have no impact on the issue. *See J.D. v. Azar*, 925 F.3d 1291, 1318 (D.C. Cir. 2019).

> What about situations in which absent members do know about a pending action they ideologically oppose, and also learn about the class certification order and their formal inclusion in the certified class? The Supreme Court has held that 'a desire to vindicate value interests'—i.e., ideological interests—does not 'provide a judicially cognizable interest' sufficient to confer standing to bring an action. *Diamond v. Charles*, 476 U.S. 54, 66–67 (1986). And that rule specifically encompasses a 'conscientious objection to abortion.' *Id.* Yet if such an interest, standing alone, does not suffice to enable bringing an action, it is unclear why it compels being excluded from one. We are aware of no decision holding otherwise.
>
> That is unsurprising, as a class might often include absent members who, if alerted to their membership, would prefer to be excluded from the action. Rule 23(b)(2)'s very design—which, unlike Rule 23(b)(3), has no mandate for an opt-out opportunity,—presupposes the presence of some absent members who might exclude themselves if given the chance: again, in 'any conceivable case, some of the members of the class . . . will not wish' to 'assert their rights.'. How, then, would courts distinguish the circumstances in which subjective opposition gives rise to a conflict of interest precluding class certification from those in which it does not?
>
> If, say, a Second Amendment claim were brought on behalf of a class of persons subject to a firearms regulation, would there be a need to deny class certification because some absent members may strongly support gun-control measures like the challenged one? Or if a (b)(2) challenge to the consideration of race in a college-admissions process were brought on behalf of all members of the allegedly disfavored racial groups (e.g., Caucasian) denied admission—as was precisely the case in *Gratz v. Bollinger*, 539 U.S. 244, 252–53 [2003]—should certification be denied because the class may include absent members who ideologically support affirmative action? That manner of logic could ultimately stymie certification in virtually any (b)(2) case.
>
> *Id*. (internal citations omitted).

The "common practice or policy" at issue in such a class claim does not have to injure every class member in exactly the same manner. *M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013). Nevertheless, such policies do injure the proposed class in the exact same way. "Class certification is appropriate 'if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the

challenged practice, a class may nevertheless be appropriate.'" *Id*. (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 420 (6th Cir. 2012)); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012)).

### C. Whether Potential Class Members Reside In States In Which Their Access To Purchase The Firearms At Issue Is Otherwise Prohibited By State Laws Is Irrelevant.

The Defendants argue that the Class should not be certified because it would include members who reside in states in which they are prohibited from purchasing handguns from FFLs pursuant to state laws. Def. Opp. to Class Cert., at 13, ECF Doc. 70. They argue that the proposed class is therefore overbroad and this Court should avoid certification so claims can be decided in states that feature these different prohibitions. The Defendants fail to realize that this case will have no bearing on the applicability of any state law, as it is strictly limited to the federal laws. Neither the Complaint, the proposed injunction, nor this Court's grant of summary judgment reference any state restrictions and such state restrictions would inherently be reviewed pursuant to an entirely different standard post-*Bruen* given that the ratification of the Fourteenth Amendment and the subsequent incorporation of the Second Amendment to the states came decades after 1791. *See, e.g.*, *NRA v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023) ("And so the understanding of the Second Amendment right that ought to control in this case—where a State law is at issue—is the one shared by the people who adopted "the Fourteenth Amendment, not the Second."); vacated for *en banc* review, *NRA v. Bondi*, __ F.4th __, 2023 U.S. App. LEXIS 17960, 2023 WL 4542153 (11th Cir. July 14, 2023).

### III. The Rule 23 Standard Is Satisfied.

For reasons stated in the Plaintiffs' First Amended Complaint, First Memorandum of Law in Support of Class Certification, and the Second Memorandum of Law in Support of Class

10

Certification, Rule 23's standards have been satisfied. As to numerosity, commonality, and typicality, the Class involves all otherwise-qualified firearm owners between 18 and 21 years old and the law violates their constitutional rights in a uniform manner. Any factor removing an individual member from the Class, such as aging or a felony conviction, would inherently remove such member from the Class, but the figure remains an approximate total of 10 to 14 million people according to the 2020 Census and the Court can take judicial notice generally of the overwhelming numerosity. *See* United States Census Bureau, *P12 Sex by Age for Selected Age Categories of 2020 Census*, ages 18-20, available at (https://data.census.gov/table?q=P12&d=DEC+Demographic+and+Housing+Characteristics).

The Plaintiffs should not need to continue adding individual plaintiffs from various states to reach an arbitrary threshold of named parties. The Defendants' citation to similar cases pending in other courts provides enough evidence that individuals throughout the nation are impacted. Whether members of the Class may access different firearms from an FFL, may purchase a handgun from a private sale, may have their parent buy a handgun for them, or do not wish to have a handgun at all is as irrelevant for the purposes of numerosity as it is to standing generally. The interplay between the federal laws at issue and any respective state laws not at issue.

As to adequacy, the Defendants' argument that the named individual Plaintiffs will age-out of the Class and therefore their claims may become moot is also irrelevant for the purposes of adequate representation due to the relation-back doctrine previously discussed. *See, e.g.*, *Swisher*, 438 U.S. at 213–214, n.11; *Sosna*, 419 U.S. at 402, n.11. Nevertheless, the Plaintiffs averred that they will continue to identify qualified named-Plaintiffs to join their suit in an individual, named capacity. They already did this in their First Amended Complaint and have done so again with their pending-motion to add Justin Timothy Fraser. It is disingenuous for the Defendants to claim

that Justin Fraser cannot join the suit in his individual capacity as an 18-year-old and then also argue that the lead Plaintiffs are also inadequate representatives due to their own aging.

Finally, the Defendants argument that a nationwide class will stymie alternative review of the same claims in other circuits is without merit. First, the same issues pre-*Bruen* were litigated in the Fifth Circuit in *NRA v. BATFE*, 700 F.3d 185 (5th Cir. 2012) and the Fifth Circuit has an opportunity to review the same issue post-*Bruen* in *Reese v. BATFE*, 2022 U.S. Dist. LEXIS 230140, 2022 WL 17859138 (W.D. La. Dec. 21, 2022), *appeal filed*, No. 23-30033 (5th Cir. Jan. 13, 2023). The Fourth Circuit will likely review this Court's decision upon the Defendants' eventual appeal and this Court does not need to avoid certification just to allow an unconstitutional scheme to remain in effect so ten other circuits can develop precedent that will may be subject to final review to the Supreme Court of the United States. Such a review is *de novo*, and though it may be helpful to the higher Court to have alternative judicial opinions from our lower courts, the Supreme Court will have plenty of precedent to review as it currently stands. Any value added by dozens of additional cases is far outweighed by the People's interest in having their fundamental liberties protected. The Plaintiffs suggest the only qualifier for the proposed Class should simply except those individuals who have already brought suit on the merits prior to certification and would gladly produce a proposed injunction order noting such an exception should the Court find it to be appropriate.

## Conclusion

WHEREFORE, the Plaintiffs, on behalf of others similarly situated, do respectfully request for this honorable Court to GRANT their Motion to Certify this Class Action, ORDER that the Class be certified, and ORDER that undersigned counsel be designated as Class counsel.

Respectfully submitted,

_____/s_____
Elliott M. Harding (VSB No. 90442)
*Counsel for the Plaintiffs & Prospective Class*
Harding Counsel, PLLC
1260 Clifden Greene.,
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@HardingCounsel.com

## CERTIFICATE OF SERVICE

On August 2, 2023, I electronically submitted the foregoing document with the clerk of court for the United States District Court for the Eastern District of Virginia using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically.

>Respectfully submitted,
>
>_____/s_____
>Elliott M. Harding (VSB No. 90442)
>*Counsel for the Plaintiffs & Prospective Class*
>Harding Counsel, PLLC
>1260 Clifden Greene,
>Charlottesville, VA 22901
>P: 434-962-8465
>E: Elliott@HardingCounsel.com