IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN COREY FRASER,
et al.

     Plaintiffs,

v.                                    Civil Action No. 3:22cv410

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,
et al.,

     Defendants.

### MEMORANDUM OPINION

This matter is before the Court on PLAINTIFFS' MOTION FOR CLASS CERTIFICATION ("the Class Certification Motion") (ECF No. 56), PLAINTIFFS' SECOND MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION ("Memo in Supp. of Class Cert.") (ECF No. 69), DEFENDANTS' SECOND OPPOSITION TO PLANTIFFS' [sic] MOTION FOR CLASS CERTIFICATION ("Opp. to Class Cert.") (ECF No. 70), and PLAINTIFFS' REPLY TO DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO CLASS CERTIFICATION ("Class Cert. Reply") (ECF No. 71).[1] For the reasons

---

[1] In support of the Class Certification Motion, the Plaintiffs filed PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION (ECF No. 58), the Defendants responded with DEFENDANTS' OPPOSITION TO PLANTIFFS' [sic] MOTION FOR CLASS CERTIFICATION (ECF No. 61), and the Plaintiffs replied with PLAINTIFFS' REPLY TO THE DEFENDANTS' RESPONSE IN OPPOSITION TO CLASS CERTIFICATION (ECF No. 64). Unfortunately, those supporting, opposing, and reply briefs did not adequately address the class certification issues so the parties were required to replace those briefs with amended briefs that addressed the relevant issues. ORDER (ECF No. 68). The amended briefs (ECF Nos. 69, 70, and 71) are the only ones

set forth below, PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 56) will be granted.

## BACKGROUND

This case is a constitutional challenge under the Second Amendment of the Constitution of the United States to an interlocking collection of federal laws and regulations that prevent 18-to-21-year-olds from purchasing handguns from federally-licensed firearms dealers ("FFLs"). MEMORANDUM OPINION at 4 (ECF No. 47). Plaintiffs are all men over the age of 18 but under the age of 21. Id. at 2; see also FIRST AMENDED COMPLAINT ("FAC") at ¶¶ 41-44 (ECF No. 18). Aside from their age, they are all otherwise qualified to purchase handguns. FAC ¶ 49. The Defendants (the "Government") do not dispute that assertion.

Plaintiffs originally filed this action in June 2022 and then filed the FAC in November 2022. MEMORANDUM OPINION at 3. In November 2022, the Government filed DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT ("Motion to Dismiss") (ECF No. 21) and, in December 2022, Plaintiffs filed PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ("Motion for Summary Judgment") (ECF No. 28). The Court held oral argument on the two motions on February 8, 2023. Minute Entry February 8, 2023 (ECF No. 37). On May 10, 2023, an

---

considered.

2

ORDER (ECF No. 48) and accompanying MEMORANDUM OPINION (ECF No. 47) were entered denying the Motion to Dismiss and granting the Motion for Summary Judgment. In the MEMORANDUM OPINION, the Court, applying the mode of analysis specified in New York State Rifle & Pistol Associations, Inc. v. Bruen, 142 S.Ct. 2111 (2021), concluded that, "[b]ecause the statutes and regulations in question are not consistent with our Nation's history and tradition, they, therefore, cannot stand." MEMORANDUM OPINION at 65.

The parties were directed to meet and confer on how best to proceed in this matter. MAY 10, 2023 ORDER (ECF No. 49). Unfortunately, the parties filed a joint status report informing the Court that they "do not agree on how to proceed." JOINT REPORT ON CLASS CERTIFICATION at 2 (ECF No. 52).[2] On May 22, 2023 Plaintiffs filed the Class Certification Motion which, following the amended briefing and argument, is now ripe for decision.[3]

_____

[2] On May 18, 2023 Plaintiffs filed PLAINTIFFS' AND PROPOSED PLAINTIFF'S MOTION TO ADD JUSTIN FRASER AS PLAINTIFF OR GRANT INTERVENTION (ECF No. 50) and the Government filed DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT IN A SEPARATE ORDER (ECF No. 53). These motions are addressed in separate opinions and orders.

[3] They also filed PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION (ECF No. 57). And, on June 2, 2023, the Government filed DEFENDANTS' MOTION FOR A STAY OF INJUNCTION PENDING APPEAL (ECF No. 63). These motions are addressed in separate Memorandum Opinions. On August 24, 2023, PLAINTIFFS' AND PROPOSED PLAINTIFF'S MOTION TO ADD JUSTIN FRASER AS PLAINTIFF OR GRANT INTERVENTION (ECF No. 50) was granted. See MEMORANDUM OPINION (ECF No. 72); ORDER (ECF No. 73).

## DISCUSSION

The Class Certification Motion requests certification of the

following, nationwide class, pursuant to Fed. R. Civ. P. 23(b)(2):

Natural persons and citizens of the United States of America who have attained the age of eighteen but who are not yet twenty-one and who have not been convicted of a felony, who are not fugitives from justice, have not been discharged from the Armed Forces under dishonorable conditions, are not unlawful users of or addicted to any controlled substances, have not been adjudicated as mental defectives or committed to a mental institution, are not on parole or probation, are not under indictment or restraint.

PLAINTIFFS' SECOND MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION ("Memo in Supp. of Class Cert.") a 1-2, 9 (ECF No. 69).[4] The Government opposes class certification because: (1) it is "violates the rule against one-way intervention";[5] (2) the Plaintiffs have not established the requisites of Rule 23(a);[6] (3) certification is not appropriate under Rule 23(b)(1), (b)(2), or (b)(3);[7] and (4) class certification would prevent other courts

---

[4] Plaintiffs state that class certification may be proper under any of the three permissible avenues under Fed. R. Civ. P. 23(b) but that Fed. R. Civ. P. 23(b)(2) "is the most appropriate avenue of the three options for certification." Memo. in Supp. of Class Cert. at 9. The Court agrees and grants class certification under this provision. Thus, it is unnecessary to determine whether class certification is appropriate.

[5] DEFENDANTS' SECOND OPPOSITION TO PLANTIFFS' [sic] MOTION FOR CLASS CERTIFICATION ("Opp. to Class Cert.") at 1 (ECF No. 70).

[6] Id. at 6-7.

[7] Id. at 7-11.

4

from considering the merits of cases involving the same substantive issues.[8] Each argument will be considered in turn.

**1.    One-Way Intervention/Timeliness**

The Government's first reason for opposing class certification is that "the motion violates the rule against one-way intervention because it seeks class certification after summary judgment has already been entered in favor of Plaintiffs."[9] This argument, on this record, lacks any merit.

"The rule against one-way intervention prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim." Costello v. BeavEx, Inc., 810 F.3d 1045, 1057 (7th Cir. 2016); see also Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 547 (1974). Formerly, that practice "aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." Am. Pipe & Const. Co., 414 U.S. at 547. And, in 1966, Fed. R. Civ. P. 23 was amended "specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all

---

[8] Opp. to Class Cert. at 11-14.

[9] Id. at 1, 2-6.

5

subsequent orders and judgment." Id.; see also Fed. R. Civ. P. 23 Notes of Advisory Committee on Rules – 1966. However, Fed. R. Civ. P. 23 was again amended in 2003. Though that amendment "does not restore the practice of 'one-way intervention,'" it allows district courts considerable discretion in determining the proper timing of class certification. Fed. R. Civ. P. 23 Notes of Advisory Committee on Rules – 2003; In re Zetia (Ezetimibe) Antitrust Litig., No. 2:18-MD-2836, 2021 WL 9870367, at *4 (E.D. Va. May 7, 2021).[10]

Thus, for example, under the current law, district courts now have "discretion to decide the question of summary judgment before reaching the issue of class certification." Ginwright v. Exeter Fin. Corp., 280 F.Supp.3d 674, 679 (D. Md. 2017). Indeed, in some cases, "[a]n early decision on the merits may protect both parties and the court from needless expenditure of both time and money." White v. Bank of Am., N.A., No. CIV. CCB-10-1183, 2012 WL 1067657, at *4 (D. Md. Mar. 27, 2012). But, courts "generally exercise that discretion only when a defendant consents to the procedure or otherwise waives their objection to a pre-notification ruling." In re Zetia (Ezetimibe) Antitrust Litigation, 2021 WL 9870367, at *4

---

[10] Concerns about one-way intervention are less salient when a mandatory class is certified pursuant to Fed. R. Civ. P. 23(b)(2) because class members have no ability to opt-out or to engage in any form of gamesmanship. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 (2011) (Rule 23(b)(2) classes are "mandatory").

(quoting Darrington v. Assessment Recovery of Wash., LLC, No. 13-cv-0286, 2014 WL3858363, at *4 (W.D. Wash. Aug. 5, 2014)).

The Government argues that the Class Certification Motion is untimely filed because it was not filed *before* the Court ruled on the Motion to Dismiss and the Motion for Summary Judgment. In other words, the one-way intervention argument serves as the predicate for the Government's objection to the timeliness of the Class Certification Motion (i.e., because the motion was "made after summary judgment has already been entered in favor of Plaintiffs").

Fed. R. Civ. P. 23(c)(1)(A) governs the timing of motions for class certification. It provides: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."

From the beginning, Plaintiffs made clear their intention to prosecute this case as a class action. COMPLAINT (ECF No. 1); FIRST AMENDED COMPLAINT (ECF No. 18). And, with full knowledge of that fact, the parties agreed to a procedure and a schedule that presented what each side considered to be a dispositive motion[11] without ever mentioning class certification. See NOV. 17, 2022

_____

[11] See DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF No. 21) and PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No. 28).

ORDER (ECF No. 19). The parties agreed that no discovery was necessary in the case and that the Court should immediately decide the underlying merits of the case by deciding their respective dispositive motions. At no point did the Government raise concerns about the propriety of moving forward in that fashion before the Court had made a decision on class certification.

By agreeing to proceed as it did, by filing its Motion to Dismiss (a dipositive motion), and by responding to the Motion for Summary Judgment (also a dispositive motion) without even mentioning that class certification should be addressed before the dispositive motions, the Government "has waived the procedural safeguards of Rule 23, limiting the possible impropriety of an early decision on the merits." White, 2012 WL 1067657, at *4;[12] see also Lord v. Senex L., P.C., No. 7:20-CV-00541, 2023 WL 3727003, at *2 n.2 (W.D. Va. May 30, 2023); Schafer v. Allied Interstate LLC, No. 1:17-CV-233, 2020 WL 4457922, at *8 (W.D. Mich. Aug. 2, 2020).

The Class Certification Motion was timely made in accord with

---

[12] Frankly, the Government's timeliness argument tests the limits of Fed. R. Civ. P. 11. If the Government truly was concerned about the timing of class certification, it should not have agreed to proceed as it did. One would think that counsel would have realized that the agreement to proceed first with dispositive motions necessarily meant deferring the class certification process until after the dispositive motions were decided. To argue otherwise, on this record, is meritless and wasteful of judicial resources.

the procedure to which both parties agreed which assured that dispositive motions would proceed to decision before the filing of the Class Certification Motion. Moreover, not one fact in the record of this case suggests the presence of "one-way intervention" tactics. Nothing suggests that the Government was prejudiced in any way. And, indeed the Government points to no tactical advantage that the Plaintiffs secured, or that the Government lost, because of the timing of the Class Certification Motion. The record disclosed none. The Court declines the Government's invitation to put form over substance and will consider the Class Certification Motion on its merits.

**2.  Rule 23(b)(2)**

Plaintiffs seek class certification under Rule 23(b)(2)[13] which authorizes class actions when all the prerequisites of Rule 23(a) have been met and "'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" 2 Newberg and Rubenstein on Class Actions, § 4:26 (6th ed.) (June 2023) (hereafter cited as "2 Newberg and Rubenstein, § ____") (quoting

---

[13] Plaintiffs also say that class certification is appropriate under Rules 23(b)(1) and (b)(3). Memo. in Supp. of Class Cert. at 9-11, 12-13(ECF No. 69). However, it is not necessary to consider whether the requirements of those rules are satisfied because certification is authorized by Rule 23(b)(2).

Fed. R. Civ. P. 23(b)(2)). As the Supreme Court of the United States has explained:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared only as to all of the class members or as to none of them.

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011) (citation and quotation marks omitted). In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. As the treatise explains, Rule 23(b)(2) classes are required to have a particular cohesion and, because the rule authorizes class certification only in situations affecting the class as a whole and calling for either the same injunctive or declaratory relief as to the class, "unitary adjudication is not only preferable, but it is also essential." 2 Newberg and Rubenstein, § 4:26.

Rule 23(b)(2) class certification is considered to be most useful in civil rights and constitutional cases, particularly those in which an individual plaintiff may change status during the pendency of the action (at trial or on appeal) in which case the case could become moot and thus risk dismissal.

The first component of Rule 23(b)(2) is sometimes referred to as "the act requirement" which focuses on the defendant and asks whether the defendant has acted (or not) in a way that affects

10

everyone in the proposed class in a similar fashion. 2 Newburg and Rubenstein, § 4:28. The "act requirement" is directed to an objective question:  whether the proposed class consists of people affected by the defendants' challenged conduct policy.

Certification of a class under Rule 23(b)(2) is appropriate even if not all class members may have suffered the injury presented in the class complaint so long as the challenged policy or practice was generally applicable to those in the class as a whole. 2 Newberg and Rubenstein, § 4:28. And the same is true even if not all members of the class were aggrieved by, or want to challenge, the defendants' conduct. J.D. v. Nagin, 255 F.R.D. 406, 416 (E.D. La. 2009); see also M.D. ex rel Stukenberg v. Perry, 675 F.3d 382, 847-48 (5th Cir. 2012). That is because the subjective question whether all members of the class are interested in challenging the policy is simply irrelevant to the analysis of whether the class fits within Rule 23(b)(2). In other words, "internal disagreement among class members as to the aims of the litigation is largely irrelevant to one class member's right to pursue a challenge to a policy alleged to be illegal." 2 Newberg and Rubenstein, § 4:28.

This case fits precisely within the requirements of Rule 23(b)(2)'s act requirement. The specifically identified challenged statute and rules apply across the board to all members of the

proposed class. Therefore, the conduct and policy is "generally applicable to those in the class as a whole." Contrary to the Government's argument, it is irrelevant to the act requirement analysis that some 18-to-21-year-olds may not want to buy a handgun or may not be opposed to the challenged statute and regulations.

It is "immaterial that some members of the class favored a particular ordinance or opposed the action or were antagonistic toward [the named] plaintiff." 7A Wright & Miller, Federal Practice & Procedure, § 1771 (4th ed.) (April 2021). Thus, even if a class member may not want the "relief" sought by the class, that member is still bound as a member of that class and counted as part of the class.

The same is true for the Government's argument that members of the class may not wish to purchase a gun and thus would not have standing. In class actions prosecuted under Rule 23(b)(2), "the standing inquiry focuses on the class representatives, not the absent class members." 1 Newberg and Rubenstein, § 2:3;[14]

_____

[14] It is true that recently opinions and commentators have expressed doubts about this long-standing principle. TransUnion LLC v. Ramierez, 141 S. Ct. 2190, 2208 n.4 (2021) ("We do not here address the distinct question whether every class member must demonstrate standing *before* a court certifies a class"). Further, Ramierez involved a claim for money damages and was certified under Rule 23(b)(3). Ramierez v. TransUnion, LLC, 301 F.R.D. 408, 420 (N.D. Ca. 2014). In TransUnion, the record showed that some class members had suffered no damages. Here, the class all suffered the same injury (deprivation of a constitutional right) and certification is sought under Rule 23(b)(2). See Zachary D. Clopton, National Injunctions and Preclusion, 118 Mich. L. Rev. 1, 36 n.214 (2019).

12

*Carolina Youth Action Proj.; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 778-79 (4th Cir. 2023). And, as the Court has already found, the named class representatives have standing. MEMORANDUM OPINION at 6-12 (ECF No. 47).[15]

The second requirement of Rule 23(b)(2) is the often called "injunctive or declaratory relief requirement." That aspect of the rule requires that the requested relief (i) be final; (ii) be either injunctive or declaratory; and (iii) be appropriate to the class as a whole. Because the relief must be appropriate to the class as a whole, the Supreme Court has explained that "Rule 23(b)(2) applies only when a single injunction or a declaratory judgment would provide relief to each member of the class." Wal-Mart Stores, Inc., 564 U.S. at 360.

This case also fits the "injunctive or declaratory relief" requirement. The order granting summary judgment to Plaintiffs will be final when issued and it will award final judgment to the Plaintiffs on their Second Amendment claim. The relief to be granted in the final judgment order, whether injunctive, declaratory, or declaratory and injunctive, will apply to every member of the class in exactly the same way so that "a single

---

[15] Here too, as with the Government's timeliness contention, the "may be opposed" and "may not want to buy" argument are quite contrary to established legal principles.

injunction or declaratory judgment would provide relief to each member of the class." Wal-Mart Stores, Inc., 564 U.S. at 360.

The Government's Opposition to Class Certification (ECF No. 70) scarcely addresses the requirements of Rule 23(b)(2). And, when it does, there is no mention of Rule 23(b)(2)'s act requirement. That, of course, is a concession that, as the Plaintiffs argue, the act requirement is satisfied. And, indeed, as explained above, it is.

Instead, the Government rests its case on the single injunction or declaration requirement. Specifically, the Government's argument is that:

> But a single injunction or declaratory judgment would not necessarily provide relief to all of the proposed class members in this case. As mentioned above, many states have laws that separately prevent 18-to-20 year olds from purchasing or possessing certain kinds of firearms. So an injunction or declaratory judgment would not provide any relief to members of the putative class in those states because they would still be barred from purchasing handguns. At an absolute minimum, the interactions between other states' laws and the federal laws at issue precludes the certification of any class extending beyond the Commonwealth of Virginia.

Opp. to Class Cert. at 9 (emphasis added).

That argument fails because the claim in this case is addressed to whether federal law violates the class rights under the federal Constitution. If, indeed, the federal rights of the

14

class are violated, declaratory or injunctive relief will redress that violation wholly apart from whatever state laws may provide. And, that satisfies the injunctive or declaratory relief requirement of Rule 23(b)(2).

To sum up, by prohibiting 18-to-21-year-olds from purchasing arms from FFLs, the Government "acted on grounds applicable to the class." Under Rule 23(b)(2), "[a]ction or inaction is directed to a class. . . even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23, Notes of Advisory Committee on Rules - 1966 Amendment. And, a single final injunction or declaratory order will provide relief for the class as a whole. Therefore, Plaintiffs have met the requisites for certification of a class under Rule 23(b)(2).

3. Rule 23(a)

There remains the question whether they have satisfied the requirements of Fed. R. Civ. P. 23(a). Rule 23(a) outlines four requirements for class action certification: (1) numerosity; (2) common questions of law and fact; (3) typicality of claims and defense; and (4) fair and adequate representation by representative parties. And, for certification to be proper, Plaintiffs, even if they have satisfied Rule 23(b)(2), must meet each of these four criteria. The Fourth Circuit also has held that

15

Rule 23 contains an "implicit threshold requirement" that the proposed class is "readily identifiable." EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) (citation and quotation marks omitted). This is known as the "ascertainability requirement." Id. If that requirement is met, the Court then must find that the other four requirements of Rule 23(a) are met. Id. at 365.

A.   Ascertainability

In the Government's view, the proposed class is not ascertainable because it "is constantly in flux." Opp. To Class Cert. at 10 (ECF No. 70) (emphasis added). That is because individuals daily age in and out of the group, become felons or otherwise fall into a prohibited category. Id. at 10-11. And, so according to the Government, "[t]his constant coming and going of class members is unmanageable as a practical matter." Id. at 11.

The Government's ascertainability view is also based on the related assertion that:

> [t]he proposed class definition is also overbroad in that it includes a large number of individuals who meet the criteria but do not want to purchase a handgun. These individuals likely would not have standing to pursue the claims raised in this case. Indeed, many individuals may affirmatively disavow the rights that the named Plaintiffs are seeking to protect.

Opp. to Class Cert. at 11 (emphasis added).

16

As explained above,[16] it is immaterial in the Rule 23(b)(2) analysis that some class members may not agree with, or may oppose, the constitutional claims so long as the challenged conduct applies generally to the class. And, here it does. The Government does not explain why a different principle applies in assessing ascertainability. Moreover, the "may not want to purchase" argument really has nothing to do with ascertainability and the Government does not explain why it thinks there is a connection except to argue that those who do not want to purchase might not have standing. That point, as discussed above, is not relevant. Supra at 11-12; Carolina Youth Action Proj.; D.S. by & through Ford v. Wilson, 60 F.4th 770, 778-79 (4th Cir. 2023).

It is no doubt true, as Hirschfeld v. Bureau of Alcohol, Firearms, & Tobacco, 5 F.4th 407 (4th Cir. 2021), vacated as moot by, 14 F.4th 322 (4th Cir. 2021) (a substantially similar challenge to the statute and regulations at issue here) shows, that persons can age in and out of the class over the time before final decision is reached. But, that is not relevant because Rule 23(b)(2) was put in place, in part, to address class treatment under such situations. 2 Newburg and Rubenstein § 4:26; Rules Advisory

---

[16] Supra at 11-12.

17

Committee Notes, 39 F.R.D. 69, 102 (1966); Gayle v. Warden Monmouth Cnty. Correctional Inst., 838 F.3d 297, 311 (3d Cir. 2016).

In any event, the Government's concerns are misplaced. The "ascertainability" requirement simply demands that "members of a proposed class be readily identifiable. . . in reference to objective criteria." EQT Production Co., 764 F.3d at 358 (quotation marks and citation omitted). Plaintiffs are not required "to identify every class member at the time of certification." Id. As long as it is "administratively feasible for the court to determine whether a particular individual is a member" of the class, the ascertainability element is met. Id. (quoting 7A Wright & Miller, Federal Practice & Procedure, § 1760 (3d ed. 2005)). The ascertainability requirement only necessitates that the Court can readily identify whether putative class members are members of a class. It does not necessitate that the Court, or the Plaintiffs, go out and find each and every class member before a class can be certified.

Of course, Rule 23(b)(2) does not afford members the right to opt-out so notice of such a right is not required in a class action certified under Rule 23(b)(2). 2 Newberg and Rubenstein, § 4:33. Therefore, the ascertainability requirement is not as significant in a Rule 23(b)(2) class as in class actions in which class notice is required so that putative members can opt-out. However, class

members are entitled to notice of settlement and requests for attorneys' fees. 2 Newberg and Rubenstein, § 4:34. Thus, ascertainability remains a factor with which reckoning is necessary. Notice, when required, is, of course, that which is the best practicable. And, it would seem that, in a situation such as presented here, adequate notice of settlement or a request for attorneys' fees could be given by appropriate media publication with a national reach. Nonetheless, the ability to identify class members is still a matter to be assessed.

Here, determining who is and is not a member of the class can be ascertained when that becomes necessary. First, the class includes Americans between the ages of 18-to-21-years. As store clerks, bartenders, and restaurant servers across the country do thousands of times a day, the age of an individual can be easily and quickly determined by an identification ("ID") check. There is no reason why a standard ID check could not be employed in the judicial process following class certification, when that becomes necessary.

As to the defined exceptions from the class, each tracks one of the provisions of 18 U.S.C. § 922(g), which specify the individuals who are under disabilities that prohibit them from purchasing firearms under federal law. Each time a Federal Firearm License dealer sells a firearm, the dealer is required to determine

whether an individual falls within one of these categories. 18 U.S.C. § 922(b)-(d). The record supplies no reason to believe that the same cannot be done in the judicial process following class certification when that becomes necessary.

Thus, the "ascertainability" facet of Rule 23(a) is met in this case.

## B.    Numerosity

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Though Plaintiffs do not provide the Court with the actual class size, Memo. in Supp. of Class Cert. at 6, the Court finds that "joinder. . . is impracticable." There are over 350,000 individuals in that category between the age of 18-to-21 in Virginia alone. U.S. Census, DP05 -- ACS DEMOGRAPHIC AND HOUSING ESTIMATES (Virginia); see also Harris v. Rainey, 299 F.R.D. 486, 490 (W.D. Va. 2014) (finding that Plaintiffs may meet the numerosity requirement based on United States Census data). The record suggests that nationally the class may approximate some ten million Americans between the ages of 18 to 21. Of course, some of these individuals fall within § 922(g)'s other prohibitions on handgun ownership, but there is no real doubt that joinder of all individuals in the class is impracticable and the numerosity requirement is met.

The Government's numerosity argument really boils down to a reprise of the already rejected contention that some of the people in the class might not "want to purchase a handgun" and others "may choose to lawfully obtain a handgun as a gift from their parents or guardians." Opp. to Class Cert. at 6. These people, say the Government, would not have standing. This apparently is thought somehow to render the claim sufficiently small to preclude a finding that numerosity is met. Apart from the fact that the standing argument and the "may not want to buy" argument have been rejected, those arguments just make no sense in the context of a numerosity assessment. Hence, they warrant no further analysis.

On this record, Plaintiffs have satisfied the numerosity requirement of Rule 23(a).

## C. Common Questions and Typicality

Plaintiffs must show that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3); Wal-Mart Stores, Inc., 564 U.S. at 345. The case involves one basic constitutional issue that governs the rights, inter alia, of all members of the proposed class. It is difficult to comprehend a better fit for commonality and typicality.

21

The Government points to two reasons why these factors are not met. First, the Government argues that: "there are questions of standing that are particular to each individual." Opp. to Class Cert. at 7. The standing twist is in three parts: "[i] does the individual wish to purchase a handgun, [ii] has the individual already tried to purchase a handgun from an FFL and been denied, [iii] can the individual lawfully obtain a handgun another way, etc." Id. Ground [i] is not a standing argument. Rather, it is a reprise of the previously rejected "may not want to buy" theory. Supra, at 11-12. That notion has no more merit in this context. Grounds [ii] and [iii] were rejected in the MEMORANDUM OPINION at 8-10, 11-12 (ECF No. 47) and are likewise rejected on this go around.

Second, the Government argues that some states have separate laws preventing 18-to-21-years olds from purchasing guns. Opp. to Class Cert. at 7. Apparently, the Government thinks that somehow defeats findings of commonality and typicality. It is no doubt true that some states prohibit purchase or possession of handguns by 18-21 year olds, but the legal issues and the relief requested in this case has nothing to do with state laws. This case only concerns the application of the challenged federal laws and regulations. Thus, the typicality and commonality requisites of Rule 23(a) are met.

### D.    Fair and Adequate Representation

Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); Wal-Mart Stores, Inc., 564 U.S. at 345. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Carolina Youth Action Proj.; D.S. by & through Ford v. Wilson, 60 F.4th 770, 780 (4th Cir. 2023) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). The Government makes no argument that the named Plaintiffs would not fairly or adequately represent the parties and the Court finds no reason why they would not. Thus, this element is satisfied.

### 4.    The Government's Nationwide Injunction Argument

The Government's concluding argument against the grant of the Class Certification Motion is that certification of a nationwide class would necessitate a nationwide injunction which "would prevent other courts from considering the important issues involved in this case in the same way that a nationwide injunction would." Gov. Opp. to Class Cert. at 11 (ECF No. 70).  The rest of the Government's brief on this point is devoted to the emerging criticism against nationwide injunctions.

There is no categorical rule against nationwide classes and "[n]othing in Rule 23. . . limits the geographic scope of a class

action." <u>Califano v. Yamasaki</u>, 442 U.S. 682, 702 (1979). But, "when asked to certify a nationwide class," courts "should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." <u>Id</u>.

To begin, the Government's argument on this point erroneously conflates the Rule 23(b)(2) analysis as to whether a case can proceed as a class action under that rule with the question whether an injunction can, or should, be awarded under the legal principles that apply to that issue.

Of course, Rule 23(b)(2) does require a court to determine whether the "injunctive relief or corresponding declaratory relief" would provide redress for the class affected by the act taken or withheld as to the class. However, contrary to the Government's argument, that requirement does not equate the certification of a Rule 23(b)(2) class with the granting of a nationwide injunction. Instead, the possibility of injunctive relief is one of the possible remedies to be considered in deciding whether the certification requirements of that subsection of Rule 23 are met.[17]

---

[17] The rule actually uses the text "injunctive relief <u>or</u> corresponding declaratory relief." (emphasis added).

The mere possibility of a nationwide injunction does not, as the Government would have it, weigh against certification of a nationwide class. In fact, the Government's analytical approach would frustrate the operation of Rule 23(b)(2) by forbidding its application anytime a nationwide class would provide relief to the class as a whole. In the end, the availability of the injunctive relief, as an alternative to, or in addition to, declaratory relief, is simply a different question than whether injunctive relief should be granted, either as the only remedy or along with a declaratory judgment.

As the Government correctly points out, national injunctions have been the subject of increasing criticism from members of the judiciary and legal scholars. Justice Thomas, for example, has condemned nationwide injunctions as beyond the power of district courts and as impeding the development of the law. Trump v. Hawaii, 138 S.Ct. 2392, 2424-25 (2018) (Thomas, J. concurring); see also Dept. of Homeland Sec. v. New York, 140 S.Ct. 599, 599-601 (2020) (Gorsuch, J. concurring); CASA de Maryland, Inc. v. Trump, 971 F.3d 220, 256 (4th Cir. 2020), vacated, rehearing en banc granted by 981 F.3d 311 (4th Cir. 2020).[18]

---

[18] Samuel L. Bray, Multiple Chancellors: Reforming the National Injunction, 131 Harv. L. Rev. 417 (2017) but see Amanda Frost, In Defense of Nationwide Injunctions, 93 N.Y.U. L. Rev. 1065 (2018); Suzette M. Malveaux, Class Actions, Civil Rights, and the National Injunction, 131 Harv. L. Rev. F. 56 (2017).

And, there is much to be said for those criticisms, in some cases, but it is also true that:

> Congress has already created an avenue by which a group of litigants that share a common interest can obtain an injunction protecting the entire group—a class-action pursuant to Federal Rule of Civil Procedure 23(b)(2). Quite obviously, class actions are the appropriate way to resolve the small subset of cases in which an injunction protecting only the plaintiff could prove too narrow. [Citation omitted.] And, unlike nationwide injunctions, Rule 23 injunctions have a clear analogue in traditional equity practice. [Citation omitted].
>     The ready availability of nationwide injunctions is difficult to square with the policy choices embodied in Rule 23. Only those who can satisfy the rigorous requirements Congress imposed for class certification are eligible to avail themselves of Rule 23 injunctions. But nationwide injunctions allow plaintiffs to obtain the benefits of class-wide relief without ever satisfying these criteria. [Citation omitted.] This makes no sense. Indeed, as the Seventh Circuit aptly put it, "[a] wrong done to plaintiff in the past does not authorize prospective class-wide relief unless a class has been certified. Why else bother with class actions?" *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997).

CASA de Maryland, 871 F.3d at 259, vacated, rehearing en banc granted by 981 F.3d 311 (4th Cir. 2020) (emphasis added).

Here, Plaintiffs have sought class certification under the rule cited in CASA de Maryland. As that thoughtful decision makes quite clear, the possibility of injunctive relief under Rule 23(b)(2) does not foreclose class certification under that rule (even a nationwide class) if the requisites of Rule 23(a) and Rule 23(b)(2) are met.

Whether an injunction is appropriate form of relief will be

addressed in deciding PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION (ECF No. 57). But the necessity to address that issue does not foreclose a certification of a nationwide class under Rule 23(b)(2).

## 5. The Scope of the Class

Plaintiffs have shown that a nationwide class is appropriate because the Government's conduct (in enacting and enforcing the statutory and regulatory regime at issue) applies generally to all 18-to-21-year-old citizens who are not otherwise disabled from purchasing handguns from FFLs. The Government has not refuted the scope of its conduct.[19] Where, as here, the statutory and regulatory regime (the Government's conduct) unconstitutionally restricts the rights of every person in the class in exactly the same way, it is appropriate that to include in the class all of those whose rights are so affected if either a single order of injunction or declaratory relief will redress the constitutional wrong. In other words, in the circumstances presented on this record, "unitary adjudication is not only preferable, but it is also essential,"[20] where the requirements of Rule 23(a) and (b)(2) are satisfied. And, here they are.

---

[19] The Government's "may not want to buy," "may not oppose gun sales" to those in the age group, and "may get a handgun as a gift" arguments do not affect the scope of the challenged conduct.

[20] 2 Newberg and Rubenstein, § 4:26.

27

The Government's principal position is that the class should be the named Plaintiffs.  But, that just ignores Rule 23(b)(2) and the decisional law that governs its applicability.

The Government's other basis for opposing a nationwide class is that certification of such a class will foreclose the ability of other courts to weigh in on the issue and that, in turn, will thwart development of the law. The argument is based on the assumption that certification of a nationwide class equates to the issuance of a nationwide injunction. As explained above, those are two different questions. And, whether an injunction, nationwide or otherwise, will be dealt with in a separate opinion.

Whatever may be the circumstances in other cases, certification of a nationwide class certainly will not curtail judicial discourse on the Second Amendment issue that the case presents because there are several pending cases in which several other courts will express their views.[21]  The pending cases that

---

[21] <u>Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives</u>, No. 1:22-cv-80 (N.D. W. Va. filed Aug. 30, 2022) (pending case concerning the same legal regime at issue here); <u>Reese v. ATF</u>, NO. 6:20-CV-01438, 2022 WL 17859138 (W.D. La. Dec. 21, 2022), <u>appeal docketed</u>, No. 23-30033 (5th Cir. Jan. 10, 2023) (same); <u>see also Firearms Policy Coalition v. McCraw</u>, 623 F.Supp.3d 740, <u>appeal dismissed per stipulation</u>, No. 22-10898, 2022 WL 19730492 (5th Cir. Dec. 21, 2022) (concerning a corollary state age-based restriction); <u>Worth v. Harrington</u>, No. 21-cv-1348, 2023 WL 2745673, (D. Minn. March 31, 2023), <u>appealed docketed</u>, No. 23-2248 (8th Cir. May 22, 2023) (same); National Rifle Association v. Bondi, 61 F.4th 1317 (11th Cir. 2023), <u>vacated by granting of reh'rg en banc</u>, 72 F.4th 1346 (11th Cir. 2023) (same).

involve the federal statutory and regulatory regime at issue in this case will be excluded from the class certified here.

That brings the analysis back to Rule 23(b)(2) which this case fits and which, as explained above, calls for a nationwide class. Califano, 442 U.S. at 702 (approving nationwide classes).

### CONCLUSION

For foregoing reasons, the requirements of Rule 23(a) and Rule 23(b)(2) are satisfied.   Therefore, PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 56) will be granted.   The certified class will be:

> Natural persons and citizens of the United States of America who have attained the age of eighteen but who are not yet twenty-one and who have not been convicted of a felony, who are not fugitives from justice, have not been discharged from the Armed Forces under dishonorable conditions, are not unlawful users of or addicted to any controlled substances, have not been adjudicated as mental defectives or committed to a mental institution, are not on parole or probation, are not under indictment or restraint, and are not plaintiffs in the pending cases of Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives, No. 1:22-cv-80 (N.D. W. Va. filed Aug. 30, 2022); Reese v. ATF, NO. 6:20-CV-01438, 2022 WL 17859138 (W.D. La. Dec. 21, 2022), appeal docketed, No. 23-30033 (5th Cir. Jan. 10, 2023).

It is SO ORDERED.

_____ /s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 30, 2023

29