**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

JOHN COREY FRASER, JOSHUA CLAY
MCCOY, TYLER DALTON MCGRATH,
IAN FLETCHER SHACKLEY, and
JUSTIN TIMOTHY FRASER, on behalf
of themselves and all others
similarly situated as a Class,
        Plaintiffs,

v.                                              No. 3:22-cv-410

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, STEVEN
DETTELBACH, and MERRICK GARLAND,
        Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANTS' MOTION FOR
ENTRY OF JUDGMENT IN A SEPARATE ORDER (ECF No. 53); PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("the MOTION") (ECF
No. 57), PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR DECLARATORY JUDGMENT AND INJUNCTION ("Br. in Supp.") (ECF No.
59), DEFENDANTS' OPPOSITION TO PLANTIFFS' [sic] MOTION FOR
DECLARATORY JUDGMENT AND INJUNCTION ("Response") (ECF No. 62),
PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION
FOR DECLARATORY JUDGMENT AND INJUNCTION ("Reply") (ECF No. 67).
For the reasons set forth below, DEFENDANTS' MOTION FOR ENTRY OF
JUDGMENT IN A SEPARATE ORDER (ECF No. 53) will be denied and

PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION (ECF No. 57) will be granted.

## BACKGROUND

This case is a constitutional challenge under the Second Amendment to an interlocking collection of federal statutes and regulations that prevent 18-to-21-year-olds from purchasing handguns from federally-licensed firearms dealers ("FFLs"). MEMORANDUM OPINION at 4 (ECF No. 47). Plaintiffs are all men over the age of 18 but under the age of 21. Id. at 2; see also FIRST AMENDED COMPLAINT ("FAC") at ¶¶ 41-44 (ECF No. 18). Aside from their age, they are all otherwise qualified to purchase handguns. FAC ¶ 49. The Defendants (the "Government") does not dispute that.

Plaintiffs originally filed suit in June 2022 and then filed their FAC in November of that year. MEMORANDUM OPINION at 3. In November 2022, the Government filed DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT ("Motion to Dismiss") (ECF No. 21) and, in December 2022, Plaintiffs filed PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ("Motion for Summary Judgment") (ECF No. 28). The Court held oral argument on the two motions on February 8, 2023. Minute Entry 2/8/2023 (ECF No. 37). On May 10, 2023, the Court entered an ORDER (ECF No. 48) and accompanying MEMORANDUM OPINION (ECF No. 47) denying the Motion to Dismiss and granting the Motion for Summary Judgment. In the MEMORANDUM OPINION, applying the mode

2

of analysis specified in New York State Rifle & Pistol Associations, Inc. v. Bruen, 142 S.Ct. 2111 (2021), the Court concluded that, "[b]ecause the statutes and regulations in question are not consistent with our Nation's history and tradition, they, therefore, cannot stand." MEMORANDUM OPINION at 65.

The Court ordered the parties to meet and confer on how best to proceed in this matter. MAY 10, 2023 ORDER (ECF No. 49). Unfortunately, the parties filed a joint status report informing the Court that they "do not agree on how to proceed." JOINT REPORT ON CLASS CERTIFICATION at 2 (ECF No. 52).[1] The parties have filed dueling proposed final orders. Government's [PROPOSED] JUDGMENT (ECF No. 53-1); Plaintiffs' [PROPOSED] ORDER (ECF No. 57-1).

## DISCUSSION

In their proposed order, Plaintiffs ask for a declaratory judgment that:

    Plaintiffs John Corey Fraser, Joshua Clay McCoy, Tyler

---

[1] In addition, on May 18, 2023 Plaintiffs filed PLAINTIFFS' AND PROPOSED PLAINTIFF'S MOTION TO ADD JUSTIN FRASER AS PLAINTIFF OR GRANT INTERVENTION (ECF No. 50) and the Government filed DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT IN A SEPARATE ORDER (ECF No. 53). On May 22, 2023 Plaintiffs filed PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (ECF No. 56). And, on June 2, 2023, the Government filed DEFENDANTS' MOTION FOR A STAY OF INJUNCTION PENDING APPEAL (ECF No. 63). Having reviewed the parties' original briefing, the Court ORDERED the parties to file amended briefs addressing Plaintiffs' Motion for Class Cert. JULY 7, 2023 ORDER (ECF No. 68). That amended briefing has also been filed. On August 24, 2023, PLAINTIFFS' AND PROPOSED PLAINTIFF'S MOTION TO ADD JUSTIN FRASER AS PLAINTIFF OR GRANT INTERVENTION (ECF No. 50) was granted. See MEMORANDUM OPINION (ECF No. 72); ORDER (ECF No. 73).

> Dalton McGrath, Ian Fletcher Shackley, and Justin
> Timothy Fraser, and all fellow members of the Class as
> certified, have a constitutional right to purchase
> handguns and ammunition from federal firearm licensees
> pursuant to the Second Amendment of the Constitution of
> the United States, notwithstanding the federal
> prohibition on such sales to persons between the ages of
> 18 and 21.

[PROPOSED] ORDER at 1 (ECF No. 57-1). Furthermore, Plaintiffs ask

this Court for an order of permanent injunction as follows:

> federal Defendants, their officers, agents, employees,
> and all persons in active concert or participation with
> them, are hereby permanently enjoined from enforcing 18
> U.S.C. §§ 922(b)(1), (c) and any derivative regulations,
> to include 27 C.F.R. §§ 478.99(b)(1), 478.102,
> 478.124(a), (c)(1)(5), (f), and 478.96(b) in any manner
> that obstructs, hinders, prohibits, frustrates, bars, or
> prevents the Plaintiffs and members of the Class from
> purchasing handguns or ammunition from federally
> licensed firearm dealers due to their age.

Id. at 1-2. As explained in a separate MEMORANDUM OPINION, the

Court has certified a nationwide class of all individuals between

the ages of 18 to 21 who are otherwise qualified to purchase

handguns. August 30, 2023 MEMORANDUM OPINION (ECF No. 77); ORDER

(ECF No. 78).

The Government takes the position that, based on the

MEMORANDUM OPINION granting summary judgment (while reserving the

right to appeal that ruling), Plaintiffs' alleged injuries would

be remedied by a declaratory judgment. The Government would limit

that judgment to the named Plaintiffs. DEFENDANTS' OPPOSITION TO

PLANTIFFS' [sic] MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION

4

—

("Response") at 1-2 (ECF No. 62). However, the Government argues that "Plaintiffs have not satisfied their burden of demonstrating that the requirements for a permanent injunction are satisfied." Id. at 2. Instead, the Government, in DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT IN A SEPARATE ORDER (ECF No. 53), asks the Court to declare only that "Plaintiffs John Corey Fraser, Joshua Clay McCoy, Tyler Dalton McGrath, and Ian Fletcher Shackley have a constitutional right to purchase handguns from federal firearm licensees, notwithstanding the federal prohibition on such sales to persons between the ages of 18 and 20," [PROPOSED] JUDGMENT (ECF No. 53-1).

## A.    Declaratory Judgment

A federal court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The parties agree that, because summary judgment will be entered in favor of Plaintiffs, a declaratory judgment stating that the law and regulations in question are unconstitutional is appropriate. However, they disagree as to extent of that declaratory judgment. Plaintiffs ask for declaratory judgment for the entire class,[2] while the Government seeks to limit that declaratory judgment to "the parties before

---

[2] PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION at 1 (ECF No. 57).

the Court."[3]

Having certified a class, every member of the class *is* a party before the Court. Afterall, class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 348 (2011) (<u>quoting</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700-01 (1979)). And, because a Rule 23(b)(2) class has been certified, "the relief [whether declaratory or injunctive or both] sought must perforce affect the entire class at once." <u>Wal-Mart Stores, Inc.</u>, 564 U.S. at 361-62. For the foregoing reasons, the Court will grant declaratory judgment as to the entire class.

**B.    Injunction**

Plaintiffs ask the Court to enter an order permanently enjoining the Government from enforcing the law and regulations in question against the entire class. Plaintiffs argue that, where, as here, "a statutory provision is unconstitutional on its face, an injunction prohibiting its enforcement is proper."[4] They also take the view that "[t]he ongoing deprivation of a fundamental liberty is irreparable" and monetary damages "are entirely

---

[3] DEFENDANTS' OPPOSITION TO PLANTIFFS' [sic] MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Response") at 2 n.1. (ECF No. 62).

[4] PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Br. in Supp.") at 3 (ECF No. 59).

6

inadequate." Id. Furthermore, Plaintiffs assert that Defendants can suffer no hardship from being prohibited from enforcing the unconstitutional laws at issue and that "[i]t is always in the public interest for unconstitutional laws to be prohibited from future enforcement." Id.

The Government opposes the imposition of an injunction.[5] First, the Government argues that Plaintiffs have not suffered an "irreparable" injury because they, by definition, will eventually turn 21 and "will no longer be burdened by the challenged laws". Id. at 2-3. And, according to the Government, a "declaratory judgment" would "provide full relief for Plaintiffs' alleged injuries," while "enjoining an act of Congress would unquestionably impose irreparable harm on the federal government and contravene the public interest." Id. at 3. The Government devotes the rest of its brief arguing against a nationwide injunction and states that, if injunctive relief is granted, it "should be limited to the parties before the Court." Id. at 3-4.

Injunctions are equitable remedies, deriving from the Court's inherent equitable authority. Salazar v. Buono, 130 S. Ct. 1803, 1816 (2010). And, equitable relief "is not granted as a matter of

---

[5] DEFENDANTS' OPPOSITION TO PLANTIFFS' [sic] MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Response") at 1 (ECF No. 62).

course," id., because injunctions are "regarded as an
extraordinary remedy," 11A Charles Alan Wright, Arthur R. Miller,
& Mary Kay Kane, Federal Practice and Procedure, § 2942 (3d ed.)
(April 2023). When fashioning appropriate injunctive relief, "a
federal district court has wide discretion,"[6] but, it must "mold
its decree to meet the exigencies of the particular case,"
id. (quoting Trump v. Int'l Refugee Assistance Project, 137 S. Ct.
2080, 2087 (2017)). In other words, district courts are "required
to tailor the scope of the remedy to fit the nature and extent of
the constitutional violation." Ostergren v. Cuccinelli, 615 F.3d
263, 288-89 (4th Cir. 2010) (quoting Dayton Bd. of Educ. v.
Brinkman, 433 U.S. 406, 420 (1977)).

A permanent injunction is available only if the party seeking
it demonstrates actual success on the merits of the claim upon
which suit was brought. Mayor of Baltimore v. Azar, 973 F.3d 258,
274 (4th Cir. 2020) (quoting Amoco Prod. Co. v. Village of
Campbell, 480 U.S. 531, 546 n.12 (1987)). Plaintiffs have a
decision awarding them summary judgment that, when implemented by
a final order, will provide them with "actual success" on the
merits of COUNT I of the FAC. So, they have met the actual success
requisite for a permanent injunction.

---

[6] Roe v. Dept. of Defense, 947 F.3d 207, 231 (4th Cir. 2020) (quoting Richmond
Tenants Org., Inc. v. Kemp, 956 F.2d 1300, 1308 (4th Cir. 1992)).

But to show that an injunction is an appropriate remedy, Plaintiffs also must demonstrate:

> (1) that [they have] suffered an <u>irreparable injury</u>; (2) that <u>remedies available at law</u>, such as monetary damages, <u>are inadequate</u> to compensate for <u>that injury</u>; (3) that, considering <u>the balance of hardships</u> between the plaintiff and defendant, a remedy in equity is warranted; and (4) that <u>the public interest</u> would not be disserved by a permanent injunction.

<u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, 156-57 (2010) (quoting <u>eBay, Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)) (emphasis added). "An injunction should issue only if the traditional four-factor test is satisfied." <u>Id.</u> at 157. Each element will be addressed in turn.

### 1. Plaintiffs' Irreparable Injury

By infringing upon the Plaintiffs' constitutional rights, the challenged statutory and regulatory provisions inflicted an irreparable injury on Plaintiffs. "[I]t is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" <u>Legend Night Club v. Miller</u>, 637 F.3d 291, 302 (4th Cir. 2011) (quoting <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976)). The same holds true for Second Amendment freedoms. After all, the Second Amendment "is not a second-class right." <u>New York State Rifle & Pistol Assoc., Inc. v. Bruen</u>, 142 S.Ct. 2111, 2156 (2022) (quotation marks and citation omitted). As the Supreme Court explained in <u>Bruen</u>, because "[t]he

9

Second Amendment is the very product of an interest balancing by the people. . . it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense." 142 S.Ct. at 2131.

Contrary to the Government's view,[7] it does not matter that, one day, Plaintiffs will age out of the prohibited category. Since they turned 18, and at this moment and this point in their lives, their constitutional rights have been, and continue to be, denied by the Government's conduct in enforcing the challenged statutory and regulatory regime. That establishes that the Plaintiffs have suffered an "irreparable injury."

Nor is the irreparability of the constitutional injury eliminated because, as the Government argues, the Plaintiffs and class members "may lawfully obtain handguns as a gift from their parents." Response at 3. Nothing in the Second Amendment limits the Plaintiffs' exercise of their constitutional rights to what a third-party, by grace, may choose (or not) to do to help Plaintiffs exercise that right (here the right to purchase that which the Second Amendment entitles them to purchase on their own). MEMORANDUM OPINION at 7-8, 17-22 (ECF No. 47).

Moreover, the Government's suggested lack of harm addresses

---

[7] See DEFENDANTS' OPPOSITION TO PLANTIFFS' [sic] MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Response") at 2-3 (ECF No. 62).

the right to possess, not the right to purchase. So, the argument fails for that additional reason.

## 2. Remedies Available at Law

The eBay test calls for an assessment of relief other than an injunction before the powerful remedy of an injunction can be imposed. That assessment serves to assure that the extraordinary remedy of injunction is indeed necessary.

The eBay test thus asks, inter alia, whether the Plaintiffs' injury can be redressed by an award of monetary damages. The Plaintiffs address the point by making the assertion that "[t]he remedies available at law, such as monetary damages, are entirely inadequate."[8] The Government responds only that the Plaintiffs' statement is "cursory" and is made "without any explanation whatsoever."[9] The net result is that the Government does not argue that monetary damages are either available or adequate to redress the constitutional injury. And, for good reason: nothing in the record would permit a finding that an award of money damage could redress that deprivation of the rights enjoyed by the Plaintiffs under the Second Amendment. The Government does not argue to the contrary.

---

[8] PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Br. in Supp.") at 3 (ECF No. 59).

[9] DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Response") at 3 (ECF No. 62).

11

The Government does, however, argue that the Plaintiffs "do not even attempt to explain why a declaratory judgment is insufficient relief." Response at 3. That is correct, but, the Government also does not "even attempt to explain why a declaratory judgment is [ ] sufficient relief."  In other words, neither the Plaintiffs' nor the Government's ipse dixit much helps the analysis of the second facet of the eBay test.

Nonetheless, the record shows that the Government is actively enforcing the challenged legal regime and, in so doing, is effecting a daily deprivation of Plaintiffs' fundamental Second Amendment right. A declaration that the law is unconstitutional, standing alone, cannot remedy the deprivation being worked by the Government because, notwithstanding the declaration, the denial of the rights persists. Nothing in the record permits a finding that, if the remedy were confined to a declaration, Plaintiffs would be allowed to exercise the right of which they are being deprived by the challenged legal regime. The only available remedy to stop the denial of the right is an order enjoining the enforcement of the legal regime that is affecting the deprivation.

That is consistent with the principle that injunctions prohibiting the enforcement of unconstitutional laws are the proper remedy when, as here, a court upholds a facial constitutional challenge. In Americans for Prosperity Found. v.

12

Bonta, the Supreme Court affirmed a district court's finding the challenged state law was unconstitutional and found that the district court "correctly. . . permanently enjoined the [state] Attorney General" from enforcing a law in question. 141 S.Ct. 2373, 2389 (2021); see also Bostic v. Schaefer, 760 F.3d 352, 384 (4th Cir. 2014) (finding that a permanent injunction on the enforcement of an unconstitutional statute was the proper remedy); Legend Night Club v. Miller, 637 F.3d 291, 302-03 (4th Cir. 2011) (same); S.C. Freedom Caucus v. Jordan, No. 3:23-cv-795, 2023 WL 4010391, at *15 (D.S.C. June 13, 2023) (same). In the Second Amendment context, after finding their respective states' laws imposing age-based restrictions on the exercise of Second Amendment rights unconstitutional, both the District of Minnesota and the Northern District of Texas issued permanent injunctions on the enforcement of those laws. Firearms Policy Coalition, Inc v. McCraw, 623 F.Supp.3d 740, 756 (N.D. Tex. 2022); Worth v. Harrington, No. 21-cv-1348, 2023 WL 2745673, at *18 (D. Minn. March 31, 2023).

In some cases, a declaratory judgment of a law's unconstitutionality, without accompanying injunctive relief, can be sufficient relief. For instance, in Poe v. Gerstein, the Supreme Court upheld a district court's decision declining to issue an injunction "[b]ecause it was anticipated that the State would respect the declaratory judgment." 417 U.S. 281, 281 (1974). More

13

recently, the District of Maryland likewise declined to enter a permanent injunction on the enforcement of a state law when the state "had made no effort to enforce it" in the past and the state "represents to the Court that it will not enforce it." <u>Assoc. of Am. Publishers, Inc. v. Frosh</u>, 607 F.Supp.3d 614, 618-19 (D. Md. 2022).

In this case, no such representation has been made and the Government has been vigorously enforcing the challenged regulations for decades. Nor has the Court received any indication from the Government that it would cease to enforce the laws absent an injunction. Indeed, the Government's proposed relief would only extend to the original four named Plaintiffs, and the Government wishes to stay even that limited relief pending appellate review, which the Government has advised that it plans to seek as soon as a final order is entered in this matter. Thus, on this record, an injunction is necessary to prevent future enforcement of the challenged laws and regulations.

In sum, the Court finds that no remedy other than an injunction will rectify Plaintiffs' ongoing constitutional injury.

### 3. The Balance of Hardships Warrants Equitable Relief

Plaintiffs address the balance of hardships analysis by asserting that:

> [t]he Defendants will suffer no hardship by prohibiting them from enforcing the laws at issue, for their time

14

and resources can be spent in more effective and constitutionally ways.[10]

However, as the Government correctly observes:

> [t]he presumption of constitutionality which attaches to every Act of Congress is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of [the Government] in balancing hardships.

DEFENDANTS' OPPOSITION TO PLANTIFFS' MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION at 3 (ECF No. 62) (quoting Walters v. Nat'l Assoc. of Radiation Survivors, 468 U.S. 1323, 1324 (1984) (Rehnquist, J. in chambers)). That is because "[a]ny time a [Government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable harm." New Motor Vehicle Bd. of Cal. v. Orren W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). Both Walters and New Motor Vehicle Board are in chambers opinions concerning requests for stays of injunctions pending appeal, so they are not controlling in deciding whether to issue a permanent injunction in the first place. Moreover, when determining if an injunction is appropriate in the first instance, the Fourth Circuit has found that the Government "is in no way harmed by issuance of an injunction that prevents the state from enforcing

---

[10] PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Br. in Supp.") at 3 (ECF No. 59)

unconstitutional restrictions." <u>Legend Night Club v. Miller</u>, 637
F.3d 291, 302-03 (4th Cir. 2011); <u>see also</u> <u>Newsom ex rel. Newsom
v. Albemarle Cnty.</u>, 354 F.3d 249, 261 (4th Cir. 2003).

As explained in the decision granting summary judgment,
applying the mode of analysis prescribed by <u>New York State Rifle
& Pistol Associations, Inc. v. Bruen</u>, 142 S. Ct. 2111 (2022), the
statutory and regulatory regime proposed to be enjoined offends
the Second Amendment.[11] In fact, as explained in that opinion, the
Government was not able to provide any founding era support (as
required by <u>Bruen</u>)[12] for the deprivation effected by the statutory
and regulatory scheme at issue.

When that is the situation, any minimal hardship that may
befall the Government from not being able to enforce the
unconstitutional statute and regulations must yield to that harm
suffered by the individual whose constitutional rights are being
denied by the Government's conduct. <u>Legend Night Club</u>, 637 F.3d at
302-03. And, where, as here, the balance of hardships tips in favor
of the person who is suffering a clearly demonstrated deprivation

---

[11] MEMORANDUM OPINION at 65 (ECF No. 47).

[12] The most the Government could do was to justify the statutes and regulations
by pointing to cites that were over fifty years removed from 1791. That, under
<u>Bruen</u>, is not sufficient. MEMORANDUM OPINION at 54-59; <u>Bruen</u>, 142 S.Ct. at 2147
n.22 (<u>determining</u> a law passed 69 years after the ratification of the Second
Amendment is of "insubstantial" value in "discerning the original meaning of
the Second Amendment").

of a constitutional right, a remedy in equity is warranted.

### 4.  Disservice to the Public Interest

The Plaintiffs' rather summary view is that:

> [t]here is no disservice to the public interest by enjoining such unconstitutional law permanently-quite the opposite.  In it always in the public interest for unconstitutional laws to be prohibited from future enforcement.[13]

The Government does not salute this facet of the eBay test.  But, of course, the Court must.

It is no doubt true that the public interest is never disserved by protecting individual rights conferred by the Constitution. Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011) ("upholding constitutional rights is in the public interest"); see also Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 261 (4th Cir. 2003). And, it generally serves the public interest to assure that governmental conduct, statutes, and rules remain cabined by the constitutional principles that circumscribe their permissible reach. So, in a case such as this where the Plaintiffs have thoroughly established that the Government conduct is not cabined by the Second Amendment, it certainly does not disserve the public interest to foreclose that conduct.

---

[13] PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION ("Br. in Supp.") at 3 (ECF No. 59).

Of course, the public interest also is implicated by the fact that federal government agencies and officials are parties to the case and are defending federal statutes and regulations against allegations that they offend the Constitution. And, as then Justice Rehnquist explained, an injunction against a federal statute creates a public hardship, the existence of which is a matter of public interest.

The question, under eBay, then becomes whether the public interest is disserved by in enforcing a law that has been found to be unconstitutional. And, the answer is no.

In part, however, that response depends on the nature of the right that animates the injunctive relief. In Bruen, the Supreme Court held that:

> The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense.' [District of Columbia v. Heller, 554 U.S. 570, 635 (2008).] It is this balance-struck by the traditions of the American people-that demands our unqualified deference.

New York State Rifle & Pistol Assoc., Inc. v. Bruen, 142 S.Ct. 2111, 2131 (2022). In sum, the Second Amendment right that is the subject of the claim in this case is itself a matter of great public interest. That, of course, is because "[t]he constitutional right to bear arms in public for self-defense is not a 'second class right.' . . ." Id. at 2156 (citation omitted). To implement

18

that right by enjoining a legal regime that trenches upon it can hardly be said to disserve the public interest.

Even though the Government ignored the public interest factor in its brief opposing injunctive relief, it pointed the Court to its forthcoming brief a proposed stay pending appeal,[14] wherein it would address the public interest. That brief is DEFENDANTS' MOTION FOR A STAY OF INJUNCTION PENDING APPEAL ("Br. in Supp. of Injunction") (ECF No. 63), does mention the term "public interest" when reciting the factors to be considered, and in later arguing that the Government's interest and the public interest is the same. Br. in Supp. of Injunction at 2.  How the two interests equate is not explained so the reader is left to speculate what argument the Government is actually making. It seems that the Government is really relying on the Walters in chamber opinion by Justice Rehnquist and the fact that "the restrictions at issue represent a public safety measure that Congress determined was necessary to fight crime." Id. at 3.

There is little doubt that the statutes at issue were passed to implement what Congress considered to be measures that would help to fight the unlawful use of guns.  And, there can be little doubt that fighting unlawful conduct is in the public interest.

---

[14] That clue is planted in a footnote in DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AN INJUNCTION at 3 n.2 (ECF No. 62).

Case 3:22-cv-00410-REP Document 79 Filed 08/30/23 Page 20 of 25 PageID# 2294

But, that was also true of the statutes in New York State Rifle & Pistol Associations, Inc. v. Bruen, 142 S. Ct. 2111 (2022); District of Columbia v. Heller, 554 U.S. 570 (2008); and McDonald v. Chicago. 561 U.S. 742 (2010), all of which were found to be contrary to the Second Amendment and the public interest that it serves. The Government's reliance on the crime-fighting objective of Congress in enacting the statutes at issue here is likewise contrary to the Second Amendment and to the public interest that it serves.

Furthermore, a consideration of Congress's objectives in passing the statute would run counter to Bruen's express rejection of "the application of any judge empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." Bruen, 142 S.Ct. at 2129 (citation and quotation marks omitted). For that reason, the Court decline the Government's invitation to engage, by indirection, in the means-ends test that was specifically rejected by Bruen.

Lastly, the Government contends that the scope of the injunction is to be considered as a matter of public interest. No authority is cited for the argument, but it does seem to be an aspect of the exercise of common sense that, of necessity, must

accompany the exercise of equitable authority.

It is true that, to redress the harm to the class certified under Rule 23(b)(2), an injunction here (if otherwise appropriate under eBay) will be nationwide in scope. And, it is also true that some nationwide injunctions have increasingly (and rightly) been subject to criticism from courts and scholars as consistent neither with the public interest in the proper development of the law nor in assuring that the federal judicial system operates within its proper scope.[15] Although, many of those critiques are well-founded, even the most strident of them acknowledge the propriety of nationwide injunctions when a Rule 23(b)(2) class has been certified.[16] Such a class has been certified in this case. August 30, 2023 MEMORANDUM OPINION (ECF No. 77); ORDER (ECF No. 78).

---

[15] Dept. of Homeland Sec. v. New York, 140 S.Ct. 599, 599-601 (2020) (Gorsuch, J. concurring); Trump v. Hawaii, 138 S.Ct. 2392, 2424-25 (2018) (Thomas, J. concurring) (National "injunctions are beginning to take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch"); CASA de Maryland, Inc. v. Trump, 971 F.3d 220, 256 (4th Cir. 2020), vacated by 981 F.3d 311 (4th Cir. 2020); see generally Samuel L. Bray, Multiple Chancellors: Reforming the National Injunction, 131 Harv. L. Rev. 417 (2017); but see Amanda Frost, In Defense of Nationwide Injunctions, 93 N.Y.U. L. Rev. 1065 (2018); Suzette M. Malveaux, Class Actions, Civil Rights, and the National Injunction, 131 Harv. L. Rev. F. 56 (2017).

[16] Zachary D. Clopton, National Injunctions and Preclusion, 118 Mich. L. Rev. 1, 6 n.27 (2019) ("[c]ritics of national injunctions frequently argue that nonparty protection is inappropriate because the plaintiffs could have sought a national class action instead"); CASA de Maryland, 971 F.3d at 259 ("[q]uite obviously," Rule 23(b)(2) is "the appropriate way to resolve the small subset of cases in which an injunction protecting only the plaintiff could prove too narrow"); Bray, Multiple Chancellors, 131 Harv. L. Rev. at 475-76.

Moreover, the Fourth Circuit has, on numerous occasions, endorsed the use of nationwide injunctions, including against the federal government. Roe v. Dept. of Defense, 947 F.3d 207 (4th Cir. 2020); Va. Society for Human Life, Inc. v. FEC, 263 F.3d 379, 393 (4th Cir. 2001) overturned on other grounds by The Real Truth About Abortion, Inc. v. Fed. Election Comm'n, 681 F.3d 544 (4th Cir. 2012) ("Nationwide injunctions are appropriate if necessary to afford relief to the prevailing party"); Richmond Tenants Org., Inc. v. Kemp, 956 F.2d 1300, 1308-09 (4th Cir. 1992). In doing so, the Fourth Circuit explicitly rejected the argument that a nationwide injunction "exceeds a court's authority under both Article III and fundamental principles of equity." Roe, 947 F.3d at 232. As such, it is within this Court's authority to authorize a nationwide injunction in this class action under Rule 23(b)(2).

Of course, as described above, "[o]nce a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." Ostergren v. Cuccinelli, 615 F.3d 263, 288-89 (4th Cir. 2010) (quoting Dayton Bd. of Educ. v. Brinkman, 433 U.S. 406, 420 (1977)). But, "the fact that the class is nationwide in scope does not necessarily mean that the relief afforded the plaintiffs will be more burdensome than necessary to redress the complaining parties." Califano v. Yamasaki, 442 U.S. 682, 702 (1979). When

22

determining the extent of the remedy, courts look to the extent of the harm. Ostergren, 615 F.3d at 288-89 (quoting Missouri v. Jenkins, 515 U.S. 70, 88, (1995) ("[T]he nature of the. . . remedy is to be determined by the nature and scope of the constitutional violation.")).

In this case, the harm (the violation of the Plaintiffs' Second Amendment rights) extends to all members of the class. So, the remedy must too. The Court found the challenged law and regulations facially unconstitutional thereby carrying out its "duty. . . to declare all acts contrary to the manifest tenor of the Constitution void." Federalist 78 (Hamilton). This voided legal regime may, therefore, not be enforced at all. In other words, the Court's ruling does, and must, apply to protect the Second Amendment rights of all citizens between the ages of 18 to 21 who are otherwise eligible to buy a handgun (i.e., the class). In no way was either the substantive decision or the class certification decision in this case limited or influenced by the fact that the named Plaintiffs live in the Eastern District of Virginia, the Commonwealth of Virginia, or the Fourth Circuit. Indeed, aside from the procedural question of venue, this case's substantive outcome on the merits would be the same if the individuals resided on the opposite side of the country.

In sum, people between the ages of 18 and 21 in the Eastern District of Virginia suffer an equal burden as people of the same age in the Southern District of New York, the Central District of California, or any other district. The Government's policies affect-and harm-each of them equally. Therefore, "[t]he categorical policies relied upon by the Government call for categorical relief." Roe, 947 F.3d at 232. Only a nationwide injunction will "prevent irreparable injury to plaintiffs," who, since as class has been certified, include all American citizens between the ages of 18 to 21 who are otherwise qualified to purchase a gun. Richmond Tenants Org., Inc., 956 F.2d at 1309.

However, in recognition of the currently pending parallel litigation concerning the challenge legal regime,[17] the injunction will not apply to the Western District of Louisiana[18] and the Northern District of West Virginia.[19]

---

[17] Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives, No. 1:22 cv-80 (N.D. W. Va. filed Aug. 30, 2022); Reese v. ATF, NO. 6:20-CV-01438, 2022 WL 17859138 (W.D. La. Dec. 21, 2022), appeal docketed, No. 23-30033 (5th Cir. Jan. 10, 2023).

[18] The Western District of Louisiana is comprised of the following parishes in the State of Louisiana: Acadia, Allen, Avoyelles, Beauregard, Bienville, Bossier, Caddo, Calcasieu, Caldwell, Cameron, Catahoula, Claiborne, Concordia, Jefferson Davis, De Soto, East Carroll, Evangeline, Franklin, Grant, Iberia, Jackson, Lafayette, La Salle, Lincoln, Madison, Morehouse, Natchitoches, Ouachita, Rapides, Red River, Richland, Sabine, Saint Landry, Saint Martin, Saint Mary, Tensas, Union, Vermilion, Vernon, Webster, West Carroll, and Winn.

[19] The Northern District of West Virginia is comprised of the following counties in the State of West Virginia: Barbour, Berkeley, Braxton, Brooke, Calhoun, Doddridge, Gilmer, Grant, Hampshire, Hancock, Hardy, Harrison, Jefferson, Lewis, Marion, Marshall, Mineral, Monongalia, Morgan, Ohio, Pendleton,

While this nationwide injunction may be geographically broad, it is no greater than necessary to afford relief to the certified class.

## CONCLUSION

For the reasons set forth above, PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND INJUNCTION (ECF No. 57) will be granted and DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT IN A SEPARATE ORDER (ECF No. 53) will be denied.

/s/ _RSP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 30, 2023

---

Pleasants, Pocahontas, Preston, Randolph, Ritchie, Taylor, Tucker, Tyler, Upshur, Webster, and Wetzel.