IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| JUSTIN TIMOTHY FRASER, et al., on behalf of themselves and all others similarly situated as a Class, <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, et al., <br><br> Defendants. | Civil Action No. 3:22CV00410 |

**MEMORANDUM OF LAW IN OPPOSITION TO CLASS COUNSEL'S MOTION AND APPLICATION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES**

Pursuant to Local Civil Rule 7(F)(1), Defendants, through their undersigned counsel, hereby respectfully submit the instant memorandum of law in opposition to Plaintiffs' motion for attorney's fees and expenses in the above-captioned action.

**INTRODUCTION**

Plaintiffs in this case challenged the federal statute and implementing regulations that prohibit Federal Firearms Licensees (FFLs) from selling handguns to individuals between the ages of 18 and 21. The Court granted summary judgment to Plaintiffs, certified a nationwide class of Plaintiffs, and enjoined the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) from enforcing these laws. The Court also stayed that injunction pending appeal. Defendants have appealed the Court's rulings.

Plaintiffs now seek attorneys' fees totaling $107,368.50 and expenses in the amount of $918.30. ECF No. 93. The Court should hold this motion in abeyance pending the outcome of the

1

appeal in order to establish that Plaintiffs are the prevailing party. Alternatively, the Court should deny Plaintiffs' motion for attorneys' fees because Defendants' position was substantially justified. Multiple courts have agreed with Defendants' position, and this Court recognized that the issues presented are novel and difficult in granting the stay of the injunction pending appeal. As this Court recognized in its stay order, "the questions posed by this litigation are not only substantial, they are also novel," and "[t]he simple fact that our sister courts have split of this question makes clear that reasonable minds can—and have—disagreed." ECF No. 83, at 6–7. That conclusion is enough to establish that Defendants' position was substantially justified and thus that Plaintiffs are not entitled to attorneys' fees. In the event that the Court determines that Plaintiffs are entitled to attorneys' fees, it should reduce the award to the statutory cap on hourly rates. The Court should further reduce any award due to class counsel's vague timekeeping entries, excessive claims for hours, and blanket hourly rate for tasks that do not require a partner-level attorney.

## ARGUMENT

### I.   The Court Should Hold the Motion in Abeyance Pending Appeal

The Court should hold Plaintiffs' motion for attorneys' fees in abeyance pending appeal. A threshold question under the Equal Access to Justice Act (EAJA) is whether the moving party was the "prevailing party." *See* 28 U.S.C. § 2412(d)(1)(A). In the event that the Fourth Circuit rules in favor of the government, then Plaintiffs would no longer be considered the prevailing party, and they would not be entitled to EAJA fees on that basis alone. The Court would thereby avoid having to decide whether the government's position is substantially justified or the amount of any award to which Plaintiffs would be entitled.

### II.   Defendants' Position Was Substantially Justified

2

The so-called "American rule" provides that "[w]hen a litigant files suit in a court in the United States, he or she will typically pay the costs associated with hiring an attorney." *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013). Although all requests for an attorneys' fee award—like plaintiff's here—must be reviewed against this significant presumption, Congress partially abrogated the "American rule" in 1980 through EAJA. *See* 28 U.S.C. § 2412(d). EAJA provides as follows, in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless* the court finds that *the position of the United States was substantially justified* or that special circumstances make an award unjust.

*Id.* § 2412(d)(1)(A) (emphasis added). The statutory framework provides other limitations on the receipt of attorney's fees in actions against the United States, including a maximum net worth for a requesting plaintiff, *id.* § 2412(d)(2)(B), and a limitations period for tendering a request, *id.* § 2412(d)(1)(B).

The government does not need to win a case in order for its position to be substantially justified. *Nat'l Org. for Marriage, Inc. v. United States*, 807 F.3d 592, 597 (4th Cir. 2015). The mere fact that the Court ruled for Plaintiffs on the merits does not automatically mean, or even create a presumption, that Defendants' position was without "substantial justification." *See, e.g., Crawford v. Sullivan*, 935 F.2d 655, 656–57 (4th Cir. 1991) ("There is no presumption that the Government position was not substantially justified, simply because it lost the case."). Far to the contrary, the Supreme Court has held that whether a position is "substantially justified" for EAJA purposes is equated to "reasonableness"; put simply, Defendants must only demonstrate that the position they offered "could satisfy a *reasonable* person," or that "a *reasonable* person could think

3

it correct." *Pierce v. Underwood*, 487 U.S. 552, 565-66 & n.2 (1988) (emphasis added); *see also Meyer v. Colvin*, 754 F.3d 251, 254 (4th Cir. 2014). As the Fourth Circuit has thus noted, although the United States bears the burden to demonstrate that its position was "substantially justified," *see Crawford*, 935 F.2d at 658, this requirement "is not 'a high standard' requiring 'a strong showing'" from the United States. *See Evans v. Sullivan*, 928 F.2d 109, 111 (4th Cir. 1991) (quoting *Pierce*, 487 U.S. at 565).

To determine whether the government's position is substantially justified, courts look at the "totality of the circumstances." *Nat'l Org. for Marriage, Inc.*, 807 F.3d at 597. Courts "must take care not to view the government's position on a single issue in a vacuum." *Id.* at 599. Courts "first consider the available objective indicia of the strength of the Government's position." *Id.* at 597 (quoting *United States v. Paisley*, 957 F.2d 1161, 1166 (4th Cir. 1992)). The "pertinent indicia" vary from case to case, but they include "the stage at which the merits were . . . decided" and "the views of other courts on the strength, hence reasonableness, of the Government's position." *Id.* at 597-98. If the court cannot determine whether the government's position is substantially justified based on these "objective indicia," the court conducts "an independent assessment of the merits of the Government's position." *Id.* at 598 (quoting *Paisley*, 957 F.2d at 1166).

When a case involves the government's defense of a federal statute, as is true here, the government's position "will usually be substantially justified." *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1259 (9th Cir. 1986); *accord Gonzalez v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005); *Grace v. Burger*, 763 F.2d 457, 458 n.5 (D.C. Cir. 1985) ("[S]ituations in which the government's defense of the constitutionality of a federal statute fails the 'substantially justified' test should be exceptional."); *see also Kiareldeen v. Ashcroft*, 273 F.3d 542, 550 (3d Cir.

4

2001) ("In enacting the EAJA, it is implausible that Congress intended to penalize the government for defending the constitutionality of its own enactments through the imposition of attorney fee liability."). Similarly, "litigating cases of first impression is generally justifiable." *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011).

An award of fees in cases such as this one, where the government is defending a congressional statute, "should be exceptional." *Grace*, 763 F.2d at 458 & n.5. That is so because the Constitution itself obliges the United States to defend congressional statutes and thus "take Care that the Laws be faithfully executed." U.S. Const., art. II, sec. 3; *see Kiareldeen*, 273 F.3d at 550; The Attorney General's Duty to Defend and Enforce Constitutionally Objectionable Legislation, 4A Op. O.L.C. 55 (1980); 31 U.S. Op. Att'y Gen. 475, 476 (1919) ("Ordinarily, . . . it is not within the province of the Attorney General to declare an Act of Congress unconstitutional . . . .").

Plaintiffs do not come close to showing that this is one of the exceptional cases in which the government was not justified in defending a congressional statute. To the contrary, the "objective indicia" in this case conclusively establish that the government's position was substantially justified. The government argued throughout this litigation that the federal statute prohibiting the sale of handguns by FFLs to individuals under the age of 21 is constitutional. Although this Court ultimately disagreed, the government supported its position within the Second Amendment framework established by the Supreme Court. *See generally* ECF No. 43, at 9–26. In particular, the government provided historical evidence regarding the age of majority at the Founding and analogous regulations at the state level throughout the nation's history. *See id.* at 14–22. Thus, the government argued, the statutory prohibition should be upheld under *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Ass'n v. Bruen*, 142

S. Ct. 2111 (2022). In addition, the government argued that Plaintiffs' Equal Protection claim was foreclosed by Supreme Court precedent, *see generally* ECF No. 43, at 26–29, although the Court did not reach that issue. The government also opposed class certification on the grounds that, among other things, Plaintiffs had not satisfied the Rule 23 standard and that class certification after a ruling on the merits violated the rule against one-way intervention. *See generally* ECF No. 70. Although this Court rejected these arguments, the arguments were based in existing case law as applied to the facts of this case. The government's position on these issues was reasonable even if the Court deemed them incorrect.

The reasonableness of the government's position is exemplified by the numerous court decisions siding with the government on the core issue of this case and analogous issues involving state laws. *See, e.g.*, *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317 (11th Cir. 2023) (discussing Florida law), *reh'g en banc granted, opinion vacated*, No. 21-12314, 2023 WL 4542153 (11th Cir. July 14, 2023); *National Rifle Ass'n of America v. ATF* (*NRA*), 700 F.3d 185 (5th Cir. 2012); *Horsley v. Trame*, 808 F.3d 1126 (7th Cir. 2015); *Lara v. Evanchick*, 534 F. Supp. 3d 478 (W.D. Pa. 2021); *Reese v. ATF*, No. 6:20-cv-01438, 2022 WL 17859138 (W.D. La. Dec. 21, 2022), *appeal filed*, No. 23-30033 (5th Cir. Jan. 13, 2023); *see also* ECF No. 47, at 27–30. In all of these cases, the courts held that the government can constitutionally restrict either the sale of certain firearms to or the possession of certain firearms by individuals under the age of 21. And in *Reese* and *Bondi*, the courts reached this conclusion after the Supreme Court issued its decision in *Bruen*. The fact that multiple Article III judges outside the Fourth Circuit have sided with the government's position strongly indicates that "a *reasonable* person could think it correct." *Pierce*, 487 U.S. at n.2. Moreover, one district court judge in the Western District of Virginia and one Fourth Circuit judge previously agreed with the government's position on this exact issue prior to *Bruen*, *see Hirschfeld*

6

*v. ATF*, 417 F. Supp. 3d 747 (W.D. Va. 2019), *vacated*, 14 F.4th 322, 325 (4th Cir. 2021); *Hirschfeld v. ATF*, 5 F.4th 407, 457 (4th Cir. 2021) (Wynn, J., dissenting). This litigation history alone all but resolves the question of fee entitlement here, because "the existence of several dissenting opinions is particularly persuasive evidence of substantial justification." *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 636 (D.C. Cir. 2014). This was a "tough case" that "was no layup, as illustrated by the division among the good judges who considered it." *Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2022); *see also Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (recognizing that "the matter before [this Court] was hardly clear-cut.").

Indeed, this Court's orders indicate that it also believed the issues to be close calls. After briefing on dispositive motions and a hearing on those motions was complete, the Court ordered additional briefing on the merits. *See* ECF No. 38. The Court also ordered additional briefing on class certification after the motion for class certification had been fully briefed. *See* ECF No. 68. If these issues had been truly one-sided, it is unlikely that the Court would have requested this additional briefing from the parties. Finally, the Court stayed its injunction pending appeal because "the questions posed by this litigation are not only substantial, they are also novel," and "[t]he simple fact that our sister courts have split of this question makes clear that reasonable minds can—and have—disagreed." ECF No. 83, at 6–7.

> As the Fourth Circuit has held under analogous circumstances:
>
> Both [petitioner] and the government put forth strong arguments. And this is exactly as it should be. We do not want to engender an environment in which the government is deterred from presenting full and robust arguments for fear that it may be liable for an award of attorney's fees. If the government goes off the rails, that's one thing. But what we rightly term our adversary system is designed precisely for the full-throttle clash that transpired here.

7

*Meyer*, 754 F.3d at 274. And so it is here. Defendants did not "go off the rails"—they put forward a legitimate position, based on their understanding of precedent and historical evidence. Because that position was, at the very least, "substantially justified," this Court should deny Plaintiffs' motion for attorneys' fees.

Plaintiffs' arguments as to why the government's position was not substantially justified are unavailing. First, Plaintiffs suggest that ATF should have "conduct[ed] an[] internal review" of federal firearm laws in light of *Bruen* and "affirmatively stop[ped] its implementation of the laws." Mem. at 3. The United States is generally obligated to defend congressional statutes and "take Care that the Laws be faithfully executed." U.S. Const., art. II, sec. 3, so ATF is not at liberty to stop enforcing a federal statute voluntarily. Plaintiffs then say that the government "failed to produce one citation to any [historical] regulation" sufficient to meet the *Bruen* standard. Mem. at 3. Although this Court disagreed that the government made a sufficient showing under *Bruen*, the government did, in fact, back up its position with substantial historical evidence. *See* ECF No. 43, at 9–26; *see also* ECF No. 36; ECF No. 30-2 to -8. The Plaintiffs also object to the government's argument on standing, although they do not explain why the government's position was not substantially justified, rather than merely incorrect. Mem. at 3. In any event, courts "must take care not to view the government's position on a single issue in a vacuum." *Nat'l Org. for Marriage*, 807 F.3d at 599; *see also* Mem. at 3 (acknowledging that "[t]he inquiry should not be issue by issue . . . ."). The standing argument was made as part of the overall defense of the statute, and even though this Court rejected the government's position on standing, the government's arguments in favor of upholding the statute in general were reasonable. The Court should not narrowly focus on one issue that made up only a portion of the government's multi-layered and nuanced defense of the statute. *See Nat'l Org. for Marriage*, 807 F.3d at 599.

8

Next, Plaintiffs say that the government was wrong to argue that individuals under the age of 21 are not part of the "People" for purposes of the Second Amendment. Mem. at 3–4. But the Court specifically ordered the parties to address this issue. ECF No. 38, at 2. It cannot be considered unreasonable for the government to take a position that the Court orders it to address. Moreover, this issue is a novel outgrowth of the *Bruen* decision, so it is unsurprising that other courts had not previously addressed this precise question. In any event, the government's position was well-supported by various authorities, even if the Court ultimately disagreed. *See* ECF No. 43, at 11–13.

Plaintiffs next say that the government "effectively waiv[ed]" the issue of class certification and should not have opposed it. Mem. at 4. Plaintiffs do not explain how the government waived its opposition to class certification, and Plaintiffs fail to note that they waited until *after* a decision on the merits to file a motion for class certification, despite there being no barrier to their filing such a motion at the onset of litigation. Plaintiffs also concede that "the Government's general position may have been justifiable pre-*Bruen*." *Id.* But *Bruen* had nothing to do with class certification, so the government's position remains reasonable after *Bruen* as well.

Finally, Plaintiffs argue that the government was unjustified in opposing an injunction after the Court granted summary judgment to Plaintiffs. *Id.* Plaintiffs fail to note that the government argued, without conceding the correctness of the summary judgment order, that the Court should grant a declaratory judgment *instead of* an injunction. *See* ECF No. 53. Indeed, at that time, Plaintiffs had not even cited, let alone established, the four factors required for issuance of a permanent injunction. *See id.* at 2. Plaintiffs do not explain why the government's arguments for one remedy over another are unjustifiable.

In sum, the government's position was well justified at all times. The constitutional question of whether the Second Amendment allows for restrictions on the commercial sale of handguns to individuals under the age of 21 has resulted in disagreements among the federal courts. In fulfillment of its duty to defend Acts of Congress, the government mounted a reasonable argument in defense of the statute. Awarding EAJA fees in this circumstance would thus be highly inappropriate. *See, e.g.*, *Priestley v. Astrue*, 651 F.3d 410, 415 (4th Cir. 2011) ("Congress designed the exceptions to the mandatory award of fees . . . to prevailing parties as a 'safety valve' that would 'insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of law that often underlie vigorous enforcement efforts.'" (quoting *Nken v. Holder*, 385 F. App'x 299, 302 (4th Cir. 2010))); *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) ("[EAJA] was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.").

### III. Any Award of Attorney's Fees Must Be Reduced to the Statutory Cap

Even if this Court were somehow to conclude that Defendants' position in this litigation was not "substantially justified," that is not the end of the analysis. The hourly rate for attorneys' fees under EAJA is subject to a statutory cap. "[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Class counsel seeks $107,368.50 based on 230.9 hours of work at an hourly rate of $465. Even assuming all 230.9 hours are reimbursable, class counsel provides no explanation whatsoever for why the court should more than triple the $125 statutory

cap. At most, class counsel could claim no more than the $125 rate adjusted for cost of living, which recent cases from this district indicate would be just over $200 per hour. *See Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-599, 2023 WL 6147118, at *3 (E.D. Va. Sept. 13, 2023) ("Plaintiff's counsel calculated the hourly rate for attorneys by applying a cost-of-living increase to the $125.00 per hour EAJA statutory fee, reaching an hourly rate of $203.94 for attorneys and $80 for paralegals."); *Martin v. Kijakazi*, No. 1:22-cv-848, 2023 WL 5921364, at *3 (E.D. Va. Aug. 31, 2023) ("Plaintiff seeks an hourly attorney fee of $232.67, reflecting an upward adjustment in the cost of living since 1996, when the statutory cap was last set, using the Consumer Price Index ('CPI')."). Using the $232.67 figure from *Martin*, rather than class counsel's $465 rate, class counsel's total award of fees could not exceed $53,723.51.[1]

### IV. This Court Should Reduce the Amount of Any EAJA Fee Awarded to Plaintiffs

In addition to applying the statutory cap, the Court should also reduce the number of compensable hours in the event it finds that Plaintiffs are entitled to EAJA fees. Plaintiffs must demonstrate that the hours of attorney work for which they seek reimbursement under EAJA were *reasonably* incurred as a part of the litigation. *See Hyatt v. Barnhart*, 315 F.3d 239, 253 (4th Cir. 2002). In short, this Court "must calculate a reasonable number of hours expended . . . excluding hours that are excessive, redundant, or otherwise unnecessary." *Faircloth v. Colvin*, 2014 WL 5488809, at *6 (E.D. Va. Oct. 29, 2014). And this Court is afforded "substantial discretion" in undertaking this analysis in order to ensure that any award is reasonable.

As courts have repeatedly recognized, "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks." *EEOC v. Nutri/System, Inc.*, 685 F. Supp.

---

[1] 230.9 hours x $232.67/hour = $53,723.51.

11

568, 573 (E.D. Va. 1988). This is so because documentation describing the tasks in which an attorney engaged should reveal whether the number of attorney hours for which a litigant seeks reimbursement for a given legal task: (1) is at all compensable under EAJA (*e.g.*, whether a task was clerical in nature and thus not compensable, *see Morse v. Republican Party*, 972 F. Supp. 355, 366 (W.D. Va. 1997)); or (2) is excessive or redundant in relation to the task in question, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In addition to excising hours excessively spent on certain tasks or those spent on non-compensable clerical tasks, if a party's "documentation of hours is [itself] inadequate," this Court "may reduce the award accordingly." *Id.* at 433; *see also Hyatt*, 315 F.3d at 254 ("Exorbitant, unfounded, or procedurally defective fee applications . . . are matters that the district court can recognize and discount.").

Plaintiffs have submitted time records along with the instant motion that raise concerns about whether the hours documented are properly reimbursable under EAJA. Mot. Ex. A, ECF No. 94-2. Both the formulation of the billing records that petitioner has submitted to this Court and the substance of those records are problematic. *First*, Plaintiffs' billing records include numerous instances of so-called "block billing" and otherwise opaque billing entries that preclude this Court from determining how much time was spent on which task, or the nature of the actual task accomplished, in connection with a given entry. *Second*, Plaintiffs seeks reimbursement for excessive or unnecessary amounts of time engaged in certain tasks, and certain entries in these records likely include purely clerical tasks, which are not compensable at all. *Third*, Plaintiffs seek the same partner-level hourly rate for all tasks, including tasks which could have been accomplished by a paralegal or entry-level associate.

  A.  **This Court Should Reduce Any Potential EAJA Award as a Result of the Use of "Block Billing" and Vague Entries**

In evaluating EAJA petitions, courts have regularly decried insufficiently detailed billing entries—either because an entry is too vague to determine what task was accomplished or because a single entry includes too many independent tasks to determine precisely how much time was spent on each. *See Abusamhadaneh v. Taylor*, 2013 WL 193778, at *21 (E.D. Va. Jan. 17, 2013). The latter practice is called "block billing," or "the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task," which "prevents an accurate determination of the reasonableness of the time expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Improper billing entries of this kind "provide[] a proper basis for reducing [any] fee award," which "may be accomplished by reducing the overall fee award by a fixed percentage or amount." *Id.*

Plaintiffs' billing records contain both types of inappropriate entries. Almost every entry is, to some degree, vague. For example, the time records indicate that class counsel spent nine hours on "Def. Motion to Dismiss." ECF No. 94-2, at 3. But it does not say what was entailed in this task. The records do not say whether those nine hours were spent merely reading Defendants' motion, or researching some specific topic, or conducting some other task. And there is a separate entry of 11.1 hours for "Response to Motion to Dismiss," *id.*, creating even more confusion about which tasks were conducted in support of each entry. The time records also use block billing, for example, by lumping together "Plaintiff interviews and drafting of Complaints" as one category, despite being two different tasks. *Id.* at 2. Because of the vague and block-billed entries, it is impossible for Defendants (or, more importantly, this Court) to determine how much time was spent on the compensable tasks as opposed to those that are not compensable. *See Abusamhadaneh*, 2013 WL 193778, at *21 (holding that "[t]his sort of generalized entry combining tasks is simply not sufficient, proper documentation"). Given the number of entries of

13

this type, this Court should significantly reduce any potential EAJA award by a fixed percentage. *See id.* at *22 ("[D]ue to [the] inability of the Court to properly assess the reasonableness of the billed time, and its unwillingness to undertake the futile task of deciphering the billing entries of plaintiff's counsel, the Court will consider the insufficient descriptive documentation when determining the percentage reduction to assess.").

> **B.     The Time Spent on Certain Tasks For Which Plaintiffs Seeks Reimbursement Was Excessive**

Consistent with its obligation to ensure that the attorneys' fees sought through an EAJA application is "reasonable," this Court should reduce any potential award here to account for the excessive amount of time that petitioner has identified for certain tasks. *See Hensley*, 461 U.S. at 434. Many of the entries in Plaintiffs' time records are likely excessive. For example, class counsel claims to have spent 9.8 hours drafting the original Complaint—despite already having a substantially similar Complaint drafted from the *Hirschfeld* litigation—and an additional 6.6 hours in drafting the First Amended Complaint, which made very few changes to the original complaint. ECF No. 94-2, at 3. Although courts have "recognize[d] the duty of counsel to familiarize [him]self with the case before going forward with the same," *Gough v. Apfel*, 133 F. Supp. 2d 878, 880 (W.D. Va. 2001), they have scrutinized the amount of time billed and limited the same, *see Faircloth*, 2014 WL 5488809, at *6 (reducing "40.25 hours expended prior to filing the Complaint . . . to 4 hours"); *Kyler v. Apfel*, 81 F. Supp. 2d 645, 648 (W.D. Va. 2000) (limiting time for drafting complaint to 2 hours). Class counsel further claims to have spent 3.5 hours preparing the Second Amended Complaint, ECF No. 94-2, at 4, despite the only change from the First Amended Complaint being the addition of one individual Plaintiff. As another example of excessive hours, class counsel claims to have spent 9.8 hours on Plaintiffs' motion for summary

judgment, despite this filing's extensive overlap with Plaintiffs' response to the motion to dismiss, for which class counsel claimed 11.1 hours. *Id.* at 3.

The excessive hours are likely the result of including time spent on non-compensable "clerical" tasks, although the vague entries make it impossible to know the exact breakdown in time. As the Supreme Court has explained, those tasks that are "purely clerical" are not compensable "regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). For example, the filing of court-related documents and the downloading and printing of materials (either from the CM/ECF system or otherwise) is not compensable. *See, e.g.*, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004). Nor is time spent mailing items, *see Gates v. Rumsfeld*, 325 F. Supp. 2d 1342, 1348 (M.D. Fla. 2002); *White v. Baumhart*, 2006 WL 2433835, at *5 (E.D. Pa. Aug. 16, 2006), time spent ensuring that a particular attorney is registered on the CM/ECF system or can be admitted to the bar of the court, *see Role Models*, 353 F.3d at 973, or time spent preparing an invoice for services rendered for a client, *see Brandt v. Astrue*, 2009 WL 1727472, at *3 (D. Or. June 16, 2009). Because Plaintiffs' time entries likely include clerical tasks, this Court should lower any EAJA award by an additional percentage to take account of these clerical entries.

### C. The Court Should Reduce Any Potential EAJA Award for Time Spent on Tasks that Do Not Require a Partner-Level Attorney

Finally, Plaintiffs improperly seek to apply the same hourly rate for all tasks. Class counsel states that he is a solo practitioner and sole partner of his law firm, ECF No. 94-1, ¶ 1, and that he "ha[s] no other employees and handle[s] all administrative tasks [him]self on behalf of the firm," *id.* ¶ 19. The time records therefore do not distinguish between tasks related to a particular filing that required a high level of expertise and sophistication, like conducting legal or historical

research, and those that would ordinarily be accomplished by entry-level associates or paralegals, such as verifying citation formatting. Presumably all such tasks were completed by Mr. Harding personally. One recent case in this district upheld an $80 hourly rate for paralegal work as reasonable, *Martin*, 2023 WL 5921364, at *3, which is much lower than the statutory cap for attorneys or the $465 hourly rate that Plaintiffs seek. Because Plaintiffs' time entries include tasks that should be charged at a much lower rate, this Court should lower any EAJA award by an additional percentage.

## CONCLUSION

For the foregoing reasons, the Court should hold the motion in abeyance pending the outcome of the appeal on the merits. Alternatively, the Court should deny Plaintiff's motion for attorney's fees in full or, at the very least, any putative award should be significantly reduced.

Dated:  October 13, 2023

                                                Respectfully submitted,

                                                JESSICA D. ABER
                                                UNITED STATES ATTORNEY

By:  */s/ Jonathan H. Hambrick*
      Jonathan H. Hambrick
      VSB No. 37590
      Office of the United States Attorney
      600 East Main Street, Suite 1800
      Richmond, Virginia 23219
      (804) 819-5400 (phone)
      (804) 819-7417 (fax)
      jay.h.hambrick@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY

Assistant Branch Director

MICHAEL P. CLENDENEN
(D.C. Bar No. 1660091)
Trial Attorney
DANIEL RIESS
Senior Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0693
Fax: (202) 616-8460
michael.p.clendenen@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of October 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Elliott Harding, Esquire
> Harding Counsel, PLLC
> 608 Elizabeth Avenue
> Charlottesville, VA 22901

>  /s/ *Jonathan H. Hambrick*
> Jonathan H. Hambrick
> VSB No. 37590
> Attorney for the Defendants
> Office of the United States Attorney
> 919 East Main Street, Suite 1900
> Richmond, Virginia 23219
> Telephone:  (804) 819-5400
> Facsimile:  (804) 771-2316
> Email:  jay.h.hambrick@usdoj.gov